## No. 2018-\_\_\_\_

# In the United States Court of Appeals
# For the Fifth Circuit

---

IN RE JACKSON LIFE INSURANCE

---

RICHARD AND EILEEN TREDINNICK, IRWIN AND RUTH SEARS, DAVID CRUSON, JAMES R. GLENN, SUZANNE HOUSEWRIGHT, JEFFREY R. AND KAREN T. MILLER, DALE AND JANICE MORRIS, BILLY AND CAROLYN WALKER, and RONALD L. WYATT,
individually and on behalf of all other similarly situated,

*Plaintiffs–Respondents,*

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,

*Defendant–Petitioner.*

---

On Petition for Permission to Appeal from the
United States District Court for the Eastern District of Texas,
No. 4:16-CV-912-LM (Mazzant, J.)

---

### DEFENDANT'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

---

Scott T. Schutte
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Suite 500
Chicago, IL 60601
(312) 324-1000
(312) 324-1001 (Fax)

William R. Peterson
David J. Levy
Thomas R. Davis
Rachel H. Stinson
Jason F. Muriby
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5188
(713) 890-5001 (Fax)

---

*Counsel for Defendant-Petitioner*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentences of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. The representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

***Plaintiffs-Respondents***[1]

David Cruson

John Denman

***Counsel for Plaintiffs-Respondents***

Lewis T. LeClair
Rudolph "Rudy" Fink IV
Samuel Franklin Baxter
MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
(214) 978-4000
(214) 978-4044 (Fax)

Gary D. Corley
CORLEY LAW FIRM
108 North Travis Street
Sherman, TX 75090
(903) 892-1048
(214) 260-4925 (Fax)

---

[1] The caption of the suit has not been amended to reflect changes in the parties to this lawsuit. This suit was initially filed by David Cruson and thirteen other individuals: Richard and Eileen Tredinnick, Irwin and Ruth Sears, James R. Glenn, Suzanne Housewright, Jeffrey R. and Karen T. Miller, Dale and Janice Morris, Billy and Carolyn Walker, and Ronald L. Wyatt. These thirteen other plaintiffs were voluntarily dismissed from the suit. The district court granted the opposed motion to add John Denman as a named plaintiff in the same order in which it granted class certification.

***Defendants-Petitioners***

Jackson National Life Insurance Company

Jackson National Life Insurance Company is wholly owned by Brooke Life Insurance Company, which is a wholly owned subsidiary of Prudential plc.

***Counsel for Defendant-Petitioner***

William R. Peterson
David J. Levy
Adam A. Allgood
Thomas R. Davis
Rachel H. Stinson
Jason F. Muriby
MORGAN LEWIS & BOCKIUS, LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5188
(713) 890-5001 (Fax)

Scott T. Schutte
MORGAN LEWIS & BOCKIUS, LLP
77 West Wacker Drive, Suite 500
Chicago, IL 60601
(312) 324-1000
(312) 324-1001 (Fax)

*/s/ William R. Peterson*
Attorney of record for
Jackson National Life Insurance Company

# TABLE OF CONTENTS

Certificate of Interested Persons .................................................................i

Introduction ...............................................................................................1

Questions Presented ...................................................................................4

Background .................................................................................................5

Reasons for Granting the Petition ...........................................................10

I.     The Certification Decision Turns on a Novel and Unsettled Question of Law. .....................................................................................................11

II.    The District Court's Certification Order Has an *In Terrorem* Effect Due to the Large Number of Possible Claims. ..............................16

III.   This Court Should Grant Permission to Appeal Because of the Errors in the District Court's Rule 23 Analysis. ..........................17

     A.    The district court's predominance inquiry was flawed. ......17

     B.    The district court erred in certifying a class when the plaintiffs failed to provide a damage model. .......................................22

Conclusion & Prayer for Relief ...............................................................24

Certificate of Service ...............................................................................25

Certificate of Compliance with Rule 32(c)(2) ........................................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. Holiday Universal*,
　249 F.R.D. 166 (E.D. Pa. 2008) .......................................................20

*Asmussen v. Wilson*,
　775 S.W.2d 676 (Tex. App.—San Antonio 1989, no writ)................19

*AT&T Mobility LLC v. Concepcion*,
　563 U.S. 333 (2011).........................................................................16

*Avritt v. Reliastar Life Ins. Co.*,
　615 F.3d 1023 (8th Cir. 2010) .........................................................15

*In re Brewer*,
　863 F.3d 861 (D.C. Cir. 2017).........................................................10

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
　137 S. Ct. 1773 (2017)...............................................................11, 12

*Castano v. Am. Tobacco*,
　84 F.3d 734 (5th Cir. 1996) .......................................................16, 21

*In re Checking Account Overdraft Litig.*,
　780 F.3d 1031 (11th Cir. 2015) .................................................13, 14

*Cole v. Gen. Motors Corp.*,
　484 F.3d 717 (5th Cir. 2007) ...........................................................22

*Comcast Corp. v. Behrend*,
　133 S. Ct. 1426 (2013)..............................................................22, 23

*Daimler AG v. Bauman*,
　134 S. Ct. 746 (2014).......................................................................11

*In re Deepwater Horizon*,
　739 F.3d 790 (5th Cir. 2014) ...........................................................14

*Denney v. Deutsche Bank AG*,
　443 F.3d 253 (2d Cir. 2006) ............................................................15

iv

*Microsoft Corp. v. Baker*,
  137 S. Ct. 1702 (2017) ...................................................................................10

*Milner v. Milner*,
  361 S.W.3d 615 (Tex. 2012) ..........................................................................18

*Monteville Sloan, et al., v. General Motors LLC*,
  No. 16-CV-07244-EMC, 2018 WL 784049 (N.D. Cal. Feb. 7,
  2018) ................................................................................................................11

*In re Monumental Life Ins. Co.*,
  365 F.3d 408 (5th Cir. 2004) ..........................................................................15

*O'Sullivan v. Countrywide Home Loans, Inc.*,
  319 F.3d 732 (5th Cir. 2003) ..........................................................................22

*Paz v. Brush Engineered Materials, Inc.*,
  445 F.3d 809 (5th Cir. 2006) ..........................................................................11

*Pennzoil Co. v. F.E.R.C.*,
  645 F.2d 360 (5th Cir. 1981) ..........................................................................19

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
  No. 14 C 2032, 2018 WL 1255021 (N.D. Ill. Mar. 12, 2018)...........................11

*Regents of Univ. of Cal. v. Credit Suisse First Boston (USA)*,
  482 F.3d 372 (5th Cir. 2007) ....................................................................10, 16

*Slade v. Progressive Sec. Ins. Co.*,
  856 F.3d 408 (5th Cir. 2017) ..........................................................................23

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011)..........................................................................................13

*Sosna v. Iowa*,
  419 U.S. 393 (1975)..........................................................................................13

*Spence v. Glock*,
  227 F.3d 308 (5th Cir. 2000) ..........................................................................21

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
  552 U.S. 148 (2008)..........................................................................................17

*Texas v. Am. Tobacco Co.*,
   463 F.3d 399 (5th Cir. 2006) ...............................................................19

*Trelltex, Inc. v. Intecx, LLC*,
   494 S.W.3d 781 (Tex. App.—Houston [14th] 2016, no pet.) ...........................21

*Wenokur v. AXA Equitable Life Ins. Co.*,
   2017 WL 4357916 (D. Ariz. Oct. 2, 2017).........................................11

*Wilson v. Belin*,
   20 F.3d 644 (5th Cir. 1994) ...............................................................11

## OTHER AUTHORITIES

FED. R. CIV. P. 23 ............................................................. *passim*

Advisory Committee Notes to Rule 23(f) ..............................................10

Restatement (Second) of Contracts § 84 cmt. b (1981) .........................21

Restatement (Second) of Contracts § 212 cmt. b (1981) .......................19

## INTRODUCTION

For decades, Jackson National Life Insurance Company has provided variable annuities to customers across the nation as vehicles for investment and retirement savings. This case concerns the calculation of "surrender charges" and "recapture charges" (essentially, early withdrawal charges) in these variable annuities. Plaintiffs contend that Jackson breached its contracts by calculating these charges incorrectly. Despite the proposed class not meeting the requirements of Rule 23 and the district court not having personal jurisdiction over claims by unnamed class members outside Texas, the court certified a nationwide class, comprising all persons who purchased variable annuity products from Jackson and incurred a surrender charge or recapture charge.

This Court should grant this petition and permit interlocutory appeal of this certification order. First, the district court's certification rests on a novel and unsettled question of law. Relying on recent Supreme Court authority, Jackson explained that if the district court certified a class, the district court would lack specific jurisdiction over Jackson with respect to any claims by class members outside of Texas. Because the unnamed class members were not parties before certification, and because all of the named plaintiffs were from Texas, Jackson raised the lack of specific jurisdiction as an objection to the scope of the proposed class, rather than through a motion under Rule 12(b)(2).

1

In an unprecedented decision, the district court held Jackson waived its objection. Op. at 12-14. Whether a litigant must—or even may—raise personal jurisdiction objections to claims of unnamed class members in a Rule 12(b)(2) motion is a novel issue, which warrants immediate review by this Court.

Second, the district court's errors under Rule 23 warrant review by this Court. Customers do not purchase annuities directly from Jackson. Instead, consumers work through brokers, who help them to understand the investment products. Many brokers—including Tim Hightower, the broker for all but one of the named plaintiffs—correctly understood and correctly explained to their customers how surrender charges would be calculated. Some (but not all) customers also received an appendix that demonstrated clearly how surrender charges would be calculated.

There is no question that different customers received different information about surrender charges. Under black-letter contract principles, each individual customer's understanding was highly relevant to: contract formation, interpretation of contract language, and affirmative defenses such as waiver.

In certifying the class and concluding that common issues predominated, the district court held that an individual customer's subjective understanding (both when the annuity was purchased and when surrender charges were calculated) was irrelevant to the issues in the case. This error warrants review by this Court.

Third, contravening the precedent of this Court and the Supreme Court, the district court concluded that damages were calculable on a classwide basis, even though plaintiffs never provided a damage model to support class certification and Jackson established that calculating damages would be difficult, at best.

This Court should grant this petition and permit appeal of the class certification decision under Rule 23(f).

## QUESTIONS PRESENTED

1.      Whether an objection to personal jurisdiction with respect to the claims of unnamed members of a putative class must be raised through a Rule 12(b)(2) motion or is properly asserted as an objection to class certification.

2.      Whether the district court correctly concluded that common questions of law or fact predominate over individual questions, including:

    (a)    whether the district court correctly held that variations in contract documents between individuals were irrelevant to contract interpretation;

    (b)    whether a district court can assume that a contract is unambiguous if both parties contend that it is unambiguous, even though the parties disagree about its meaning;

    (c)    whether the district court correctly concluded that defendant's affirmative defenses—which turn on the subjective knowledge of individual plaintiffs and their agents—do not present individualized issues; and

    (d)    whether variations in state law on these questions preclude certification of a nationwide class.

3.      Whether a district court can certify a class when plaintiffs fail to present a damage model demonstrating that damages can be calculated on a classwide basis.

## BACKGROUND

This case is a contract dispute involving variable annuities. Although variable annuities are often sold by insurance companies, they are long-term investment products in which customers invest money ("premiums") on a tax-deferred basis.

In selling variable annuities, companies incur various up-front expenses, such as sales commissions. The expenses are recouped by the company over time. But if a customer were to withdraw its money too soon, the company would not recoup these expenses (absent surrender charges). The contracts at issue basically allow free withdrawals of any "earnings" or of up to 10% of the remaining premium per year, but assess a charge for withdrawals of premium over that limit.

These "surrender charges"—also called "withdrawal charges"—are standard industry practice. Typical charges are a percentage of the total withdrawal over the free amount and decrease over time. A charge might be 8% of the excess in the first year, 7% in the second, and 6% in the third.

In November 2016, a group of fourteen Texas residents sued Jackson on behalf of themselves and a putative nationwide class. They all purchased Jackson variable annuities through a single broker: Tim Hightower. Plaintiffs contended that Jackson incorrectly calculated surrender charges on money they had withdrawn.

Plaintiffs asserted claims for breach of contract, negligent misrepresentation, and breach of fiduciary duty under Texas law. Jackson moved to dismiss the claims

against it under Rules 12(b)(1) and 12(b)(6).  Dkt. 5, Dkt. 18.  The district court granted Jackson's motion to dismiss, in part, dismissing the negligent misrepresentation claim and the claims of three plaintiffs who had not incurred surrender charges.  Dkt. 31.

Jackson then filed its answer.  Dkt. 43.  Jackson admitted that "to the extent that class members reside in Texas, . . . the Court has jurisdiction over Jackson."  Dkt. 43 at 3.  Jackson noted that personal jurisdiction would absent be for the claims of class members residing outside of Texas but recognized the issue would arise in the future: "**To the extent that a class outside of Texas is certified**, denied that this Court has personal jurisdiction over Jackson for the remaining two-thirds of the putative class members residing outside of Texas."  *Id.* (emphasis added).

Following brief discovery, the remaining eleven plaintiffs moved for class certification, asking the district court to certify a nationwide class of over 150,000 members who incurred surrender charges under various Jackson annuity products.

Significantly, plaintiffs did not provide any type of damage model to demonstrate that damages could be calculated on a classwide basis.  They offered only the assurance from their expert that records "can be used to create a model."  Dkt. 52.

Jackson opposed certification on numerous grounds.  In particular, Jackson noted the individualized facts related to each customers' understanding of the

6

surrender charges.  Dkt. 57 at 10, 19.  Although Jackson contends that the contract is unambiguous and that its surrender charges were calculated correctly, to the extent that a court concludes that plaintiffs' interpretation is reasonable, it would be necessary to consider extrinsic evidence to resolve this ambiguity.  *Id*. at 10.  Moreover, considering the specific documents provided to each customer and the specific explanation given by the customers' broker is necessary to determine whether a contract is ambiguous.  *Id*.  Each customer's (and their broker's) subjective understanding at the time of contracting is also relevant to Jackson's affirmative defenses of waiver and ratification.  *Id*. at 19.

Jackson noted that plaintiffs had failed to provide any type of damage model and thus failed to show that damages were calculable on classwide basis.  *Id.* at 15-18.

Finally, Jackson pointed out that the district court's "lack of personal jurisdiction over Jackson for non-Texans' claims would make a [nationwide] class improper."  Jackson urged that a class, if certified, should be defined so that the court would have personal jurisdiction over Jackson for every claim.  *Id*. at 23-24.

The district court certified the requested nationwide class.  The district court first addressed personal jurisdiction.  It concluded that Jackson's objection to personal jurisdiction over the claims of unnamed class members was "available" at the time Jackson filed its motion to dismiss and should have been asserted in a

12(b)(2) motion at that time.  Op. at 11-12.  It thus concluded that Jackson "waived the defense by delaying in challenging personal jurisdiction and substantially litigating on the merits."  Op. at 13-14.  It did not find that personal jurisdiction would otherwise exist in this case over claims brought by non-Texans.

The district court certified a class "of over 150,000 Jackson annuity policy holders who have incurred surrender charges" and who "are distributed throughout the fifty states of the United States and the District of Columbia."  Op. at 17.

In analyzing commonality, the court concluded that the individuals' subjective knowledge of the contract terms was irrelevant because the contract was unambiguous.  Its ambiguity determination was based solely on the fact that "neither party asserts that the contract language is ambiguous."  Op. at 18.

In considering Rule 23(b), the district court found no danger of the class devolving into a series of "individual trials" of disparate questions.  The court saw liability as a simple binary "yes" or "no" question: "whether Jackson's method of calculating surrender charges is permitted by Jackson's contracts (i.e., breach)."  Op. at 26.

The court concluded that Jackson's "knowledge-based" affirmative defenses were meritless (and thus did not create individualized issues).  The district court held that these defenses "require plaintiffs to have full knowledge of the circumstances," including the "lawfulness of Jackson's conduct."  Op. at 29.  Because, it found, class

members could not "have been aware of the lawfulness of Jackson's conduct until either liability is established or Jackson admits that its actions were unlawful," there could be no waiver or ratification.  Op. at 29.

Finally, the court noted that plaintiffs' damages expert had "conclude[d] Jackson's records can be used to create a model for quantifying the amount by which Plaintiffs were overcharged for their annuity contract withdrawals."  Op. at 31.  Relying on this assertion, the court found that there was a "common question of whether class members are entitled to a refund in surrender charges."  Op. at 32.

Jackson now petitions for interlocutory appeal of this class certification under Rule 23(f).

## REASONS FOR GRANTING THE PETITION

Interlocutory review of a district court's class certification order may be granted "on the basis of any consideration." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1710 (2017).

This Court has noted two considerations may warrant interlocutory review: (1) whether 'the certification decision turns on a novel or unsettled question of law" and (2) whether "[a]n order granting certification . . . may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability." *Regents of Univ. of Cal. v. Credit Suisse First Boston (USA)*, 482 F.3d 372, 380 (5th Cir. 2007) (citing Advisory Committee Notes to Rule 23(f)). And as circuits have recognized, interlocutory review of an erroneous certification order "serves judicial economy 'if for no other reason than to avoid a lengthy and costly trial that is for naught once the final judgment is appealed.'" *In re Brewer*, 863 F.3d 861, 875 (D.C. Cir. 2017).

Review of the certification decision is warranted under all three criteria.

I.    **The Certification Decision Turns on a Novel and Unsettled Question of Law.**

The district court lacked personal jurisdiction over Jackson with respect to claims concerning annuity contracts outside of Texas.[2]    As the Supreme Court recently clarified, personal jurisdiction cannot arise merely because an out-of-state plaintiff has asserted claims similar to those of in-state plaintiffs.  *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017) (rejecting the California Supreme Court's test).[3]  Because the named plaintiffs all purchased their

---

[2]  It is undisputed that the district court cannot exercise general jurisdiction over Jackson.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).

Courts have generally recognized that *Bristol-Myers* precludes nationwide certification of a diversity-based class action outside the defendant's home state. *See, e.g., Wenokur v. AXA Equitable Life Ins. Co.*, 2017 WL 4357916, at *4 (D. Ariz. Oct. 2, 2017) (noting that the court "lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class"); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 C 2032, 2018 WL 1255021, at *3 (N.D. Ill. Mar. 12, 2018) (noting that the court cannot "exercis[e] personal jurisdiction over non-Illinois-resident class members").  *But see Monteville Sloan, et al., v. General Motors LLC*, No. 16-CV-07244-EMC, 2018 WL 784049, at *3–4 (N.D. Cal. Feb. 7, 2018) (declining to apply *Bristol-Myers* to class actions).  To the extent that this Court considers application of *Bristol-Myers* to class actions to be an unsettled issue, this Court grant this petition for permission to appeal and resolve this novel and unsettled issue.

[3] The district court questioned whether *Bristol-Myers* applies in federal court, but there is no serious argument that it does not: "In a diversity suit, a federal court has personal jurisdiction over a nonresident defendant to the same extent that a state court in that forum has such jurisdiction."  *Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994); *see also Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (in a diversity case, a federal court's exercise of personal jurisdiction over

annuity contracts in Texas, the district court had personal jurisdiction over Jackson with respect to their claims.

The question is how a defendant is required to raise issues regarding personal jurisdiction over the claims of prospective members. Must a defendant move to dismiss the claims of putative class members under Rule 12(b)(2)? Or is personal jurisdiction an issue properly raised at the class certification stage and considered in defining the scope of the class?

The district court concluded, without explanation, that Jackson was required to raise the issue in a 12(b)(2) motion, and, thus, Jackson waived its objection by failing to do so when it filed its 12(b)(6) motion. The district court cited no authority in support of its conclusion that Jackson could have moved under Rule 12(b)(2), and Jackson has failed to uncover any authority addressing the issue.

This is an important question of procedure with serious consequences for this case and others. If the rules truly mandate that defendants must move to dismiss the (potential) claims of putative class members before a class has been certified, then such a pronouncement should come from this Court. If not, the court below has

---

a nonresident defendant must comport with both federal due-process requirements and the long-arm statute of Texas). But if the applicability of *Bristol-Myers* in federal courts is truly an open question, it merely constitutes an additional novel and unsettled question of law that this Court should resolve.

made a significant mistake, which this Court should correct as soon as possible to prevent further misunderstandings.

The district court was mistaken. Its analysis appears to rest on a misunderstanding of the status of unnamed class members. Unnamed members of a putative class are not "parties." *See Smith v. Bayer Corp*., 564 U.S. 299, 313 (2011) (describing the contention that an unnamed class member could be "a party . . . before the class is certified" as "novel and surely erroneous"). Before class certification, their claims have not been asserted and could not be "dismissed."

The Eleventh Circuit has held that Article III prevents a district court from ruling on the claims of unnamed class members before certification. "Certification of a class is the critical act which reifies the unnamed class members and, critically, renders them subject to the court's power." *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015). Before certification, their claims are merely hypothetical: "[B]ecause the unnamed putative class members are not yet before the court, any claims that they might have against Wells Fargo necessarily exist only by hypothesis." *Id.* Thus, the Eleventh Circuit held, Article III prohibited a district court from ruling on a motion to dismiss these claims as subject to arbitration. *Id.* (noting the absence of a "justiciable controversy between Wells Fargo and the unnamed putative class members"); *see also Sosna v. Iowa*, 419 U.S. 393, 399

(1975) (explaining that certification gives the unnamed class members "a legal status separate from the interest asserted by" the named plaintiffs).

The Eleventh Circuit's analysis demonstrates the district court's error. In this case, as in the *Checking Account Overdraft Litigation*, the unnamed putative class members were not before the court, and their claims "exist[ed] only by hypothesis." Jackson was not required to—indeed, could not have—moved to dismiss these hypothetical claims under Rule 12(b)(2). Before certification, a Rule 12(b)(2) motion would have been premature. And Article III would have prevented the district court from ruling on such a motion.

Jackson's answer thus correctly explained that the personal jurisdiction objections were hypothetical. Problems with personal jurisdiction would arise only if and "[t]o the extent that a class outside of Texas is certified." Dkt. 43 at 3.

Instead of moving to dismiss the hypothetical claims of unnamed putative class members, Jackson properly raised personal jurisdiction in its class certification briefing, as a question of how broadly any class should be defined.

The Second Circuit's approach to Article III in class actions illustrates this principle. Under the Second Circuit's rule,[4] "no class may be certified that contains

---

[4] This Court has not yet taken sides in the circuit split regarding the application of Article III to class actions. *See In re Deepwater Horizon*, 739 F.3d 790, 801 (5th Cir. 2014) (noting the split). We cite the doctrine merely to show that it is an issue of class definition, rather than grounds for a motion to dismiss.

members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006); *accord Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010).  But this does not mean that defendants can move to dismiss the claims of unnamed putative class members for lack of standing.  Instead, the issue is one of class definition: "The class must therefore be defined in such a way that anyone within it would have standing." *Denney*, 443 F.3d at 264.

This Court recognized the need for "ongoing refinement and give-and-take inherent in . . . the formation of a workable class definition." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413–14 (5th Cir. 2004).  Part of that give-and-take in crafting a class definition should be consideration of personal jurisdiction with respect to the claims unnamed class members.  Jackson properly raised personal jurisdiction at the class certification stage (rather than through a 12(b)(2) motion prior to any 12(b)(6) motion), and the district court erred by holding that Jackson was required to move under Rule 12(b)(2) to dismiss the hypothetical claims of unnamed putative class members.

Although the district court's waiver holding is inconsistent with general principles of class litigation, the precise issue is technically novel.  This Court should thus grant this petition to address the novel and unsettled procedural issue or, alternatively, to simply correct the district court's error.

## II.    The District Court's Certification Order Has an *In Terrorem* Effect Due to the Large Number of Possible Claims.

As this Court has recognized, "class certification may be the backbreaking decision that places 'insurmountable pressure' on a defendant to settle, even where the defendant has a good chance of succeeding on the merits." *Regents*, 482 F.3d at 379 (citing *Castano v. Am. Tobacco*, 84 F.3d 734, 746 (5th Cir. 1996)).  Class actions can pressure defendants into settling questionable claims, "[f]aced with even the small chance of a devastating loss." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011); *see also Castano*, 84 F.3d at 746 ("The risk of facing an all-or-nothing verdict presents too high a risk, even when the probability of an adverse judgment is low.").

This consideration warrants granting this petition for permission to appeal. The district court certified a national class with more than 150,000 members, but the potential ramifications of an adverse class verdict might extend far beyond this case. Jackson's calculations follow a longstanding industry-wide practice.    The certification decision thus creates a threat to the entire variable annuity industry, given that other companies also follow Jackson's understanding of the contract language.    Dkt. 57 at 2.    Altering the calculation to comport with plaintiffs' interpretation would also affect hundreds of thousands of customers who understood that the surrender charges would also have the effect of reducing the "remaining

16

premium" and thus lowering the threshold for subsequent free "earnings" to be withdrawn.

The concern that threat of classwide liability might extort a settlement is particularly important in this case, where the class's claims are unusually weak. Jackson correctly calculated surrender charges consistent with the contracts, the prospectuses and SEC guidance; and Hightower, the broker for at least one (and potentially both) of the named plaintiffs, admitted that when his clients purchased the annuities, he understood and calculated for them exactly how Jackson would calculate the charges. Dkt. 57 at 2, 3.

In this case, the potential is high that class certification might "allow plaintiffs with weak claims to extort settlements from [an] innocent compan[y]" because of "[t]he extensive discovery and the potential for uncertainty and disruption in a lawsuit." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 149 (2008). This Court should grant permission to appeal.

## III.   This Court Should Grant Permission to Appeal Because of the Errors in the District Court's Rule 23 Analysis.

Finally, the errors in the district court's Rule 23 class certification analysis warrant review by this Court.

### A.    The district court's predominance inquiry was flawed.

The district court's predominance analysis rests on the conclusion that the individual plaintiff's knowledge or understanding of the surrender charges is

irrelevant to Jackson's liability for breach of contract.  This analysis is flawed in at least two respects.

First, the district court concluded that the specific materials given to each customer were irrelevant because the contract is unambiguous.  Op. at 27 ("[I]t is hard to see what extrinsic evidence would be relevant to interpreting unambiguous form contract terms.").  But rather than reviewing the contract language and concluding that it is unambiguous,[5] the district court relied solely on the fact that "neither party asserts that the contract is ambiguous."  Op. at 26.

This was error.  When parties disagree about the meaning of a contract, a court cannot simply assume that a contract is unambiguous because neither argues ambiguity:

> Although the parties present conflicting interpretations of the [contract] neither party presently contends that the agreement is ambiguous. Whether a contract is ambiguous, however, is a question of law, and thus the parties' failure to raise the issue is not determinative.

*Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012).  A court must independently determine whether a contract is unambiguous.  *Id*.

The district court should ultimately conclude that the contract language unambiguously supports Jackson's interpretation.  But in determining the meaning of the contract language (and whether a contract is unambiguous), the court cannot

---

[5] A conclusion that Jackson's interpretation is correct would end the litigation in Jackson's favor.

look at "the language . . . concerning the calculation of the Surrender Charges  . . . ,"

in isolation, as the district court found, Op. at 18, but must "interpret the entire

contract in all its parts and as a whole." *Asmussen v. Wilson*, 775 S.W.2d 676, 678

(Tex. App.—San Antonio 1989, no writ).[6]  For many—but not all—members of the

prospective class, the contract as a whole includes an "Appendix B," which

demonstrates precisely how the charges would be calculated.  *See* Op. at 18 (noting

the existence of Appendix B).  Thus, different class members will have different

combinations of documents that must be considered in determining the meaning of

"the entire contract in all its parts".

    In the alternative, if the contract were ambiguous, individualized questions for

each class member—How did you understand that surrender charges would be

calculated? What did your broker tell you? What additional documents did you

receive explaining surrender charges?—would predominate over common issues.

---

[6]  Whether a court is determining the meaning of an unambiguous contract or determining if it is ambiguous in the first place, Texas law requires individual inquiries to determine the "entire writing" and the "commercial circumstances" of the contract.  *See Pennzoil Co. v. F.E.R.C.,* 645 F.2d 360, 388 (5th Cir. 1981); *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006); *see also* Restatement (Second) of Contracts § 212 cmt. b (1981) ("It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context.").

The district court's assumption that the contract was unambiguous without first considering all the relevant documents that would need to be considered was erroneous, conflicts with black-letter contract law, and warrants immediate review.

Second, the district court's analysis of Jackson's affirmative defenses—based on an individual class member's subjective understanding—was equally flawed. The district court held that these defenses "require plaintiffs to have full knowledge of the circumstances," including knowledge of "the lawfulness of Jackson's conduct." Op. at 29.

But this is the wrong test. The district court adopted the standard from a Pennsylvania case addressing whether a gym contract complied with a statute regulating initiation fee charges. *See* Op. at 29 (citing *Allen v. Holiday Universal*, 249 F.R.D. 166, 169 (E.D. Pa. 2008)). The waiver issue in that case—whether a plaintiff waived the right to have a contract declared void for illegality—has no relevance to Jackson's affirmative defenses, which concern whether class members waived (or ratified) Jackson's purported miscalculation of surrender charges. The "lawfulness" standard applied by the district court is error.

Indeed, a Texas court of appeals has expressly rejected the test applied by the district court. Waiver requires knowledge of facts, not knowledge that facts breach a contract: "Proof regarding a party's actual understanding of the legal consequences of those facts is not required, as parties are presumed to know and understand the

legal effect of their contracts and waivers." *Trelltex, Inc. v. Intecx, LLC*, 494 S.W.3d 781, 792 (Tex. App.—Houston [14th] 2016, no pet.) (rejecting "the incorrect inference that the promisor must know his legal rights and must intend the legal effect [of waiver]" in favor of the rule that "it is sufficient if he has reason to know the essential facts" (quoting Restatement (Second) of Contracts § 84 cmt. b (1981))).

The district court thus erred in holding that waiver and ratification required knowledge of the "lawfulness" of Jackson's actions. Under the correct standards, the subjective knowledge of the individual plaintiff is highly relevant to Jackson's affirmative defenses. Adjudicating these defenses will require inquiry into what, precisely, a plaintiff knew about the surrender charges (through their broker or otherwise), when they learned this information, and what actions they took in response. These individualized inquiries will predominate.

Moreover, in evaluating these individualized issues, the court would need to apply the law of the state in which each class member resides. The different laws provide yet another reason that a nationwide class should not have been certified, and plaintiffs did not prove otherwise.[7]

---

[7] Plaintiffs have the burden of demonstrating that variations in state law do not defeat predominance. *See Spence v. Glock*, 227 F.3d 308, 313-16 (5th Cir. 2000) (decertifying a class because plaintiffs failed to provide an extensive analysis of state law variations); *Castano*, 84 F.3d at 742 (district court abused its discretion in certifying class where plaintiffs failed to properly address variations in state law and failed to establish predominance).

The district court's predominance analysis rests on legal errors, both regarding the liability standards and Jackson's affirmative defenses. Evaluating predominance "requires that the court look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law.'" *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003). The district court failed in this inquiry, and this Court should permit appeal of its certification order.

### B.   The district court erred in certifying a class when the plaintiffs failed to provide a damage model.

The district court erred by certifying a class when the plaintiffs failed to provide a tangible damages model or formula. The district court's analysis relied instead on the testimony of the plaintiff's expert that he thought that he could calculate damages, and that it would be "very straightforward" to do so. Dkt. 52, Ex. B. Reliance on this testimony was contrary to precedent of this Court and the Supreme Court.

In *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the Supreme Court held that a plaintiff seeking class certification must provide a damage model that "measure[s] only those damages attributable to [the] theory." *Id.* at 1433. "If the

---

As this Court has properly noted, "variations in state law may swamp any common issues and defeat pre-dominance," *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 724 (5th Cir. 2007). Accordingly, "the party seeking certification of a nationwide class must therefore "provide an 'extensive analysis' of state law variations to reveal whether these pose 'insuperable obstacles.'" *Id.* A "failure to engage in an analysis of state law variations is grounds for decertification." *Id.*

model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*

In short, "*Comcast* held that when plaintiffs argue that damages can be decided on a class-wide basis, plaintiffs must put forward a damages methodology that maps onto plaintiffs' liability theory." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 410–11 (5th Cir. 2017).

Yet in this case, the district court granted class certification without requiring the plaintiffs to provide a damage model. The vague assurances of plaintiffs' expert that such a model "can" be created is no substitute for plaintiffs actually putting forward a damages methodology.[8]

The district court erred in certifying class based on the assurances of an expert that a damage model "could" be created. This error warrants review by this Court in an interlocutory appeal.

---

[8] There is good reason to doubt that plaintiffs could provide a damage model that could be calculated on a classwide basis. Jackson presented evidence that a damage model would need to determine possible effects of different and multiple surrender charges throughout the life of an account, which also may include different investment decisions and different future withdrawals. *See* Dkt. 57 at 17. It is difficult to see how these individualized investment decisions and allocations could be recreated as a common issue.

## CONCLUSION & PRAYER FOR RELIEF

This Court should grant this petition for immediate appeal of the order granting class certification. Counsel for Defendant conferred with counsel for Plaintiffs, who oppose this petition.

Dated: May 23, 2018

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ *William R. Peterson*
      William R. Peterson
      David J. Levy
      Thomas R Davis
      Rachel H. Stinson
      Jason F. Muriby
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188
(713) 890-5001 (Fax)

      Scott T. Schutte
77 West Wacker Drive, Suite 500
Chicago, IL 60601
(312) 324-1000
(312) 324-1001 (Fax)

**Counsel for Petitioner, Jackson National Life Insurance Company**

### CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2018, I electronically transmitted this Petition for Review to the Clerk of the Court using the Court's ECF system. I further certify that counsel of record for Plaintiffs-Respondents are being served with a copy of this Petition by electronic means via the Court's ECF system, or by email, as follows:

### *Counsel for Plaintiffs-Respondents*

Lewis T. LeClair
Rudolph "Rudy" Fink IV
Samuel Franklin Baxter
**MCKOOL SMITH, P.C.**
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

Gary D. Corley
**CORLEY LAW FIRM**
108 North Travis Street
Sherman, Texas 75090
Telephone: (903) 892-1048
Fax: (214) 260-4925

*/s/    William R. Peterson*
William R. Peterson

25

## CERTIFICATE OF COMPLIANCE WITH RULE 32(C)(2)

     1.     This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c) because this petition contains 5,140 words, excluding the parts exempted by Fifth Circuit Rule 5 and Federal Rule of Appellate Procedure 32(f).

     2.     This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

*/s/  William R. Peterson*
William R. Peterson

Dated: May 23, 2018

# Appendix A

**District Court's Class Certification Order**

***Tredinnick, et al. v. Jackson National Life Insurance Co.*,**
**4:16-CV-912-LM**
**in the United States District Court for the**
**Eastern District of Texas**
**(Mazzant, J.)**

# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| RICHARD TREDINNICK, EILEEN TREDINNICK, IRWIN SEARS, RUTH SEARS, DAVID CRUSON, JAMES R. GLENN, SUZANNE HOUSEWRIGHT, JEFFREY R. MILLER, KAREN T. MILLER, BILLY WALKER, and CAROLYN WALKER | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.  4:16-CV-00912<br><br>Judge Mazzant |
| v. | §<br>§ | |
| JACKSON NATIONAL LIFE INSURANCE COMPANY | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiffs' Opposed Motion for Leave to Amend Complaint to Add Class Representative (Dkt. #89), Unopposed Motion to Dismiss (Dkt. #86), and Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #52).  After reviewing the relevant pleadings, motions, and oral arguments, the Court finds that Plaintiffs' Opposed Motion for Leave to Amend Complaint to Add Class Representative (Dkt. #89) and Unopposed Motion to Dismiss (Dkt. #86) are granted. Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #52) should be granted in part and denied in part.

## BACKGROUND

Plaintiffs Richard Tredinnick, Eileen Tredinnick, Irwin Sears, Ruth Sears, David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R. Miller, Karen T. Miller, Billy Walker, and Carolyn Walker ("Named Plaintiffs" or "Plaintiffs") bring this proposed nationwide class action on behalf of themselves and others who purchased variable annuity investment products from Defendant Jackson National Life Insurance Company ("Jackson").  In so doing, Plaintiffs aim to

wrest and remedy harm resulting from Jackson's systemic contractual misrepresentation and breach when assessing certain fees—surrender charges—on those products.

Jackson nationally markets variable annuities through a network of individual sales agents, marketing organizations, third-party marketing organizations, brokerage firms, and financial institutions. Jackson sells variable annuities through four distribution channels—independent broker/dealers, regional broker/dealers, financial institutions, and individual sales agents ("affiliated agents").  To support its affiliated sales agents, Jackson prepares, approves, and disseminates account service forms, brochures, marketing, and sales materials.  Affiliated agents use these materials to market and sell annuities to customers, many of whom are senior citizens. Jackson primarily markets variable annuities to older customers and senior citizens in the Eastern District of Texas and nationwide.  When marketing its annuities, Jackson touts their guaranteed safety of principal, lifetime income streams, and opportunities for market growth.

A deferred annuity can either be fixed or variable.  Fixed annuities appreciate at a guaranteed fixed interest rate.  The issuer of a fixed annuity pays the purchaser a guaranteed interest rate—similar to a debt instrument.  Variable annuities, on the other hand, invest in equity portfolios and do not appreciate at a guaranteed fixed rate.  As equity markets shift in value, so does the return on the annuity.

Fees significantly shape variable annuity performance.  One fee—the surrender charge—generates substantial revenue for issuers like Jackson.  Such surrender charges include withdrawal charges and recapture charges (collectively, "surrender charge(s)").  From 2009-2013, Jackson published the following surrender charges—2009: $25,432,934; 2010: $31,960,116; 2011: $37,748,144; 2012: $40,792,400; 2013: $52,189,880. (Dkt. #10 at pp. 11, 12).  In 2014, Jackson stopped publicly reporting surrender charges.  Given this burgeoning trend of annual surrender

charges, however, Plaintiffs presume that Jackson earned over $50 million in surrender charges in 2014 and 2015.

Plaintiffs claim that Jackson assesses surrender charges on withdrawals from annuities and again on the surrender charges themselves. In doing so, Plaintiffs aver that Jackson breaches the plain language of its contract and contravenes Securities and Exchange Commission ("SEC") annuity consumer protection guidelines. Plaintiffs aim to stop this practice and compensate current contract holders who paid excess surrender charges.

On November 14, 2017, Plaintiffs filed an Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #52). On January 19, 2018, Jackson filed a response (Dkt. #57). On February 15, 2018, Plaintiffs filed a reply (Dkt. #68). On February 28, 2018, Jackson filed a sur-reply (Dkt. #81). On March 5, 2018, the Court held a hearing on this matter where it heard oral argument from counsel for both Plaintiffs and Jackson (Dkt. #84).

On April 18, 2018, Plaintiffs filed an Unopposed Motion to Dismiss (Dkt. #86), seeking to remove all of the Named Plaintiffs as class representatives, except David Cruson. Jackson filed its response the same day (Dkt. #87). On April 24, 2018, Plaintiffs filed an Opposed Motion for Leave to Amend Complaint to Add Class Representative (Dkt. #89), seeking to add John Denman as a putative class representative. On May 8, 2018, Jackson filed its response (Dkt. #94).

## LEGAL STANDARD

### I.    LEAVE TO AMEND

"Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." *S&W Enters. v. SouthTrust Bank*, 315 F.3d 533, 536 (5th Cir. 2003). Federal Rule of Civil Procedure 16(b), a schedule may be modified for "good cause." *Id*. The Fifth Circuit has established four factors the Court should consider when determining whether good cause exists:

"(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure the prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546–47 (5th Cir. 2003).

Federal Rule of Civil Procedure 15(a)(2) states that the Court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a).  "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters.*, 315 F.3d at 536.  Whether to allow amendment "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992).

## II.   PERSONAL JURISDICTION

In addition to its opposition to class certification, Jackson challenges whether the Court has personal jurisdiction over claims against Jackson.  Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2).  After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing.  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l*

*Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction.  *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted).  However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state.  *Helicopteros*, 466 U.S. at 414 n.8.  For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out

of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal

jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374,

378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations

with citizens of another state are subject to regulation and sanctions in the other state for

consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health

Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)).  Establishing a defendant's minimum contacts with

the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the

unilateral activity of another party or third person." *Id*.

## III.   CLASS CERTIFICATION

"Rule 23 governs whether a proposed class falls within the limited exception to 'the usual

rule that litigation is conducted by and on behalf of the individual named parties only.'" *Ibe v.

Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01

(1979)).  "Four prerequisites must be met by all classes: numerosity, commonality, typicality, and

adequacy of representation." *Id.*  (citing FED. R. CIV. P. 23(a)).  The party seeking certification

must first demonstrate that

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses
    of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class

whose claims they wish to litigate," and then, "the proposed class must satisfy at least one of the

three requirements listed in Rule 23(b)."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 349,

131 S. Ct. 2541, 2552, 180 L. Ed. 2d 374 (2011). Those requirements are

> (1) prosecuting separate actions by or against individual class members would create risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b).

## ANALYSIS

## I.    LEAVE TO AMEND AND MOTION TO DISMISS

Plaintiffs Richard Tredinnick, Eileen Tredinnick, Irwin Sears, Ruth Sears, James R. Glenn,

Suzanne Housewright, Jeffrey R. Miller, Karen T. Miller, Billy Walker, and Carolyn Walker

request dismissal from this case without prejudice so that they can pursue different claims against

Jackson in Texas State Court related to the charges they incurred under their broker Tim

Hightower's ("Hightower") Exit Plan.[1]  Thus, Plaintiffs assert that they "do not wish to entangle

---

[1] Hightower initially used a "re-entry scheme," where he would withdraw money from his clients' accounts and then redeposit some, or all, of that money back into those accounts, generating additional commissions for himself with little, if any, benefit to his clients. Jackson initially restricted Hightower's use of this scheme and ultimately terminated him. When Hightower was no longer able to use his re-entry scheme, he convinced Plaintiffs to engage in his "Exit Plan," which involved moving their money to other companies.  However, these cash-outs would incur surrender chargers. To offset the "loss" of cashing out, Hightower had Plaintiffs purchase new contracts from another carrier (like Pacific Life) that provided "bonus credit that would offset a portion of the surrender charge incurred by the

this class action . . . with their individual state-court claims against Jackson" and also seek to avoid

a possible claim preclusion argument from Jackson (Dkt. #89 at p. 3). Plaintiffs' assert that the

remaining class representative, Mr. Cruson, has elected not to pursue any individual claims against

Jackson.[2]

In their motion for leave to amend, Plaintiffs wish to add Mr. Denman as a putative class

representative to strengthen the class's representation. Plaintiffs claim that "Plaintiffs' counsel

identified Mr. Denman within the last month" and because he did not use Mr. Hightower, there

are arguably no "issues associated with unique defenses or typicality." (Dkt. #86 at p. 2).

Jackson asserts it is too late to add a new putative class representative and doing so would

unduly prejudice Jackson (Dkt. #94). The Court disagrees. *See In re Norplant Contraceptive

Prod. Liab. Litig.*, 163 F.R.D. 255, 257 (E.D. Tex. 1995) (granting the plaintiffs leave to amend to

add additional parties); *see also Ruderman vs. Washington National Insurance Co.*, 263 FRD 670,

677 (S.D. Fl. 2010) (granting certification and allowing additional plaintiffs to intervene to be

added as class representatives).

Mr. Denman complains of the same surrender charge calculation as the one listed in the

original complaint. Thus, "granting leave to amend in order to add [him as a Named Plaintiff] will

cause neither undue delay nor undue prejudice, and the amendment is certainly germane to the

original complaint. Additionally, there is no evidence to suggest that Plaintiffs are acting in bad

faith in seeking to add these new plaintiffs." *In re Norplant*, 163 F.R.D. at 257. Jackson will not

---

client." (Dkt. #57, Exhibit S-03, Hightower Dep. 78:4–7). He also instructed Plaintiffs to write letters to his broker-dealer (Capital Investments Group, Inc.) to be "made whole" for the amounts not covered by the "bonuses." The broker-dealer paid these "make whole" amounts (Dkt. #57, Exhibit N).

[2] Also Jackson argues that Plaintiffs essentially acknowledge that the Named Plaintiffs' individual claims create "unique circumstances [that] are **atypical** of any class under Rule 23(a)(3)" (Dkt. #87 at p. 1) (emphasis in original). If that were true, Mr. Cruson would also "fall[] under the same umbrella and suffer[] that same shortcomings, as a prospective class representative." (Dkt. #87 at p. 2). However, as discussed *infra* Part III.A.4, the Court finds that these individual claims do not preclude a finding of typicality.

be unfairly prejudiced because at the time the motion for leave was filed, the Court had not yet ruled on the motion for class certification. *See id.* The Court finds that Plaintiffs should be allowed to amend their complaint to add Mr. Denman as a class representative.

## II.    PERSONAL JURISDICTION

Jackson challenges whether the Court has personal jurisdiction over claims against Jackson. Jackson relies on *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco Cty.*, 137 S. Ct. 1773, 1775, 198 L. Ed. 2d 395 (2017), asserting that "[a] class of non-Texas residents would be improper, because Jackson is not subject to general personal jurisdiction in Texas and non-Texas putative class members cannot establish specific personal jurisdiction over Jackson merely because the named Plaintiffs are from Texas." (Dkt. #57 at p. 23). Plaintiffs argue that Jackson waived this challenge by not arguing it in its previous motion to dismiss (Dkt. #68 at p. 10).

Federal Rule of Civil Procedure 12(h)(1) "advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process. If he wishes to raise any of these defenses he must do so at the time he makes his first defensive move." *Golden v. Cox Furniture Mfg. Co. Inc.*, 683 F.2d 115, 118 (5th Cir. 1982). Under Federal Rule of Civil Procedure 12(h)(1), "[a] party waives any defense listed in rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)." FED. R. CIV. P. 12(h)(1)(A). Federal Rule of Civil Procedure 12(g) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g)(2). Accordingly, a party must assert any Rule 12(b)(2) motion that is available at the time it files any Rule 12 motion. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 n.1 (5th Cir. 2008); *Elbit Sys. Land & C41 Ltd. v. Hughes Network Sys,*

*LLC*, No. 2:15-cv-37, 2017 WL 2651618, at *20 (E.D. Tex. June 20, 2017) (citing *e.g.*, *Peacock v. Ins. & Bonds Agency of Tex., PLLC*, No. 3:12-CV-1710-D, 2012 WL 3702920, at *1 (N.D. Tex. Aug. 28, 2012)).

Jackson asserts that it raised its personal jurisdiction objection in its answer and has properly preserved its objection to nationwide certification outside its home state (*See* Dkt. #43 at p. 43).  Even though Federal Rule of Civil Procedure 12 requires defendants to file motions contained in that rule before filing an answer, courts often consider a motion to dismiss under Rule 12(b) timely as long as the defense is properly preserved in the party's answer.  *Brokerwood Intern. (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 379–81 (5th Cir. 2004); *Isbell v. DM Records, Inc.*, 2011 WL 1299611, at *2 n.2 (E.D. Tex. March 31, 2011) ("courts often 'consider a post-answer motion to dismiss as properly before the court as long as the movant also raised the defense . . . in his or her answer.'") (quoting *Delhomme v. Caremark RX Inc.*, 232 F.R.D. 573, 575–76 (N.D. Tex. 2005)); *Cloeren Inc. v. Extrusion Dies Indus., LLC*, 2012 WL 12897045 at *2 (E.D. Tex. Aug. 14, 2012) ("Although a post-answer Rule 12(b)(6) motion is technically untimely under the Rules, if a defense has previously been included in the answer, a court will generally allow a Rule 12(b)(6) motion.") (citing *Jones v. Lopez*, 262 F. Supp. 2d 701, 706 (W.D. Tex. 2001); *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999)).  Accordingly, as long as Jackson otherwise preserved its 12(b)(2) defense, its failure to file a motion before it filed its answer did not constitute waiver.

Jackson initially raised its personal jurisdiction objection in its answer (Dkt. #43 at p. 43). Jackson filed its first Rule 12 motion on February 6, 2017, by filing a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, and 12(b)(1) asserting Dale and Janice Morris and Ronald L. Wyatt lacked standing (Dkt. #5).  At that time, Jackson did not attempt to

file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Moreover, on March 31, 2017, Jackson renewed its Rule 12 motion after Plaintiffs amended their complaint, and again this motion was not based on lack of personal jurisdiction under 12(b)(2).[3]  In its response to Plaintiffs' motion for class certification, Jackson finally raised and briefed its objection to the Court's personal jurisdiction (Dkt. #57 at pp. 23–25).

Even where the defense was asserted in a timely answer, delay in challenging personal jurisdiction by motion to dismiss may result in waiver.  *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *11 (W.D. Tex. Apr. 5, 2017) (citing *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994) ("[A] party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum.")). *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 654 (5th Cir. 2002).  A defendant may waive or forfeit a personal jurisdiction defense through litigation on the merits in situations in which it is not clear that the defendant maintains its personal jurisdiction defense. *See, e.g.*, *Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010) (holding that despite defendant's initial response to plaintiff's injunction motion including a statement that the district court lacked personal jurisdiction over it, defendant nevertheless waived its personal jurisdiction defense by substantially litigating on the merits, including both briefing and oral arguments addressing the merits of plaintiff's claim); *Gerber v. Riordan*, 649 F.3d 514, 518 (6th

---

[3] On September 29, 2017, the Court granted in part and denied in part Jackson's motion to dismiss (Dkt. #31), dismissing Plaintiffs' negligent misrepresentation claim under 12(b)(6) and dismissing Dale and Janice Morris's and Ronald L. Wyatt's claims under 12(b)(1) for lack of standing.

Cir. 2011) (holding defendants waived their personal jurisdiction defense where defendants filed an initial motion to dismiss for lack of personal jurisdiction, which was rejected for reasons other than the merits, and then participated in litigating on the merits before renewing their motion, which included their counsel making a general appearance).

Thus, Jackson waived its defense to personal jurisdiction by failing to timely move or plead such a defense, assuming that such a defense was available at the time Jackson filed its 12(b)(6) motion. FED. R. CIV. P. 12(g)(2); FED. R. CIV. P. 12(h)(1)(A).  Jackson argues that the Supreme Court's decision *Bristol-Myers* "represented a change in the law coming after Jackson's original motion to dismiss, which provided Jackson a basis to object to nationwide certification that was not previously available; thus, Jackson did not waive that objection under Rule 12(g)(2) or (h)(1)" (Dkt. #81 at p. 10).  *See Bristol-Myers,* 137 S. Ct. at 1775.

The Supreme Court issued the *Bristol-Myers* decision on June 19, 2017.  Since then, courts have been split as to whether *Bristol-Myers* precludes nationwide certification of a diversity-based class action outside the defendant's home state.  *See Monteville Sloan, et al., v. General Motors LLC*, No. 16-CV-07244-EMC, 2018 WL 784049, at *3–4 (N.D. Cal. Feb. 7, 2018) (declining to apply *Bristol-Myers* to class actions); *but see DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018); *Spratley v. FCA US LLC*, No. 317CV0062MADDEP, 2017 WL 4023348, at *7–8 (N.D.N.Y. Sept. 12, 2017); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 (D. Ariz. Oct. 2, 2017).

Even if the *Bristol-Myers* decision represented a change in the law that created a basis to object to nationwide certification based on personal jurisdiction that was not previously available to Jackson (which Jackson has not shown),[4] the Court finds that Jackson still waived the defense

---

[4] Contrary to Jackson's contention, the Court finds that the Supreme Court's decision in *Bristol-Myers* does not constitute a change in the law and involves only the straightforward application of settled principles of specific

by delaying in challenging personal jurisdiction and substantially litigating on the merits.   The

right or privilege to assert that objection came into existence on June 19, 2017, when the *Bristol-*

*Myers* decision was issued.   By waiting exactly seven months after *Bristol-Myers* to informally

raise the personal jurisdiction objection in its response to class certification (Dkt. #57 at pp. 23-25)

and then proceed to substantially litigate on the merits,[5] including filing its motion for summary

judgment (Dkt. #59), Jackson waived the objection.[6]

## III.   CLASS CERTIFICATION

In considering class certification, "the district [court] 'must conduct a rigorous analysis of

the Rule 23 prerequisites before certifying a class.'"   *Yates v. Collier*, 868 F.3d 354, 362 (5th Cir.

2017) (quoting *Castano*, 84 F.3d at 740).   This analysis may require some overlap with the merits

of the claims.   *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013).

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the

---

personal jurisdiction. *See Bristol–Myers*, 137 S.Ct. at 1783 ("Our straightforward application in this case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up.").   "And even if it did not, *Bristol–Myers* concerns only the 'due process limits on the exercise of specific jurisdiction by a State.'" *Thomas v. Kellogg Co.*, No. C13-5136RBL, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (quoting *Bristol–Myers*, 137 S.Ct.at 1783). It is unclear whether *Bristol–Myers* even applies to this case, filed in federal district court. *See Bristol–Myers*, at 1783–84 ("[S]ince our decision concerns the due process limits on the exercise of specific jurisdiction *by a State*, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.") (emphasis added). Nor has Jackson identified controlling precedent in the Fifth Circuit directly precluding its jurisdictional argument.

[5](*See also* Dkt. #26—Unopposed Motion to Set Hearing On Motion to Dismiss Amended Class Action Complaint; Dkt. #28—Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory P. McDonald, From Access to Defendant's Confidential Information Pursuant to Paragraph 19 of The Protective Order (later withdrawn)).

[6] Courts in the Eastern District have recently applied this analysis to patent venue challenges after the Supreme Court's decision in *TC Heartland*, which was declared an intervening change in the law by the Federal Circuit.   *In re Micron Tech., Inc.*, 875 F.3d 1091, 1100 (Fed. Cir. 2017) (citing *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1515, 197 L. Ed. 2d 816 (2017)); *see Keranos, LLC, v. Silicon Storage Tech. Inc., et al*, 2:13-cv-00017-RWS-RSP, Dkt. #383 at 3 (E.D. Tex. March 1, 2018) ("The Court agrees with [Plaintiff] that by waiting almost nine months after *TC Heartland* to raise the venue objection, Defendants waived the objection.*"); but see Orthosie Sys., LLC v. Redtail Telematics, Corp.*, No. 4:16-CV-00927, 2017 WL 3608185, at *2 (E.D. Tex. Aug. 22, 2017) (finding Defendant adequately preserved improper venue defense by filing its first Rule 12(b)(3) approximately two months after *TC Heartland*, "before the parties had begun to significantly litigate the case").   "Nothing in the Federal Rules of Civil Procedure would preclude a district court from applying other standards, such as those requiring timely and adequate preservation, to find a venue objection lost if, for example, it was not made until long after the statutory change took effect."   *In re Micron Tech., Inc.*, 875 F.3d at 1100.

certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The Court must be mindful of the practicalities of trying the particular case as a class action when conducting this rigorous analysis. *Dukes*, 564 U.S. at 351 ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982) (internal quotation omitted)); *see Madison v. Chalmette Refining, L.L.C.,* 637 F.3d 551, 556 (5th Cir. 2011).

"The party seeking certification bears the burden of proof" that the proposed class meets all certification requirements. *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).

## A. 23(a) – Prerequisites

### 1. Ascertainability[7]

Before considering the express Rule 23 requirements, the Court considers whether a class exists that can be adequately defined. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). The *Proposed Class of Jackson Contract Holders Damaged by Overcharges* consists of the following:

---

[7] In their reply, Plaintiffs concede that the economic loss rule bars recovery of their breach-of-fiduciary-duty claims (Dkt. #68 at p. 8) and the Court excludes them from their proposed class definitions.

All persons who, within the applicable statute of limitations, purchased a Perspective series, Elite Access series, or Retirement Latitudes series of variable annuity products from Jackson National Life Insurance Company or its affiliates, and incurred a Surrender Charge during their ownership of such product but excluding the judge and staff to whom this case is assigned and any member of the judge's immediate family.

Plaintiffs assert that this class should be certified for the claims whether or not Jackson breached its contracts with the class members through its calculation of surrender charges, except those with contracts issued in Louisiana and Tennessee.

The *Proposed Class of Jackson Contract Holders for Injunctive Relief* consists of the following:

All persons who purchased a Perspective series, Elite Access series, or Retirement Latitudes series of variable annuity products from Jackson National Life Insurance Company or its affiliates and that still have an active contract with Jackson and so might incur a Surrender Charge during their ownership of such product but excluding the judge and staff to whom this case is assigned and any member of the judge's immediate family.

Plaintiffs assert that this class should be certified for the claims regarding the interpretation of Jackson's contracts regarding surrender chargers with the class members, except those with contracts issued in Louisiana and Tennessee.

The Court is persuaded that Plaintiffs have selected a feasible and manageable process to identify class members using Jackson's records. The information that has been produced on Jackson's annuity policy holders and their transactions allows for the identification of over 150,000 Jackson annuity policy holders who have incurred surrender charges. The Court finds these records are sufficient objective criteria to ascertain the proposed class under Plaintiffs' proposed class definition.

### 2. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all the class members would be impracticable. FED. R. CIV. P. 23(a). "[A] number of facts other than the actual or estimated number of purported class members may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Ibe*, 836 F.3d at 528. The Fifth Circuit has found that 100 to 150 members is within the range that satisfies the numerosity requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

Plaintiffs estimate that there are more than 150,000 members of the nationwide class who have incurred surrender charges. These overcharged policies are distributed throughout the fifty states of the United States and the District of Columbia. In its response, Jackson does not dispute that Plaintiffs' proposed nationwide class is sufficiently numerous to satisfy Rule 23(a)(1). Joinder is also impracticable. The numerosity requirement is therefore met.

### 3. Rule 23(a)(2): Commonality

Commonality requires "questions of law or fact common to the class." FED R. CIV. P. 23(a)(2). "Even a single common question of law or fact can suffice to establish commonality, so long as resolution of that question 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Ibe*, 836 F.3d at 528 (quoting *Dukes*, 564 U.S. at 350).

Plaintiffs assert that the class members share common facts and questions as to breach of contract, including the uniform terms of the contracts and the uniform conditions of the breach of contract, that are central to their claims. The Court agrees.

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) (quoting *Dukes*, 564 U.S. at 350).

The factual and legal questions as to whether Jackson calculated its surrender charge correctly and whether its actions breached its contracts with its annuity holders can be resolved through the presentation of common evidence and generate common answers for all plaintiffs. Neither party asserts that the contract language is ambiguous (*See* Dkt. #57 at p. 1) ("Plaintiffs' lawsuit is founded on an unreasonable reading of unambiguous contract language."). Jackson also stipulates to the following facts regarding variable annuity products issued in states other than New York, which shows there are no material differences in its contract language, how Jackson calculates and applies withdrawal charges, and how it markets its contract:

- There are no material differences in how Jackson calculates [Surrender] Charges for residents of any one state of the United States as compared to any other;

- There are no material differences in the language in Jackson's variable annuity contracts concerning the calculation of Surrender Charges between a contract issued in any one state of the United States as compared to any other;

- With respect to each type of Jackson variable annuity contract, there are no material differences in the language in Jackson's variable annuity prospectuses concerning the calculation of Surrender Charges between a contract issued in any one state of the United States as compared to any other state; except that the prospectuses for some of Jackson's variable annuity contracts have an Appendix B that other prospectuses do not. However,

Jackson calculates Surrender Charges uniformly, regardless of the presence or absence of Appendix B;

- There are no material differences in the language of Jackson's variable annuity contracts concerning the calculation of Surrender Charges;

- There are no material differences in the language in Jackson's marketing materials concerning Surrender Charges in any one state of the United States as compared to any other state, except as set forth in paragraph 3 above; and

- There are no material differences in the training material or how Jackson trains its support personnel to respond to questions or inquiries from policy holders concerning Surrender Charges in any one state of the United States as compared to any other state.

(Dkt. #52 at pp. 8–9).

Given the uniformity of Jackson's contracts and actions, the contention of breach is a common question. The commonality of Rule 23(a)(2) is met. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) ("Rule 23(a)(2) requires that all of the class members' claims depend on a common issue of law or fact whose resolution "will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.") (quoting *Dukes*, 131 S.Ct. at 2551) (emphasis in original). The Court will address Jackson's arguments relating to its affirmative defenses and individualized damages in the predominance section because Plaintiffs have raised "at least one contention that is central to the validity of each class member's claims." *See In re Deepwater Horizon*, 739 F.3d at 810.

### 4. Rule 23(a)(3): Typicality

Typicality requires a determination of whether the named plaintiffs' claims are typical of those of the proposed class they seek to represent. FED R. CIV. P. 23(a)(3). The test "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether

the class representative's claims have the same essential characteristics of those of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."  *Id.*

The parties disagree as to whether the Named Plaintiffs are typical of those of the members of the proposed class.  Plaintiffs assert that the Named Plaintiffs in this lawsuit represent typical holders of Jackson variable annuity contracts who have incurred surrender charges.  Mr. Denman purchased two variable annuities from Jackson called Prospective Rewards on November 16, 2012.  Mr. Denman incurred the following surrender charge: $75,226.53 on August 10, 2017.  Mr. Cruson purchased six variable annuities from Jackson called Perspective II between the dates of January, 23, 2014 and January 31, 2014. Mr. Cruson incurred the following surrender charges: $3,933.80 on June 22, 2016, $3,624.60 on June 21, 2016, $3,209.41 on June 22, 2016, and $3,595.95 on June 21, 2016.  Plaintiffs contend that their claims "share the same legal theories . . . and arise from the same conduct—each class representative withdrew funds from a Jackson variable annuity and suffered the same Surrender Charge injury as the proposed class." (Dkt. #52 at p. 14).

Jackson asserts that the Mr. Cruson was compensated for all surrender charges that he incurred under Hightower's Exit Plan.  Moreover, Jackson argues "Plaintiffs' lawsuits will be consumed by defenses related to these payments—*e.g.*, no standing, no damages, unjust enrichment, and offset—causing their litigation and strategies to differ meaningfully from those of the putative class members who did not receive such payments." (Dkt. #57 at p. 8).  Jackson further argues that the Named Plaintiffs have not suffered living or death benefit damages and "[t]here are no allegations that any [Named] Plaintiff took a living benefit impacted by a surrender

charge, nor is it alleged that any Plaintiff is beneficiary that took a death benefit impacted by a surrender charge." (Dkt. #57 at p. 8).

Plaintiffs counter that money Mr. Cruson received was paid by other parties, for reasons specific to those parties and not to benefit Jackson.  Plaintiffs assert that Mr. Cruson was compensated with payments for the settlement of claims with their broker and broker-dealer because they could not deliver on the promised Jackson re-entry strategy.  Thus, Jackson has provided no compensation for its actions and is not entitled to an offset of damages from those payments.[8]  Furthermore, Plaintiffs assert that differences in living and death benefit damages is merely a difference in damages calculation.  For all class members, Jackson's surrender charge calculation resulted in less money being in the accounts than there should be.  Those class members who have also invoked a living or a death benefit of their contract are simply entitled to additional damages.

The variations between the representatives and other members of the class are fundamentally variances in damages (e.g., the amount of the overcharge or when the overcharge occurred), not variances in the merits of the claims.  "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[T]ypicality is not primarily concerned with whether each person in a proposed class suffers the same type of damages . . . it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

---

[8]"Under the 'collateral source rule,' a party may not have the benefit of insurance independently procured by the injured party, and to which the party was not privy." *Structural Metals, Inc. v. S & C Elec. Co.*, No. SA-09-CV-984-XR, 2013 WL 870084, at *5 (W.D. Tex. Mar. 7, 2013), *aff'd*, 590 F. App'x 298 (5th Cir. 2014) (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex. 1980). "The collateral source rule is an exception to the one satisfaction rule." *Structural Metals*, 2013 WL 870084, at *5 (applying the collateral source rule to contract and warranty claims, finding payments for different injuries did not trigger the one satisfaction rule).

To the extent whether the Named Plaintiffs are subject to such affirmative defenses, which are discussed in greater detail *infra*, the issue in this case is whether the putative class representatives and the class members all share common contract language and common conditions resulting in their harms.  In other words, "[i]n the event the class members in this case were to proceed in a parallel action, they would advance legal and remedial theories similar, if not identical, to those advanced by the [N]amed [P]laintiffs." *Lightbourn*, 118 F.3d at 426.  Thus, the Court finds the typicality requirement is met.

### 5.  Rule 23(a)(4): Adequacy

Rule 23(a)(4) provides that the court may certify a class only if "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  For adequacy, a court considers "[1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]"  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001) (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).  "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *Id.*  (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986); *see Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005); *James*, 254 F.3d at 570; *Treasure Chest*, 186 F.3d at 625–626.

Jackson does not dispute the experience of Plaintiffs' counsel and the Court finds Plaintiffs' counsel have extensive experience in class and other complex litigation and are qualified to conduct this litigation.  However, Jackson again argues that Mr. Cruson has been fully compensated by the settlement agreements and have no real interest in prosecuting this lawsuit

(Dkt. #57 at p. 9).  Even if the Court were to find that Jackson is entitled to the one satisfaction defense, the Court still finds that this does not create a conflict in Mr. Cruson's interests.  *See Treasure Chest*, 186 F.3d at 626 (noting that although the differences described by defendant might create variances in the ways that the named plaintiffs and class members prove causation and damages, this did not affect the alignment of their interests).

Jackson further argues that the Named Plaintiffs lack knowledge and interest in monitoring or prosecuting this lawsuit.  *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("[R]epresentatives must show themselves sufficiently informed about the litigation to manage [it].").  Jackson cites to the testimony of the Named Plaintiffs, asserting the Named Plaintiffs "cannot articulate what is wrong with Jackson's calculation, much less how . . . the contracts should be interpreted." (Dkt. #57 at p. 9).

Plaintiffs respond that the discovery record shows that the Named Plaintiffs are well suited to pursue the class's claims (Dkt. #68 at pp. 6–7).  To date, the Named Plaintiffs have collected and produced documents and Mr. Cruson has been deposed.  During his deposition, Mr. Cruson testified that they would represent the class and do what was required of them. (*See* Dkt. #52, Exhibit A-5, Cruson Dep. At 107:12-24).  The Court further finds that Mr. Denman will only strengthen the class's representation and eliminate Jackson's primary concerns regarding the Hightower Exit Plan.

"Although, certainly, class representatives need not be legal scholars and are entitled to rely on counsel, plaintiffs do need to know more than that they were involved in a bad business deal." *Berger*, 257 F.3d at 483 (internal quotations omitted).  It is clear that a proposed class representative's understanding of their case "should not be limited to derivative knowledge acquired solely from counsel." *Id.* at 483 n.18.  "An example of an adequate class representative

is one with 'commendable familiarity with the complaint and the concept of a class action.'" *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 587 (W.D. Tex. 2002) (quoting *Horton,* 690 F.2d at 484). However, a lack of detailed factual knowledge about the case or a lack of understanding regarding the legal theories by the named plaintiffs does not preclude class certification in a complex case. *See In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 733 (S.D. Tex. 2006).

While the Named Plaintiffs cannot be expected to know all of the legal minutia involved in litigating their case, they should at least have an understanding of why all of the individuals or companies are defendants other than their general knowledge that they were "involved in a bad business deal." *Berger*, 257 F.3d at 480 (internal quotations omitted); *see Ogden v. AmeriCredit Corp.,* 225 F.R.D. 529, 534–35 (N.D. Tex. 2005). The Named Plaintiffs have reviewed important documents, including multiple drafts of the complaint; they have discussed the details of the case with their lawyers; they know that they must continue to supervise their attorneys; they understand the fundamental nature of the claims presented; and they comprehend the damage that the alleged breach has caused them to suffer. Adequacy is satisfied.

## B. 23(b)(3): Predominance and Superiority

### 1. Predominance of Common Questions

The predominance inquiry in Rule 23(b)(3) is "more demanding than the commonality requirement of Rule 23(a) and requires courts to consider how a trial on the merits would be conducted if a class were certified." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007) (citing *Bell Atl. Corp. v. AT&T Corp.,* 339 F.3d 294, 301–02 (5th Cir. 2003)) (internal quotations omitted). The Court must determine whether the issues in the lawsuit could cause the proposed class to "degenerat[e] into a series of individual trials," such that class certification is inappropriate. *Maldanado*, 493 F.3d at 525 (citing *Bell Atl.*, 339 F.3d at 302

(internal quotations omitted)); *see also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601

(5th Cir. 2006) ("Whether common issues predominate and whether the class action is a superior

method to resolve the controversy requires an understanding of the relevant claims, defenses, facts,

and substantive law presented in the case.").

The Fifth Circuit's analysis in *Frey v. First Nat'l Bank* is instructive on Rule 23(b)(3)'s

predominance inquiry:

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are
> sufficiently cohesive to warrant adjudication by representation." *Amchem Prod.,
> Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689 (1997).
> This inquiry requires us to consider "how a trial on the merits would be conducted
> if a class were certified." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 326
> (5th Cir. 2008) (quoting *Bell Atl.*, 339 F.3d at 302). This "entails identifying the
> substantive issues that will control the outcome, assessing which issues will
> predominate, and then determining whether the issues are common to the class, a
> process that ultimately prevents the class from degenerating into a series of
> individual trials." *Id.* (quoting *Bell Atl.*, 339 F.3d at 302). "In order to
> 'predominate,' common issues must constitute a significant part of the individual
> cases." *Jenkins*, 782 F.2d 468, 472 (5th Cir. 1986).

602 F. App'x 164, 169–70 (5th Cir. 2015).

To show a breach of contract, Plaintiffs must prove: (1) the existence of a valid contract;

(2) performance by Plaintiffs; (3) breach of contract by Jackson; and (4) damages resulting from

the breach. *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).  Here, the

class's claims depend on the determination of whether surrender charges assessed by Jackson

breached the annuity contracts.  This case differs from *Dukes*, where the members of the class

alleged varying types of unlawful conduct, from which arose varying causation issues.  *See Dukes,*

131 S.Ct. at 2553.  The question of liability in that case required an individualized analysis.  *Id.*

In the present case, however, a single determination of the legality of the fees charged by Jackson

will determine liability for the entire case.

As discussed above, Jackson has stipulated that there are no material differences between the various Jackson contracts for surrender charge purposes and neither party asserts that the contract is ambiguous.  The evidence necessary to prove the breach of contract claim is essentially identical to the evidence necessary to identify the class members: whether class members purchased an annuity policy with Jackson and whether they suffered a surrender charge.  The only substantively disputed issue is whether Jackson's method of calculating surrender charges is permitted by Jackson's contracts (i.e., breach).   Answering that question can be done on a class-wide basis.  For every class member, the answer will uniformly be either "yes" or "no."

Jackson argues that the interpretation of an unambiguous contract must be resolved on an individual basis due to variations in state contract law.  Jackson also asserts that its affirmative defenses implicate individual facts and circumstances, rather than classwide proof.  Lastly, Jackson asserts that the surrender charge and benefits damages will require "extensive individualized analysis." (Dkt. #57 at p. 10).  The Court will address each argument in turn.

### i.  Variations in State Contract Law

The parties essentially disagree about whether the differences in states' parol evidence rules matter.  Jackson argues that there are variations among the states with regard to the use of extrinsic evidence to construe contracts and that a state-by-state analysis will be necessary to determine Plaintiffs' breach of contract question.  Jackson argues that certain Plaintiffs received different prospectuses, which describe the calculation of surrender charges.  Jackson asserts that the prospectuses and similar illustration documents given to some customers and the commercial setting of these contracts requires interpretation of the contract would need to be considered on a case-by-case basis, including the use of extrinsic evidence.

The Court finds that these distinctions do not defeat predomination.  Jackson's variable annuity contracts are form contracts and Plaintiffs challenge Jackson's uniform calculation of surrender charges. Courts routinely certify class actions involving breaches of form contracts. *Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149, 155 (S.D. Tex. 2003) ("An action primarily involving interpretation of a form contract is well suited for class adjudication, at least on the issue of liability.") (citing *Durrett v. John Deere Co.,* 150 F.R.D. 555, 558 (N.D. Tex. 1993)). *See, e.g. Sacred Heart Health Systems, Inc. v. Humana Military Healthcare,* 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment"); *Smilow v. Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32 (1st Cir. 2003) ("Overall, we find that common issues of law and fact predominate here. The case turns on interpretation of the form contract, executed by all class members and defendant."); *Allapattah Servs. v. Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir. 2003); *Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (collecting cases).

As discussed above, Jackson has stipulated that "[t]here are no material differences in the language of Jackson's variable annuity contracts concerning the calculation of Surrender Charges[.]" (Dkt. #52 at p. 8).  Jackson has also stipulated that it calculates its surrender charges the same way regardless of what prospectus might be provided to a client, and "Jackson calculates Surrender Charges uniformly, regardless of the presence or absence of Appendix B." (Dkt. #52 at pp. 8–9).   It is hard to see what extrinsic evidence would be relevant to interpreting unambiguous form contract terms or Jackson's liability based on its calculation, and Jackson does not identify any extrinsic evidence or ambiguous contact terms.  In sum, issues regarding extrinsic evidence do not necessarily defeat the predominance requirement in a case involving form contracts, and do not defeat predominance in this case.

## ii. Affirmative Defenses

Plaintiffs assert that although there are variations in the statute of limitations for breach of contract claims, these variations are statutory and can be "folded into the formulaic computation of damages." (Dkt. #52 at p. 19 n.8)  The Court agrees.  As recognized by the Fifth Circuit, "[t]hough individual class members whose claims are shown to fall outside the relevant statute of limitations are barred from recovery, this does not establish that individual issues predominate[.]" *Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir. 2004); *Castro v. Collecto, Inc.*, 256 F.R.D. 534, 542–43 (W.D. Tex. 2009) (certifying class over defendants' assertions that their statute-of-limitations defense would require "mini-trials" as to each class member to determine whether that member's claim was time-barred).  *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485–86 (C.D. Cal. 2012) (finding predominance was not defeated when the doctrines used by plaintiffs for tolling a statute of limitations involve proof common to the defendants).

"What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350, 131 S.Ct. at 2551.  Limitations defenses generally present common questions, rather than individual ones, because a limitations defense's merits generally depend on (1) the date on which the statute of limitations accrued and (2) the date on which the action was filed.  Here, the filing date of the class action is the same for all class members: November 29, 2016 (*See* Dkt. #1).  The date on which the statute of limitations accrued is also common among all class members because Jackson's single act of calculating its surrender charges is alleged to have breached the annuity policy terms with all class members at once.  The Court finds the statute of limitations defense does not defeat predominance.

Jackson also contends that certain knowledge-based defenses such as waiver and ratification require an individualized inquiry that defeats predominance. Jackson asserts the individualized facts include, among others: (1) the extent of each class member's knowledge about the surrender charge calculations; (2) what their brokers or attorneys told them; (3) whether that was contrary to the manner in which Jackson calculates them; (4) whether they were informed after each withdrawal (as Plaintiffs were) of the charges and remaining contract values; and (5) whether they complained, remained silent, or acted in a manner that was inconsistent with claiming that the surrender charges should have been calculated differently.

The Court finds that these affirmative defenses also do not preclude certification. Many of these knowledge-based defenses require plaintiffs to have full knowledge of the circumstances in order for the defense to prevail. *See, e.g., In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 650–51 n.10–13 (S.D. Fla. 2015) (collecting cases nationwide).

The Court rejects any contention that an annuity policyholder could have gained "full knowledge" of the proper interpretation of the annuity policy's surrender charge calculation through subsequent conversations with brokers or attorneys. *See, e.g., Id.* at 651 (holding that plaintiffs could undercut defendant's affirmative defenses of ratification, waiver, voluntary payment, and failure to mitigate through the use of common evidence of defendant's misinforming its customers regarding its assessment of overdraft fees). Here, although some class members may have been aware of a greater surrender charge than anticipated, they could not have been aware of the lawfulness of Jackson's conduct until either liability is established or Jackson admits that its actions were unlawful. *See Allen v. Holiday Universal*, 249 F.R.D. 166, 169 (E.D. Pa. 2008) (holding that the defense of ratification could not preclude class certification because the class members could not obtain "full knowledge of all material facts," including how the form contract

29

properly applied and whether the defendants' acts taken pursuant to that contract were unlawful, until a ruling was made on the contract).

Thus, the success or failure of the potential defenses is susceptible to common methods of proof.   Jackson does not need to examine the circumstances surrounding the negotiation, execution, and delivery of each individual annuity policy, nor its reasons for how it calculated the surrender charges, in order to determine whether defenses and counterclaims will apply in any individual annuity purchase.  *Cf. Witt v. Chesapeake Expl., L.L.C.*, 276 F.R.D. 458, 469 (E.D. Tex. 2011); *In re Wilborn,* 609 F.3d 748, 756 (5th Cir. 2010).  The basic facts are common to the class: class members had similar contracts and Jackson applied the same surcharge calculation to all the annuity contracts.   There is no need for an extensive file-by-file review to sort out the factual details as to each plaintiff.   *Cf. Hancock v. Chicago Title Ins. Co.*, 263 F.R.D. 383, 388 (N.D. Tex. 2009), *aff'd sub nom. Benavides v. Chicago Title Ins. Co.*, No. 10-10136, 2011 WL 1057567 (5th Cir. Mar. 23, 2011) (finding that the class action failed the predominance requirement because "[e]ach borrower's claim presents an insular inquiry: whether the reissue credit was properly applied or withheld *in that particular case.*") (emphasis in original).   Whether and to what extent class members were adequately warned of the surcharge and the surcharge calculation, or continued to accept the allegedly incorrect surcharge amount is a matter for trial, or summary judgment, based on common methods of proof.

Lastly, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"  *Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane,

Federal Practice and Procedure § 1778, pp. 123–24 (3d ed. 2005)).  In the present case, the surrender charges were applied uniformly nationwide and only one question remains regarding Jackson's application.   Jackson's affirmative defenses do not defeat the predominance requirement.

### iii.  Individualized Damages

Jackson argues that Plaintiffs have failed to provide a reliable method to calculate surrender overcharges.  Plaintiffs assert that once the breach of contract issue is resolved, the computation of damages is an objective question that does not require subjective consideration for particular class members.  To show the amount of overcharges can be calculated with reasonable certainty using class-wide proof, Plaintiffs offer their damage's expert EJ Janik, who concludes Jackson's records can be used to create a model for quantifying the amount by which Plaintiffs were overcharged for their annuity contract withdrawals.

"Generally, individualized damages calculations will not preclude a finding of predominance."  *Ibe*, 836 F.3d at 529.  However, where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class.  *Bell,* 399 F.3d. at 308 (holding that "class certification is not appropriate" because plaintiffs "failed to demonstrate that the calculation of individualized actual economic damages, if any, suffered by the class members can be performed in accordance with the predominance requirement"); *O'Sullivan,* 319 F.3d 732, 745 (5th Cir. 2003) (holding that district court abused its discretion in certifying class "[i]n light of the individual calculation of damages that is required"); *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 419 (5th Cir.1998) (holding that certification under Rule 23(b)(3) was not appropriate because "plaintiffs' claims for

compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole").

The measure for breach of contract damages is "just compensation for the loss of damage actually sustained." *Amigo Broad., LP v. Spanish Broad. Sys., Inc.,* 521 F.3d 472, 482–83 (5th Cir. 2008) (citing *Stewart v. Basey,* 245 S.W.2d 484, 486 (Tex. 1952)). Jackson calculates surrender charges in the same way for each product type, regardless of what state the contract was issued in. Jackson also maintains centralized records for its contract holders and their transactions.

The right of every class member to recover damages or not to recover damages may be resolved in "one stroke." Plaintiffs have shown that the amount of each class member's damages, if any, is calculable from Jackson's records; that Jackson still possesses such records; and that such records are maintained sequentially in order of the year and date the annuity contract was signed. Thus, the fact that the amount of damage, if any, awardable to each individual class member will vary according to the amount of that class member's contract with Jackson does not defeat predominance. That is, the common question of whether class members are entitled to a refund in surrender charges pursuant to Jackson's annuity contract "predominate[s] over any questions affecting only individual members." *Amgen*, 568 U.S. at 459; *see In re Deepwater Horizon,* 739 F.3d at 816 (upholding a finding of predominance despite diverse damages because "even without a common means of measuring damages, [the] common issues [of fact and law] nonetheless predominated over the issues unique to individual claimants.").

### 2. Class Treatment is Superior to Other Methods of Adjudicating the Controversy

When determining whether class treatment is superior to the available methods of adjudicating the controversy, the Court examines the following factors: "(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B)

the extent and nature of any litigation concerning the controversy already begun by or against class

members; (C) the desirability or undesirability of concentrating the litigation of the claims in the

particular forum; and (D) the likely difficulties encountered in managing a class action." *Amchem*

*Prods., Inc.*, 521 U.S. at 615–616.

A class action constitutes the only realistic way Plaintiffs' claims can be adjudicated. Many

of the class members' claims will be small relative to the high costs of maintaining individual

actions. The size of the class should not present management difficulties. Once the breach of

contract issue is resolved, the computation of damages is an objective question that does not require

subjective consideration for particular class members. Streamlining claims in this one forum will

avoid inconsistency and simplify the process of resolving the surrender charge claims. Thus,

conservation of judicial resources warrants a class action.

### C.  23(b)(2) – Injunction Relief Class

Plaintiffs also assert that the Injunctive Relief class meets the requirements of Rule

23(b)(2). "It is well-established that '[i]nstead of requiring common issues, [Rule] 23(b)(2)

requires common behavior by the defendant toward the class.'" *Yates*, 868 F.3d at 366 (quoting

*In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012)). "Rule 23(b)(2) certification is available if

three requirements are satisfied: (1) 'class members must have been harmed in essentially the same

way'; (2) 'injunctive relief must predominate over monetary damage claims'; and (3) 'the

injunctive relief sought must be specific.'" *Yates*, 868 F.3d at 366–67 (quoting *Maldonado*,

493 F.3d at 524). "[M]onetary relief predominates in (b)(2) class actions unless it is incidental to

requested injunctive or declaratory relief." *See also Allison*, 151 F.3d at 415. As made clear

recently by the Supreme Court:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory
> remedy warranted—the notion that the conduct is such that it can be enjoined or

> declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.

*Dukes*, 564 U.S. at 360.

For the members of this class, Plaintiffs assert that they simply seek that Jackson calculate future surrender charges in accordance with its contracts.  Plaintiffs contend that the Injunctive Relief class (defined above) has the potential to be harmed in exactly the same way, and the class is specific.  The injunctive relief in such a request also predominates over monetary relief, since damages calculations would be "incidental" and would not require additional hearings.

Rule 23(b)(2) simply "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360–61 (emphasis added); *see also Allison*, 151 F.3d at 415 (explaining that only damages "in the nature of a group remedy" may be sought under Rule 23(b)(2)).  Plaintiffs in this case are seeking to recover individualized damages arising out of the alleged overcharges.

In this case, Plaintiffs seek millions of dollars in excess surrender charges based on individualized damages claims of the putative class members.  The calculation of the alleged overcharges will require, among other things, analysis of the Remaining Premium, the duration of the Premium, the timing of previous withdrawals, the amount of previous withdrawals with regard to the fee percentage, and whether subsequent withdrawals were affected, as to each account. *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000); *see also, e.g.*, *Tolbert v. RBC Capital Markets Corp.*, No. CV H-11-0107, 2016 WL 3034497, at *8 (S.D. Tex. May 26, 2016) ("Each class member's recovery would be based on the amount forfeited from his or her account, and would, by necessity, require individual damages calculations.  This runs afoul of *Dukes*

prohibition of individualized damage awards [under Rule 23(b)(2)]."); *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011) (denying certification under Rule 23(b)(2) where individualized damages were at issue because "[t]he monetary tail would be wagging the injunction dog," and an injunction would not provide "final" relief as required by the rule). Therefore, Plaintiffs' proposed class to be certified under Rule 23(b)(2) is denied.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Opposed Motion for Leave to Amend Complaint to Add Class Representative (Dkt. #89) and Unopposed Motion to Dismiss (Dkt. #86) are **GRANTED**. Plaintiffs Richard Tredinnick, Eileen Tredinnick, Irwin Sears, Ruth Sears, James R. Glenn, Suzanne Housewright, Jeffrey R. Miller, Karen T. Miller, Billy Walker, and Carolyn Walker are **DISMISSED without prejudice**.

It is therefore **ORDERED** that Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #52) is **GRANTED in part** and **DENIED in part**. Plaintiffs' proposed class to be certified under Rule 23(b)(2) is **DENIED**. Plaintiffs' proposed class to be certified under Rule 23(b)(3) is **GRANTED**, and the class consists of:

> All persons who, within the applicable statute of limitations, purchased a Perspective series, Elite Access series, or Retirement Latitudes series of variable annuity products from Jackson National Life Insurance Company or its affiliates, and incurred a Surrender Charge during their ownership of such product but excluding the judge and staff to whom this case is assigned and any member of the judge's immediate family.

It is further **ORDERED** that David Cruson and John Denman are appointed as Class Representatives; and Corley Law Firm and McKool Smith PC are appointed as Class Counsel.

**SIGNED this 9th day of May, 2018.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE