# Case No. 18-40605

# In the United States Court of Appeals
# For the Fifth Circuit

DAVID CRUSON; JOHN DENMAN,

Plaintiffs–Appellees,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,

Defendant–Appellant.

On Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:16-CV-912 (Mazzant, J.)

# RECORD EXCERPTS OF APPELLANT

MORGAN, LEWIS & BOCKIUS LLP
Scott T. Schutte
77 West Wacker Drive, Suite 500
Chicago, IL 60601
(312) 324-1000

MORGAN, LEWIS & BOCKIUS LLP
William R. Peterson
David J. Levy
Thomas R. Davis
Rachel H. Stinson
Jason F. Muriby
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5000

*Counsel for Appellant, Jackson National Life Insurance Company*

# TABLE OF CONTENTS

**Mandatory Record Excerpts:**

Docket Sheet (ROA.1–24) .................................................................. Tab 1

Order Granting Rule 23(f) Petition (ROA.1119–20)........................................ Tab 2

Order Granting Class Certification (ROA.839–74).......................................... Tab 3

Order Granting Stay (ROA.1073–81)................................................. Tab 4

Order Denying Summary Judgment (ROA.1127–44) ...................................... Tab 5

**Optional Record Excerpts:**

Sample Contract (ROA.271–73; ROA.275–88; ROA.292–97) ........................ Tab 6

Appendix B to Prospectus (ROA.3386–88) ...................................... Tab 7

Excerpt of Withdrawal Form (ROA.5000) ........................................ Tab 8

Excerpt of Hightower Deposition (ROA.3833–37).......................................... Tab 9

Signature Page and Certificate of Service ...................................... Tab 10

# TAB 1

# U.S. District Court
## Eastern District of TEXAS [LIVE] (Sherman)
## CIVIL DOCKET FOR CASE #: 4:16-cv-00912-ALM

| | |
|---|---|
| Tredinnick et al v. Jackson National Life Insurance Company | Date Filed: 11/29/2016 |
| Assigned to: District Judge Amos L. Mazzant, III | Jury Demand: Plaintiff |
| Case in other court:  5th Circuit, 18-40605 | Nature of Suit: 110 Insurance |
| Cause: 28:1332 Diversity-Insurance Contract | Jurisdiction: Diversity |

**Plaintiff**

**Richard Tredinnick**
*TERMINATED: 05/09/2018*

represented by **Gary Dean Corley**
Corley Law Firm
108 N. Travis Street
Sherman, TX 75090
903/361-0607
Fax: 12142604925
Email: corley@texoma.net
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
McKool Smith PC - Dallas
300 Crescent Court
Suite 1500
Dallas, TX 75201
214.978.4213
Fax: 214.978.4044
Email: rfink@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
McKool Smith - Marshall
P O Box O
104 East Houston St., Suite 300
Marshall, TX 75670
903/923-9000
Fax: 903-923-9099
Email: sbaxter@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Lewis T LeClair**
McKool Smith PC - Dallas
300 Crescent Court
Suite 1500
Dallas, TX 75201
214/978-4984
Fax: 12149784044
Email: lleclair@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Irwin Sears**
*TERMINATED: 05/09/2018*

represented by **Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis T LeClair**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Cruson**

represented by **Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis T LeClair**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James R. Glenn**
*TERMINATED: 05/09/2018*

represented by **Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis T LeClair**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

represented by

**Suzanne Housewright**
*TERMINATED: 05/09/2018*

**Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis T LeClair**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeffrey R Miller**
*TERMINATED: 05/09/2018*

represented by **Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis T LeClair**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dale Morris**

represented by **Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis T LeClair**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

represented by

**Billy Walker**
*TERMINATED: 05/09/2018*

**Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis T LeClair**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronald L. Wyatt**                    represented by    **Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lewis T LeClair**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eileen Tredinnick**                   represented by    **Lewis T LeClair**
*TERMINATED: 05/09/2018*                                  (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ruth Sears**
*TERMINATED: 05/09/2018*

represented by **Lewis T LeClair**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Karen T Miller**
*TERMINATED: 05/09/2018*

represented by **Lewis T LeClair**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Janice Morris**

represented by **Lewis T LeClair**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carolyn Walker**
*TERMINATED: 05/09/2018*

represented by **Lewis T LeClair**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Dean Corley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rudolph Fink , IV**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Franklin Baxter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Denman**

represented by **Lewis T LeClair**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Jackson National Life Insurance
Company**

represented by **David Jack Levy**
Morgan Lewis & Bockius, LLP - Houston
1000 Louisiana Street
Suite 4000
Houston, TX 77002
713-890-5170
Fax: 713-890-5001
Email: david.levy@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Auchter Allgood**
Morgan Lewis & Bockius, LLP - Houston
1000 Louisiana Street
Suite 4000
Houston, TX 77002
713-890-5723
Fax: 713-890-5001
Email: aallgood@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Jason Faris Muriby**
Morgan Lewis & Bockius, LLP - Houston
1000 Louisiana Street
Suite 4000

Houston, TX 77002
713-890-5000
Fax: 713-890-5001
Email: jmuriby@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Scott T Schutte**
Morgan, Lewis & Bockius LLP - Chicago
77 West Wacker Drive
Chicago, IL 60601-5094
312/324-1000
Fax: 312/324-1001
Email: scott.schutte@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Thomas R Davis**
Morgan Lewis & Bockius, LLP - Houston
1000 Louisiana Street
Suite 4000
Houston, TX 77002
713-890-5000
Fax: 713-890-5001
Email: thomas.davis@morganlewis.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/29/2016 | 1 (p.25) | COMPLAINT *(CLASS ACTION)* against Jackson National Life Insurance Company ( Filing fee $ 400 receipt number 0540-6048878.), filed by Jeffrey R. & Karen T. Miller, David Cruson, Dale and Janice Morris, Ronald L. Wyatt, Irwin and Ruth Sears, Billy and Carolyn Walker, James R. Glenn, Richard and Eileen Tredinnick, Suzanne Housewright. (Attachments: # 1 (p.25) Civil Cover Sheet)(LeClair, Lewis) (Entered: 11/29/2016) |
| 11/29/2016 | | Case ASSIGNED to Judge Amos L. Mazzant, III. (baf, ) (Entered: 11/29/2016) |
| 11/29/2016 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice Regarding Consent to Proceed Before Magistrate Judge.* (baf, ) (Entered: 11/29/2016) |
| 11/29/2016 | 2 (p.51) | SUMMONS Issued as to Jackson National Life Insurance Company. (baf, ) (Entered: 11/29/2016) |
| 12/19/2016 | 3 (p.53) | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Jackson National Life Insurance Company.( Levy, David) (Entered: 12/19/2016) |
| 12/19/2016 | | Defendant's Unopposed FIRST Application for Extension of Time to Answer Complaint is granted pursuant to Local Rule CV-12 for Jackson National Life Insurance Company to 1/20/2017. 30 Days Granted for Deadline Extension.( baf, ) |

18-40605.7

| | | |
|---|---|---|
| | | (Entered: 12/19/2016) |
| 01/17/2017 | 4 (p.54) | Defendant's Unopposed Second Application for Extension of Time to Answer Complaint re Jackson National Life Insurance Company.( Levy, David) (Entered: 01/17/2017) |
| 01/17/2017 | | Defendant's Unopposed SECOND Application for Extension of Time to Answer Complaint is granted pursuant to Local Rule CV-12 for Jackson National Life Insurance Company to 2/6/2017. 15 Days Granted for Deadline Extension.( baf, ) (Entered: 01/17/2017) |
| 02/06/2017 | 5 (p.55) | MOTION to Dismiss *Defendant Jackson National Life Insurance Company's Motion to Dismiss Under Rule 12(b)(6) and Rule 12(b)(1)* by Jackson National Life Insurance Company. Responses due by 2/20/2017 (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Attachment 1 replaced on 2/6/2017) (baf, ). (Entered: 02/06/2017) |
| 02/06/2017 | 6 (p.74) | CORPORATE DISCLOSURE STATEMENT filed by Jackson National Life Insurance Company (Levy, David) (Entered: 02/06/2017) |
| 02/07/2017 | 7 (p.76) | NOTICE of Attorney Appearance - Pro Hac Vice by Scott T Schutte on behalf of Jackson National Life Insurance Company. Filing fee $ 100, receipt number 0540-6144789. (Schutte, Scott) (Entered: 02/07/2017) |
| 02/08/2017 | 8 (p.79) | ORDER GOVERNING PROCEEDINGS - Rule 16 Management Conference set for 3/29/2017 at 9:45 AM in Ctrm 208 (Sherman) before Judge Amos L. Mazzant III. Rule 26 Meeting Joint Report due by 3/15/2017. Signed by Judge Amos L. Mazzant, III on 2/8/2017. (baf, ) (Entered: 02/08/2017) |
| 02/20/2017 | 9 (p.89) | Unopposed MOTION for Extension of Time to File Response/Reply as to 5 (p.55) MOTION to Dismiss *Defendant Jackson National Life Insurance Company's Motion to Dismiss Under Rule 12(b)(6) and Rule 12(b)(1)* by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 02/20/2017) |
| 03/10/2017 | 10 (p.94) | AMENDED COMPLAINT against Jackson National Life Insurance Company, filed by Jeffrey R Miller, Janice Morris, David Cruson, Dale Morris, Ronald L. Wyatt, Karen T Miller, Irwin Sears, Billy Walker, Eileen Tredinnick, Richard Tredinnick, James R. Glenn, Carolyn Walker, Ruth Sears, Suzanne Housewright. (Attachments: # 1 (p.25) Exhibit A, # 2 (p.51) Exhibit B, # 3 (p.53) Exhibit C, # 4 (p.54) Exhibit D, # 5 (p.55) Exhibit E, # 6 (p.74) Exhibit F, # 7 (p.76) Exhibit G)(LeClair, Lewis) (Entered: 03/10/2017) |
| 03/13/2017 | 11 (p.331) | NOTICE of Discovery Disclosure by Jackson National Life Insurance Company *Defendant Jackson National Life Insurance Company's Notice of Disclosue* (Levy, David) (Entered: 03/13/2017) |
| 03/14/2017 | 12 (p.334) | NOTICE by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt *NOTICE OF COMPLIANCE* (LeClair, Lewis) (Entered: 03/14/2017) |
| 03/14/2017 | 13 (p.337) | ORDER - Having considered the Unopposed Motion for Extension of Time to Respond to the Motion to Dismiss (Dkt. 9 (p.89) ) filed by Defendant Jackson |

| | | |
|---|---|---|
| | | National Life Insurance Company, and the Court being advised of an agreement of the parties, it is hereby ORDERED, that Plaintiffs' deadline to respond to the pending Motion to Dismiss [Docket 5] shall be extended pending their amendment of the Complaint. Plaintiffs may amend their complaint on or before March 10. Defendant shall have 14 days following the amendment of the Complaint to notify Plaintiffs' counsel whether they intend to stand on their existing Motion to Dismiss or to file an amended Motion to Dismiss. If Defendant elects to file an amended Motion to Dismiss, it shall file that amended motion within 21 days following the filing of the amended Complaint. Plaintiffs shall respond to the original or amended Motion to Dismiss within 14 days after notification (if Defendant stands on the original Motion to Dismiss) or 14 days after filing of the amended Motion to Dismiss. Signed by Judge Amos L. Mazzant, III on 3/14/2017. (baf, ) (Entered: 03/14/2017) |
| 03/15/2017 | 14 (p.339) | REPORT of Rule 26(f) Planning Meeting. (Attachments: # 1 (p.25) Appendix 1, # 2 (p.51) Appendix 2, # 3 (p.53) Appendix 3)(LeClair, Lewis) (Entered: 03/15/2017) |
| 03/16/2017 | 15 (p.387) | STIPULATION AND PROTECTIVE ORDER. Signed by Judge Amos L. Mazzant, III on 3/16/2017. (baf, ) (Entered: 03/16/2017) |
| 03/24/2017 | 16 (p.403) | NOTICE by Jackson National Life Insurance Company *Notice Regarding Defendant Jackson National Life Insurance Company's Amended Motion to Dismiss* (Levy, David) (Entered: 03/24/2017) |
| 03/28/2017 | | Due to the Court's criminal trial schedule, the March 29, 2017 Scheduling Conference is cancelled at this time. The Court will either reset the conference or enter a Scheduling Order. (tls) (Entered: 03/28/2017) |
| 03/30/2017 | 17 (p.405) | NOTICE of Attorney Appearance by Rudolph Fink, IV on behalf of David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt (Fink, Rudolph) (Entered: 03/30/2017) |
| 03/31/2017 | 18 (p.408) | MOTION to Dismiss , *Defendant Jackson National Life Insurance Company's Motion to Dismiss Amended Class Action Complaint Under Rule 12(b)(6) and Rule 12(b)(1)* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Attachment 1 replaced on 3/31/2017) (baf, ). (Entered: 03/31/2017) |
| 04/07/2017 | 19 (p.433) | ORDER - It is therefore ORDERED that Defendant's Motion to Dismiss Under Rule 12 (b)(6) and Rule 12(b)(1) (Dkt. 5 (p.55) ) is denied as moot. Signed by Judge Amos L. Mazzant, III on 4/7/2017. (baf, ) (Entered: 04/07/2017) |
| 04/14/2017 | 20 (p.434) | RESPONSE in Opposition re 18 (p.408) MOTION to Dismiss , *Defendant Jackson National Life Insurance Company's Motion to Dismiss Amended Class Action Complaint Under Rule 12(b)(6) and Rule 12(b)(1) filed by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt.* (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 04/14/2017) |
| 04/21/2017 | 21 (p.457) | REPLY to Response to Motion re 18 (p.408) MOTION to Dismiss , *Defendant Jackson National Life Insurance Company's Motion to Dismiss Amended Class Action Complaint Under Rule 12(b)(6) and Rule 12(b)(1) Defendant Jackson National Life Insurance Company's Reply In Support of Its Motion to Dismiss filed* |

| | | |
|---|---|---|
| | | *by Jackson National Life Insurance Company.* (Levy, David) (Entered: 04/21/2017) |
| 04/28/2017 | 22 (p.470) | SUR-REPLY to Reply to Response to Motion re 18 (p.408) MOTION to Dismiss , *Defendant Jackson National Life Insurance Company's Motion to Dismiss Amended Class Action Complaint Under Rule 12(b)(6) and Rule 12(b)(1) filed by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt.* (LeClair, Lewis) (Entered: 04/28/2017) |
| 05/01/2017 | 23 (p.484) | SCHEDULING ORDER: Amended Pleadings due by 7/18/2017. Discovery due by 4/20/2018. Expert Witness List due by 2/23/2018. Identify trial witnesses by 6/6/2018. Final mediation to be completed by 6/28/2018. Joinder of Parties due by 5/10/2017. Proposed Jury instructions and Form of Verdict due by 8/1/2018. Motions to dismiss, motions for summary judgment, or other dispositive motions due by 3/28/2018. Joint Final Pretrial Order due by 7/16/2018. Class Certification Hearing set for 1/3/2018 at 9:00 AM in Ctrm 208 (Sherman) before Judge Amos L. Mazzant III.) Final Pretrial Conference set for 8/31/2018 at 9:00 AM in Ctrm 208 (Sherman) before Judge Amos L. Mazzant III. Signed by Judge Amos L. Mazzant, III on 5/1/2017. (baf, ) (Entered: 05/01/2017) |
| 05/01/2017 | | Set/Reset Scheduling Order Deadlines: Final Mediation to be completed by 6/28/2018. (baf, ) (Entered: 05/01/2017) |
| 05/02/2017 | 24 (p.491) | ORDER REGARDING E-DISCOVERY. Signed by Judge Amos L. Mazzant, III on 5/2/2017. (baf, ) (Entered: 05/02/2017) |
| 08/22/2017 | 25 (p.499) | Joint MOTION to Amend/Correct 23 (p.484) Scheduling Order, Set Hearings,,,, by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 08/22/2017) |
| 08/23/2017 | 26 (p.511) | Unopposed MOTION for Hearing re 18 (p.408) MOTION to Dismiss , *Defendant Jackson National Life Insurance Company's Motion to Dismiss Amended Class Action Complaint Under Rule 12(b)(6) and Rule 12(b)(1) - Defendant Jackson National Life Insurance Company's Unopposed Motion to Set Hearing on Motion to Dismiss Amended Class Action Complaint* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Attachment 1 replaced on 8/23/2017) (daj, ). (Entered: 08/23/2017) |
| 09/15/2017 | 27 (p.518) | Unopposed MOTION for Leave to File *Defendant Jackson National Life Insurance Company's Unopposed Motion for Leave to File Exhibit B Under Seal* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Entered: 09/15/2017) |
| 09/15/2017 | 28 | ***MOTION WITHDRAWN PURSUANT TO ORDER 49 (p.668)*** MOTION to Preclude *Defendant Jackson National Life Insurance Company's Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Informaiton Pursuant to Paragraph 19 of the Protective Order* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order, # 2 (p.51) Exhibit A)(Levy, David) Modified on 11/14/2017 (baf, ). (Entered: 09/15/2017) |
| 09/15/2017 | 29 | |

| | | |
|---|---|---|
| | | SEALED ADDITIONAL ATTACHMENTS (Exhibit B) to Main Document: <u>28</u> MOTION to Preclude *Defendant Jackson National Life Insurance Company's Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Informaiton Pursuant to Paragraph 19 of the Protecti. (Levy, David) (Entered: 09/15/2017)* |
| 09/18/2017 | <u>30</u> <u>(p.523)</u> | ORDER - GRANTING <u>27 (p.518)</u> Motion for Leave to File Exhibit B to its Motion Under Seal. Signed by Judge Amos L. Mazzant, III on 9/18/2017. (baf, ) (Entered: 09/18/2017) |
| 09/29/2017 | <u>31</u> <u>(p.524)</u> | MEMORANDUM OPINION AND ORDER granting in part and denying in part <u>18</u> <u>(p.408)</u> Motion to Dismiss. ORDERED that Defendant Jackson National Life Insurance Company's Motion to Dismiss Amended Class Action Complaint under Rule 12(b)(6) and Rule 12 (b)(1) (Dkt. #18) is hereby DENIED with regard to Plaintiffs' breach of fiduciary duty claim, breach of contract claim, and injunctive relief. Jackson's Motion to Dismiss Plaintiff's Amended Complaint is GRANTED as to Plaintiffs' negligent misrepresentation claim. It is further ORDERED that Dale and Janice Morris's and Ronald L. Wyatt's claims are DISMISSED without prejudice for lack of standing. Signed by Judge Amos L. Mazzant, III on 9/29/2017. (daj, ) (Entered: 09/29/2017) |
| 09/29/2017 | <u>32</u> <u>(p.535)</u> | ORDER denying as moot <u>26 (p.511)</u> Motion for Hearing. Signed by Judge Amos L. Mazzant, III on 9/29/2017. (daj, ) (Entered: 09/29/2017) |
| 09/29/2017 | <u>33</u> <u>(p.536)</u> | FIRST AMENDED SCHEDULING ORDER: Final Pretrial Conference set for 10/26/2018 09:00 AM in Ctrm 208 (Sherman) before Judge Amos L. Mazzant III. Discovery due by 6/15/2018. Parties to Identify trial witnesses by 8/2/2018. Proposed Jury instructions/Forms of Verdict due by 10/10/2018. Final Mediation to be completed by 8/23/2018. Motions to dismiss, motions for summary judgment, or other dispositive motions due by 6/8/2018. Proposed Pretrial Order due by 9/26/2018. GRANTING <u>25 (p.499)</u> Joint MOTION to Amend/Correct <u>23 (p.484)</u> Scheduling Order, Set Hearings, filed by Irwin Sears, James R. Glenn, Carolyn Walker, Karen T Miller, Eileen Tredinnick, Ronald L. Wyatt, David Cruson, Janice Morris, Richard Tredinnick, Jeffrey R Miller, Suzanne Housewright, Dale Morris, Ruth Sears, Billy Walker. Final Pretrial Conference set for 10/26/2018 at 9:00 AM in Ctrm 208 (Sherman) before Judge Amos L. Mazzant III. Class Certification Hearing set for 3/5/2018 at 9:00 AM in Ctrm 208 (Sherman) before Judge Amos L. Mazzant III. Signed by Judge Amos L. Mazzant, III on 9/29/2017. (baf, ) (Entered: 09/29/2017) |
| 10/02/2017 | <u>34</u> <u>(p.544)</u> | RESPONSE to Motion re <u>28</u> MOTION to Preclude *Defendant Jackson National Life Insurance Company's Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Informaiton Pursuant to Paragraph 19 of the Protecti* filed by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker. (Attachments: # *<u>1 (p.25)</u> Affidavit RORY P. MCDONALD, # <u>2 (p.51)</u> Text of Proposed Order*)(Fink, Rudolph) (Entered: 10/02/2017) |
| 10/10/2017 | <u>35</u> <u>(p.562)</u> | Unopposed MOTION for Leave to File *Defendant jackson National Life Insurance Company's Unopposed Motion For Leave to File Reply and Exhibits Under Seal* by Jackson National Life Insurance Company. (Attachments: # <u>1 (p.25)</u> Text of Proposed Order)(Levy, David) (Entered: 10/10/2017) |
| 10/10/2017 | <u>36</u> | |

| | | |
|---|---|---|
| | | SEALED REPLY to Response to Motion re 28 MOTION to Preclude *Defendant Jackson National Life Insurance Company's Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Information Pursuant to Paragraph 19 of the Protecti, 35 (p.562) Unopposed MOTION for Leave to File Defendant Jackson National Life Insurance Company's Unopposed Motion For Leave to File Reply and Exhibits Under Seal filed by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Exhibit A, # 2 (p.51) Exhibit B, # 3 (p.53) Exhibit C)*(Levy, David) (Entered: 10/10/2017) |
| 10/10/2017 | 37 (p.567) | Additional Attachments to Main Document: 36 Sealed Reply to Response to Motion,,.. (Levy, David) (Entered: 10/10/2017) |
| 10/11/2017 | 38 (p.576) | ORDER - GRANTING 35 (p.562) Motion for Leave to File its Reply. Signed by Judge Amos L. Mazzant, III on 10/11/2017. (baf, ) (Entered: 10/11/2017) |
| 10/12/2017 | 39 (p.577) | Joint MOTION to Amend/Correct 33 (p.536) Scheduling Order, Terminate Motions, Set Hearings,,,,,,,,,,, by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 10/12/2017) |
| 10/12/2017 | 40 (p.588) | SUR-REPLY to Reply to Response to Motion re 28 MOTION to Preclude *Defendant Jackson National Life Insurance Company's Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Informaiton Pursuant to Paragraph 19 of the Protecti filed by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Entered: 10/12/2017)* |
| 10/16/2017 | 41 (p.595) | Unopposed MOTION for Hearing re 28 MOTION to Preclude *Defendant Jackson National Life Insurance Company's Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Informaiton Pursuant to Paragraph 19 of the Protecti by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(Fink, Rudolph) (Entered: 10/16/2017)* |
| 10/17/2017 | 42 (p.599) | SECOND AMENDED SCHEDULING ORDER: GRANTING 39 (p.577) Joint MOTION to Amend/Correct 33 (p.536) Scheduling Order, Terminate Motions, Set Hearings, filed by Irwin Sears, James R. Glenn, Carolyn Walker, Karen T Miller, Eileen Tredinnick, Ronald L. Wyatt, David Cruson, Janice Morris, Richard Tredinnick, Jeffrey R Miller, Suzanne Housewright, Dale Morris, Ruth Sears, Billy Walker. Signed by Judge Amos L. Mazzant, III on 10/17/2017. (baf, ) (Entered: 10/17/2017) |
| 10/27/2017 | 43 (p.607) | ANSWER to 10 (p.94) Amended Complaint, *Answer to Plaintiffs' Class Action Complaint* by Jackson National Life Insurance Company.(Levy, David) (Entered: 10/27/2017) |
| 10/30/2017 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a |

| | | |
|---|---|---|
| | | final judgment. The form <u>Consent to Proceed Before Magistrate Judge</u> is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice Regarding Consent to Proceed Before Magistrate Judge*. (baf, ) (Entered: 10/30/2017) |
| 11/06/2017 | <u>44</u> <br> (p.656) | ORDER Setting Hearing on Motion <u>28</u> MOTION to Preclude *Defendant Jackson National Life Insurance Company's Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Informaiton Pursuant to Paragraph 19 of the Protecti : Motion Hearing set for 11/15/2017 at 9:00 AM in Ctrm 208 (Sherman) before District Judge Amos L. Mazzant III. GRANTING 41 (p.595) Unopposed MOTION for Hearing re 28 MOTION to Preclude Defendant Jackson National Life Insurance Company's Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Informaiton filed by Irwin Sears, James R. Glenn, Carolyn Walker, Karen T Miller, Eileen Tredinnick, Ronald L. Wyatt, David Cruson, Janice Morris, Richard Tredinnick, Jeffrey R Miller, Suzanne Housewright, Dale Morris, Ruth Sears, Billy Walker. Signed by District Judge Amos L. Mazzant, III on 11/6/2017. (baf, ) (Entered: 11/06/2017)* |
| 11/12/2017 | <u>45</u> <br> (p.657) | NOTICE of Attorney Appearance by Thomas R Davis on behalf of Jackson National Life Insurance Company (Davis, Thomas) (Entered: 11/12/2017) |
| 11/12/2017 | <u>46</u> <br> (p.660) | NOTICE of Attorney Appearance by Jason Faris Muriby on behalf of Jackson National Life Insurance Company (Muriby, Jason) (Entered: 11/12/2017) |
| 11/13/2017 | <u>47</u> | **\*\*\*DEFICIENT DOCUMENT - ATTORNEY MUST REFILE\*\*\*** <br><br> MOTION DEFENDANT JACKSON NATIONAL LIFE INSURANCE COMPANYS MOTION TO WITHDRAW ITS MOTION TO PRECLUDE PLAINTIFFS PROPOSED EXPERT, MR. RORY P. McDONALD, FROM ACCESS TO DEFENDANTS CONFIDENTIAL INFORMATION PURSUANT TO PARAGRAPH 19 OF THE PROTECTIVE ORDER re <u>28</u> MOTION to Preclude *Defendant Jackson National Life Insurance Company's Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Informaiton Pursuant to Paragraph 19 of the Protecti by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Muriby, Jason) Modified on 11/13/2017 (baf, ). (Entered: 11/13/2017)* |
| 11/13/2017 | | NOTICE of Deficiency regarding the MOTION TO WITHDRAW submitted DOCUMENT <u>47</u> - NO CERTIFICATE OF CONFERENCE. Correction should be made by ONE BUSINESS DAY (baf, ) (Entered: 11/13/2017) |
| 11/14/2017 | <u>48</u> <br> (p.663) | Unopposed MOTION Withdrawal of Motion to Preclude Plaintiffs' Proposed Expert *- Defendant Jackson National Life Insurance Company's Unopposed Motion to Withdraw Its Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory McDonald, From Access to Defendant's Confidential Information Pursuant to Paragraph 19 of the Protective Order by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Entered: 11/14/2017)* |
| 11/14/2017 | <u>49</u> <br> (p.668) | ORDER - IT IS ORDERED that Jackson National's Unopposed Motion to Withdraw its Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory P. McDonald, From Access to Defendant's Confidential Information Pursuant to Paragraph 19 of the Protective Order (Dkt. <u>48 (p.663)</u> ) is GRANTED, and the Motion to Preclude (Dkt. <u>28</u> ) is WITHDRAWN. The November 15, 2017 hearing is CANCELED. Signed by District Judge Amos L. Mazzant, III on 11/14/2017. (baf, ) (Entered: 11/14/2017) |

| 11/14/2017 | 50 (p.669) | UNOPPOSED MOTION to Seal *PLAINTIFFS' MOTION FOR CLASS CERTIFICATION* by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 11/14/2017) |
|---|---|---|
| 11/14/2017 | 51 (p.673) | Joint MOTION for Leave to File Excess Pages by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 11/14/2017) |
| 11/14/2017 | 52 | Opposed SEALED MOTION *FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL* by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Exhibit A-1, # 2 (p.51) Exhibit A-2, # 3 (p.53) Exhibit A-3, # 4 (p.54) Exhibit A-4, # 5 (p.55) Exhibit A-5, # 6 (p.74) Exhibit A-6, # 7 (p.76) Exhibit A-7, # 8 (p.79) Exhibit A-8, # 9 (p.89) Exhibit A-9, # 10 (p.94) Exhibit A-10, # 11 (p.331) Exhibit B, # 12 (p.334) Exhibit B-1, # 13 (p.337) Exhibit C - Declaration of Lewis LeClair, # 14 (p.339) Exhibit D- Declaration of Gary Dean Corley, # 15 (p.387) Exhibit E - Declaration of Chelsea Priest, # 16 (p.403) Exhibit E-1, # 17 (p.405) Exhibit E-2, # 18 (p.408) Declaration of Rudolph Fink IV, # 19 (p.433) Text of Proposed Order)(LeClair, Lewis) (Entered: 11/14/2017) |
| 11/15/2017 | 53 (p.679) | ORDER - GRANTING 51 (p.673) Motion for Leave to File Excess Pages. Signed by District Judge Amos L. Mazzant, III on 11/15/2017. (baf, ) (Entered: 11/15/2017) |
| 01/17/2018 | 54 (p.680) | Joint MOTION for Extension of Time to File *Joint Motion to Extend Certain Deadlines* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Entered: 01/17/2018) |
| 01/18/2018 | 55 (p.685) | ORDER - GRANTING 54 (p.680) Motion to Extend Certain Deadlines. Signed by District Judge Amos L. Mazzant, III on 1/18/2018. (baf, ) (Entered: 01/18/2018) |
| 01/19/2018 | 56 (p.686) | Unopposed MOTION for Leave to File *Defendant Jackson National Life Insurance Company's Unopposed Motion for Leave to File Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel and Supporting Exhibits UNDER SEAL* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Entered: 01/19/2018) |
| 01/19/2018 | 57 | SEALED RESPONSE to Motion re 52 Opposed SEALED MOTION *FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL* filed by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order, # 2 (p.51) Affidavit Declaration of Thomas R. Davis, # 3 (p.53) Exhibit A, # 4 (p.54) Exhibit B, # 5 (p.55) Exhibit C, # 6 (p.74) Exhibit D, # 7 (p.76) Exhibit E, # 8 (p.79) Exhibit F, # 9 (p.89) Exhibit G, # 10 (p.94) Exhibit H, # 11 (p.331) Exhibit I, # 12 (p.334) Exhibit J, # 13 (p.337) Exhibit K, # 14 (p.339) Exhibit L, # 15 (p.387) Exhibit M, # 16 (p.403) Exhibit N, # 17 (p.405) Exhibit O, # 18 (p.408) Exhibit P, # 19 (p.433) Exhibit Q - Declaration of R. Mellott, # 20 (p.434) Exhibit R - Declaration of B. Schulz, # 21 (p.457) Exhibit S1, # 22 (p.470) Exhibit S2, # 23 (p.484) Exhibit S3, # 24 (p.491) Exhibit S4, # 25 (p.499) Exhibit S5, # 26 (p.511) Exhibit S6, # 27 (p.518) Exhibit S7, # 28 Exhibit S8, # 29 Exhibit S9, # 30 (p.523) |

| | | |
|---|---|---|
| | | Exhibit S10, # <u>31 (p.524)</u> Exhibit S11, # <u>32 (p.535)</u> Exhibit S12)(Levy, David) (Entered: 01/19/2018) |
| 01/19/2018 | <u>58</u><br><u>(p.692)</u> | Unopposed MOTION for Leave to File *Defendant Jackson National Life Insurance Company's Unopposed Motion for Leave to File Motion for Summary Judgment and Supporting Exhibits UNDER SEAL* by Jackson National Life Insurance Company. (Attachments: # <u>1 (p.25)</u> Text of Proposed Order)(Levy, David) (Entered: 01/19/2018) |
| 01/19/2018 | <u>59</u> | SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims* by Jackson National Life Insurance Company. (Attachments: # <u>1 (p.25)</u> Text of Proposed Order, # <u>2 (p.51)</u> Affidavit Declaration of Thomas R. Davis, # <u>3 (p.53)</u> Exhibit A1 - A56, # <u>4 (p.54)</u> Exhibit B1, # <u>5 (p.55)</u> Exhibit B2, # <u>6 (p.74)</u> Exhibit C1, # <u>7 (p.76)</u> Exhibit C2, # <u>8 (p.79)</u> Exhibit C3, # <u>9 (p.89)</u> Exhibit C4, # <u>10 (p.94)</u> Exhibit D1, # <u>11 (p.331)</u> Exhibit D2, # <u>12 (p.334)</u> Exhibit D3, # <u>13 (p.337)</u> Exhibit D4, # <u>14 (p.339)</u> Exhibit D6, # <u>15 (p.387)</u> Exhibit D7, # <u>16 (p.403)</u> Exhibit D8, # <u>17 (p.405)</u> Exhibit D10, # <u>18 (p.408)</u> Exhibit D11, # <u>19 (p.433)</u> Exhibit E, # <u>20 (p.434)</u> Exhibit F, # <u>21 (p.457)</u> Exhibit G1, # <u>22 (p.470)</u> Exhibit G2, # <u>23 (p.484)</u> Exhibit G3, # <u>24 (p.491)</u> Exhibit G4, # <u>25 (p.499)</u> Exhibit G5, # <u>26 (p.511)</u> Exhibit G6, # <u>27 (p.518)</u> Exhibit G7, # <u>28</u> Exhibit G8, # <u>29</u> Exhibit G9, # <u>30 (p.523)</u> Exhibit G10, # <u>31 (p.524)</u> Exhibit G11, # <u>32 (p.535)</u> Exhibit G12, # <u>33 (p.536)</u> Exhibit G13, # <u>34 (p.544)</u> Exhibit G14, # <u>35 (p.562)</u> Exhibit G15, # <u>36</u> Exhibit G16, # <u>37 (p.567)</u> Exhibit G17, # <u>38 (p.576)</u> Exhibit G18, # <u>39 (p.577)</u> Exhibit G19, # <u>40 (p.588)</u> Exhibit G20, # <u>41 (p.595)</u> Exhibit G21, # <u>42 (p.599)</u> Exhibit G22, # <u>43 (p.607)</u> Exhibit G23, # <u>44 (p.656)</u> Exhibit G24, # <u>45 (p.657)</u> Exhibit G25, # <u>46 (p.660)</u> Errata G26, # <u>47</u> Exhibit G27, # <u>48 (p.663)</u> Exhibit G28, # <u>49 (p.668)</u> Exhibit G29, # <u>50 (p.669)</u> Exhibit G30, # <u>51 (p.673)</u> Exhibit G31, # <u>52</u> Exhibit G32, # <u>53 (p.679)</u> Exhibit G33, # <u>54 (p.680)</u> Exhibit G34, # <u>55 (p.685)</u> Exhibit G35, # <u>56 (p.686)</u> Exhibit G36, # <u>57</u> Exhibit G37, # <u>58 (p.692)</u> Exhibit G38, # <u>59</u> Exhibit G39, # <u>60 (p.1215)</u> Exhibit G40, # <u>61 (p.1286)</u> Exhibit G41, # <u>62 (p.698)</u> Exhibit G42, # <u>63 (p.699)</u> Exhibit G43, # <u>64 (p.700)</u> Exhibit G44, # <u>65 (p.701)</u> Exhibit G45, # <u>66 (p.705)</u> Exhibit G46, # <u>67 (p.706)</u> Exhibit G47, # <u>68 (p.708)</u> Exhibit G48, # <u>69 (p.710)</u> Exhibit G49, # <u>70</u> Exhibit G50, # <u>71 (p.714)</u> Exhibit G51, # <u>72</u> Exhibit G52, # <u>73 (p.717)</u> Exhibit G53, # <u>74 (p.1468)</u> Exhibit G54, # <u>75 (p.1468)</u> Exhibit G55, # <u>76 (p.1483)</u> Exhibit H1, # <u>77 (p.719)</u> Exhibit H2, # <u>78 (p.1519)</u> Exhibit H3, # <u>79 (p.734)</u> Exhibit H4, # <u>80 (p.748)</u> Exhibit H5, # <u>81</u> Exhibit I, # <u>82 (p.1617)</u> Exhibit J, # <u>83 (p.754)</u> Exhibit K, # <u>84 (p.755)</u> Exhibit L1, # <u>85 (p.757)</u> Exhibit L2, # <u>86 (p.767)</u> Exhibit L3, # <u>87 (p.772)</u> Exhibit L4, # <u>88 (p.777)</u> Exhibit L5, # <u>89 (p.781)</u> Exhibit L6, # <u>90 (p.800)</u> Exhibit M1, # <u>91 (p.830)</u> Exhibit M2, # <u>92 (p.1686)</u> Exhibit M3, # <u>93 (p.833)</u> Exhibit M4, # <u>94</u> Exhibit M5, # <u>95 (p.838)</u> Exhibit M6, # <u>96 (p.839)</u> Exhibit M7, # <u>97 (p.875)</u> Exhibit N, # <u>98 (p.1638)</u> Exhibit O)(Levy, David) (Entered: 01/19/2018) |
| 01/23/2018 | <u>60</u><br><u>(p.1215)</u> | REDACTION to <u>57</u> Sealed Response to Motion,,, *REDACTED Version of Defendant's Response to Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel,* by Jackson National Life Insurance Company. (Attachments: # <u>1 (p.25)</u> Text of Proposed Order, # <u>2 (p.51)</u> Affidavit Declaration of Thomas R. Davis, # <u>3 (p.53)</u> Exhibit A, # <u>4 (p.54)</u> Exhibit B, # <u>5 (p.55)</u> Exhibit C, # <u>6 (p.74)</u> Exhibit D, # <u>7 (p.76)</u> Exhibit E, # <u>8 (p.79)</u> Exhibit F, # <u>9 (p.89)</u> Exhibit G, # <u>10 (p.94)</u> Exhibit H, # <u>11 (p.331)</u> Exhibit I, # <u>12 (p.334)</u> Exhibit J, # <u>13 (p.337)</u> Exhibit K, # <u>14 (p.339)</u> Exhibit L, # <u>15 (p.387)</u> Exhibit M, # <u>16 (p.403)</u> Exhibit N, # <u>17 (p.405)</u> Exhibit O, # <u>18 (p.408)</u> Exhibit P, # <u>19 (p.433)</u> Exhibit Q, # <u>20 (p.434)</u> Exhibit R, # <u>21 (p.457)</u> Exhibit S1, # <u>22 (p.470)</u> Exhibit S2, # <u>23 (p.484)</u> Exhibit S3, |

| | | |
|---|---|---|
| | | # 24 (p.491) Exhibit S4, # 25 (p.499) Exhibit S5, # 26 (p.511) Exhibit S6, # 27 (p.518) Exhibit S7, # 28 Exhibit S8, # 29 Exhibit S9, # 30 (p.523) Exhibit S10, # 31 (p.524) Exhibit S11, # 32 (p.535) Exhibit S12)(Levy, David) (Entered: 01/23/2018) |
| 01/23/2018 | 61 (p.1286) | REDACTION to 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims , REDACTED Version of Defendant Jackson National Life Insurance Company's Motion for Summary Judgment on Plaintiffs' Breach of Contract and Breach of Fiduciary Duty Claims* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order, # 2 (p.51) Affidavit Declaration of Thomas R. Davis, # 3 (p.53) Exhibit A1, # 4 (p.54) Exhibit A2, A3, A4, # 5 (p.55) Exhibit A5, A6, # 6 (p.74) Exhibit A7, A8, # 7 (p.76) Exhibit A9, # 8 (p.79) Exhibit A10, # 9 (p.89) Exhibit A11, # 10 (p.94) Exhibit A13, A14, # 11 (p.331) Exhibit A15, A16, # 12 (p.334) Exhibit A17, A18, # 13 (p.337) Exhibit A19, A20, # 14 (p.339) Exhibit A21, # 15 (p.387) Exhibit A22, # 16 (p.403) Exhibit A23, # 17 (p.405) Exhibit A24, # 18 (p.408) Exhibit A25, A26, # 19 (p.433) Exhibit A27, A28, # 20 (p.434) Exhibit A29, A30, # 21 (p.457) Exhibit A31, A32, # 22 (p.470) Exhibit A33, A34, # 23 (p.484) Exhibit A35, # 24 (p.491) Exhibit A36, # 25 (p.499) Exhibit A37, # 26 (p.511) Exhibit A38, # 27 (p.518) Exhibit A39, # 28 Exhibit A40, # 29 Exhibit A41, # 30 (p.523) Exhibit A42, # 31 (p.524) Exhibit A43, # 32 (p.535) Exhibit A44, A45, # 33 (p.536) Exhibit A46, A47, # 34 (p.544) Exhibit A48, # 35 (p.562) Exhibit A49, A50, # 36 Exhibit A51, A52, # 37 (p.567) Exhibit A53, # 38 (p.576) Exhibit A54, # 39 (p.577) Exhibit A55, # 40 (p.588) Exhibit A56, # 41 (p.595) Exhibit B1, # 42 (p.599) Exhibit B2, # 43 (p.607) Exhibit C1, # 44 (p.656) Exhibit C2, # 45 (p.657) Exhibit C3, # 46 (p.660) Exhibit C4, # 47 Exhibit D1, # 48 (p.663) Exhibit D2, # 49 (p.668) Exhibit D3, # 50 (p.669) Exhibit D4, # 51 (p.673) Exhibit D5, # 52 Exhibit D6, # 53 (p.679) Exhibit D7, # 54 (p.680) Exhibit D8, # 55 (p.685) Exhibit D9, # 56 (p.686) Exhibit D10, # 57 Exhibit D11, # 58 (p.692) Exhibit E, # 59 Exhibit F, # 60 (p.1215) Exhibit G1, # 61 (p.1286) Exhibit G2, # 62 (p.698) Exhibit G3, # 63 (p.699) Exhibit G4, # 64 (p.700) Exhibit G5, # 65 (p.701) Exhibit G6, # 66 (p.705) Exhibit G7, # 67 (p.706) Exhibit G8, # 68 Exhibit G9, # 69 (p.710) Exhibit G10, # 70 Exhibit G11, # 71 (p.714) Exhibit G12, # 72 Exhibit G13, # 73 (p.717) Exhibit G14, # 74 (p.718) Exhibit G15, # 75 (p.1468) Exhibit G16, # 76 (p.1483) Exhibit G17, # 77 (p.719) Exhibit G18, # 78 (p.1519) Exhibit G19, # 79 (p.734) Exhibit G20, # 80 (p.748) Exhibit G21, # 81 (p.1519) Exhibit G22, # 82 (p.1617) Exhibit G23, # 83 (p.754) Exhibit G24, # 84 (p.755) Exhibit G25, # 85 (p.757) Exhibit G26, # 86 (p.767) Exhibit G27, # 87 (p.772) Exhibit G28, # 88 (p.777) Exhibit G29, # 89 (p.781) Exhibit G30, # 90 (p.800) Exhibit G31, # 91 (p.830) Exhibit G32, # 92 (p.1686) Exhibit G33, # 93 (p.833) Exhibit G34, # 94 Exhibit G35, # 95 (p.838) Exhibit G36, # 96 (p.839) Exhibit G37, # 97 (p.875) Exhibit G38, # 98 (p.1638) Exhibit G39, # 99 (p.882) Exhibit G40, # 100 (p.891) Exhibit G41, # 101 (p.933) Exhibit G42, # 102 (p.945) Exhibit G43, # 103 (p.1019) Exhibit G44, # 104 (p.1020) Exhibit G45, # 105 (p.1033) Exhibit G46, # 106 (p.1043) Exhibit G47, # 107 (p.1050) Exhibit G48, # 108 (p.1056) Exhibit G49, # 109 (p.1057) Exhibit G50, # 110 (p.1059) Exhibit G51, # 111 (p.1067) Exhibit G52, # 112 (p.1073) Exhibit G53, # 113 (p.1082) Exhibit G54, # 114 (p.1119) Exhibit G55, # 115 (p.1125) Exhibit H1, # 116 (p.1781) Exhibit H2, # 117 (p.1127) Exhibit H3, # 118 (p.1145) Exhibit H4, # 119 Exhibit H5, # 120 Exhibit I, # 121 Exhibit J, # 122 Exhibit K, # 123 Exhibit L1, # 124 Exhibit L2, # 125 Exhibit L3, # 126 Exhibit L4, # 127 Exhibit L5, # 128 Exhibit L6, # 129 Exhibit M1, # 130 Exhibit M2, # 131 Exhibit M3, # 132 Exhibit M4, # 133 Exhibit M5, # 134 Exhibit M6, # 135 Exhibit M7, # 136 Exhibit N, # 137 Exhibit O)(Levy, David) (Entered: 01/23/2018) |

| 01/24/2018 | 62 (p.698) | ORDER - GRANTING 50 (p.669) Motion to Seal. Signed by District Judge Amos L. Mazzant, III on 1/24/2018. (baf, ) (Entered: 01/24/2018) |
|---|---|---|
| 01/24/2018 | 63 (p.699) | ORDER - GRANTING 56 (p.686) Motion for Leave to File its Opposition to Plaintiffs' Motion for Class Certification under seal. Signed by District Judge Amos L. Mazzant, III on 1/24/2018. (baf, ) (Entered: 01/24/2018) |
| 01/24/2018 | 64 (p.700) | ORDER - GRANTING 58 (p.692) Motion for Leave to File its Motion for Summary Judgment under seal. Signed by District Judge Amos L. Mazzant, III on 1/24/2018. (baf, ) (Entered: 01/24/2018) |
| 02/05/2018 | 65 (p.701) | Joint MOTION for Extension of Time to File Response/Reply as to 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims* by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 02/05/2018) |
| 02/06/2018 | 66 (p.705) | ORDER AMENDING BRIEFING DEADLINES - GRANTING 65 (p.701) Motion for Extension of Time to File Response/Reply re 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims*. Responses due by 2/15/2018. Replies due by 2/22/2018 BY 1 p.m. Sur-Replies due by 2/28/2018. Signed by District Judge Amos L. Mazzant, III on 2/6/2018. (baf, ) (Entered: 02/06/2018) |
| 02/15/2018 | 67 (p.706) | Unopposed MOTION to Seal by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 02/15/2018) |
| 02/15/2018 | 68 | SEALED REPLY to Response to Motion re 52 Opposed SEALED MOTION *FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL* filed by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Declaration of Rudolph Fink IV, # 2 (p.51) Exhibit A, # 3 (p.53) Exhibit B, # 4 (p.54) Exhibit C, # 5 (p.55) Exhibit D, # 6 (p.74) Exhibit E, # 7 (p.76) Exhibit F)(LeClair, Lewis) (Entered: 02/15/2018) |
| 02/15/2018 | 69 (p.710) | Unopposed MOTION to Seal by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 02/15/2018) |
| 02/15/2018 | 70 | SEALED RESPONSE to Motion re 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims* filed by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 |

| | | |
|---|---|---|
| | | (p.25) Declaration of Rudy Fink IV, # 2 (p.51) Text of Proposed Order)(LeClair, Lewis) (Entered: 02/15/2018) |
| 02/16/2018 | 71 (p.714) | Additional Attachments to Main Document: 70 Sealed Response to Motion,,.. (Attachments: # 1 (p.25) Authorization to File Under Seal)(LeClair, Lewis) (Entered: 02/16/2018) |
| 02/16/2018 | 72 | SEALED ADDITIONAL ATTACHMENTS to Main Document: 70 Sealed Response to Motion,,. (Attachments: # 1 (p.25) Exhibit A, # 2 (p.51) Exhibit B, # 3 (p.53) Exhibit C, # 4 (p.54) Exhibit D, # 5 (p.55) Exhibit E, # 6 (p.74) Exhibit F, # 7 (p.76) Exhibit G PART1, # 8 (p.79) Exhibit G PART 2, # 9 (p.89) Exhibit G PART 3, # 10 (p.94) Exhibit G PART 4, # 11 (p.331) Exhibit G PART 5, # 12 (p.334) Exhibit G PART 6, # 13 (p.337) Exhibit G PART 7, # 14 (p.339) Exhibit G PART 8, # 15 (p.387) Exhibit G PART 9, # 16 (p.403) Exhibit H, # 17 (p.405) Exhibit I, # 18 (p.408) Exhibit J, # 19 (p.433) Exhibit K PART 1, # 20 (p.434) Exhibit K PART 2, # 21 (p.457) Exhibit L, # 22 (p.470) Exhibit M, # 23 (p.484) Exhibit N, # 24 (p.491) Exhibit O, # 25 (p.499) Exhibit P, # 26 (p.511) Exhibit Q, # 27 (p.518) Exhibit R PART 1, # 28 Exhibit R PART 2, # 29 Exhibit R PART 3)(LeClair, Lewis) (Entered: 02/16/2018) |
| 02/16/2018 | 73 (p.717) | ORDER - GRANTING 69 (p.710) Motion to Seal Summary Judgment Response and Accompanying Exhibits. Signed by District Judge Amos L. Mazzant, III on 2/16/18. (baf, ) (Entered: 02/16/2018) |
| 02/20/2018 | 74 (p.718) | ORDER ON MOTION TO SEAL - GRANTING 67 (p.706) Motion to Seal. Signed by District Judge Amos L. Mazzant, III on 2/20/2018. (baf, ) (Entered: 02/20/2018) |
| 02/22/2018 | 75 (p.1468) | REDACTION to 68 Sealed Reply to Response to Motion,, by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Exhibit A-F)(LeClair, Lewis) (Entered: 02/22/2018) |
| 02/22/2018 | 76 (p.1483) | REDACTION to 72 Sealed Additional Attachments to Main Document,, 70 Sealed Response to Motion,, 71 (p.714) Additional Attachments to Main Document by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Exhibit A-R, # 2 (p.51) Text of Proposed Order)(LeClair, Lewis) (Entered: 02/22/2018) |
| 02/22/2018 | 77 (p.719) | REPLY to Response to Motion re 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims , Defendant Jackson National Life Insurance Company's Reply In Support of its Motion For Summary Judgment on Plaintiffs' Breach of Contract and Breach of Fiduciary Duty Claims, filed by Jackson National Life Insurance Company.* (Levy, David) (Entered: 02/22/2018) |
| 02/22/2018 | 78 (p.1519) | REDACTION to 52 Opposed SEALED MOTION *FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL* by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Exhibit A01-03, A05-10, B, B-1, # 2 (p.51) Exhibit A-04, # 3 (p.53) Exhibit C - Declaration of Lewis |

| | | |
|---|---|---|
| | | LeClair, # 4 (p.54) Exhibit D - Declaration of Gary Dean Corley, # 5 (p.55) Exhibit E - Declaration of Chelsea Priest, # 6 (p.74) Exhibit E-1, # 7 (p.76) Exhibit E-2, # 8 (p.79) Declaration of Ruldoph Fink IV, # 9 (p.89) Text of Proposed Order)(LeClair, Lewis) (Entered: 02/22/2018) |
| 02/28/2018 | 79 (p.734) | SUR-REPLY to Reply to Response to Motion re 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims* filed by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (LeClair, Lewis) (Entered: 02/28/2018) |
| 02/28/2018 | 80 (p.748) | Unopposed MOTION for Leave to File *Sur-Reply in Response to Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel and Supporting Exhibits Under Seal* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Entered: 02/28/2018) |
| 02/28/2018 | 81 | SEALED REPLY to Response to Motion re 52 Opposed SEALED MOTION *FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL* filed by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Declaration of Thomas R. Davis, # 2 (p.51) Exhibit T, # 3 (p.53) Exhibit U, # 4 (p.54) Exhibit V)(Levy, David) Modified on 3/1/2018 (baf, ). (Entered: 02/28/2018) |
| 03/01/2018 | | ***PLEASE DISREGARD - ENTERED IN ERROR BY CLERK***<br><br>NOTICE of Deficiency regarding the SUR-REPLY submitted DOCUMENT 81 - DOCUMENT EXCEEDS THE PAGE LIMIT. Correction should be made by ONE BUSINESS DAY (baf, ) Modified on 3/1/2018 (baf, ). (Entered: 03/01/2018) |
| 03/01/2018 | | ***FILED IN ERROR - NOTICE OF DEFICIENCY ENTERED IN ERROR ON SEALED SUR-REPLY 81 - ORDER 53 (p.679) ENTERED 11/15/2017 ALLOWS THE FILING OF THE OVERLENGTH DOCUMENT. PLEASE IGNORE.***<br><br>(baf, ) (Entered: 03/01/2018) |
| 03/02/2018 | 82 (p.1617) | REDACTION to 81 Sealed Reply to Response to Motion, by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Declaration of Thomas R. Davis, # 2 (p.51) Exhibit T, # 3 (p.53) Exhibit U, # 4 (p.54) Exhibit V)(Levy, David) (Entered: 03/02/2018) |
| 03/04/2018 | 83 (p.754) | ORDER - GRANTING 80 (p.748) Motion for Leave to File Sur-Reply. Signed by District Judge Amos L. Mazzant, III on 3/4/2018. (baf, ) (Entered: 03/05/2018) |
| 03/05/2018 | 84 (p.755) | Minute Entry for proceedings held before District Judge Amos L. Mazzant, III: Class Certification Hearing held on 3/5/2018, Motion Hearing held on 3/5/2018 re 52 Opposed SEALED MOTION *FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL* filed by Irwin Sears, James R. Glenn, Carolyn Walker, Karen T Miller, Eileen Tredinnick, Ronald L. Wyatt, David Cruson, Janice Morris, Richard Tredinnick, Jeffrey R Miller, Suzanne Housewright, Dale Morris, Ruth Sears, Billy Walker. Court took matter under advisement (Court Reporter Jan Mason.) (dm, ) (Entered: 03/05/2018) |
| 03/23/2018 | 85 (p.757) | Joint MOTION to Amend/Correct 42 (p.599) Scheduling Order,, Terminate Motions, by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, |

| | | Karen T Miller, Dale Morris, Janice Morris, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker, Ronald L. Wyatt. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 03/23/2018) |
|---|---|---|
| 04/18/2018 | 86 (p.767) | Unopposed MOTION to Dismiss by James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 04/18/2018) |
| 04/18/2018 | 87 (p.772) | RESPONSE to Motion re 86 (p.767) Unopposed MOTION to Dismiss *Defendant's Response to Plaintiffs' Unopposed Motion to Dismiss* filed by Jackson National Life Insurance Company. (Levy, David) (Entered: 04/18/2018) |
| 04/18/2018 | 88 (p.777) | Unopposed MOTION for Hearing re 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims , Defendant Jackson National Life Insurance Company's Unopposed Request to Set Hearing on its Motion for Summary Judgment* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Entered: 04/18/2018) |
| 04/24/2018 | 89 (p.781) | Opposed MOTION to Amend/Correct 1 (p.25) Complaint, 10 (p.94) Amended Complaint, by David Cruson, James R. Glenn, Jeffrey R Miller, Karen T Miller, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 04/24/2018) |
| 04/24/2018 | 90 (p.800) | AMENDED COMPLAINT *(SECOND)* against Jackson National Life Insurance Company, filed by Karen T Miller, Irwin Sears, Eileen Tredinnick, Richard Tredinnick, Carolyn Walker, Jeffrey R Miller, David Cruson, Billy Walker, James R. Glenn, Ruth Sears, Suzanne Housewright, John Denman.(LeClair, Lewis) (Entered: 04/24/2018) |
| 04/25/2018 | 91 (p.830) | REPLY to Response to Motion re 86 (p.767) Unopposed MOTION to Dismiss *filed by David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R Miller, Karen T Miller, Irwin Sears, Ruth Sears, Eileen Tredinnick, Richard Tredinnick, Billy Walker, Carolyn Walker.* (LeClair, Lewis) (Entered: 04/25/2018) |
| 04/27/2018 | 92 (p.1686) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of the hearing on class certification held on March 5, 2018 before Judge Amos L. Mazzant. Court Reporter/Transcriber: Jan Mason,Telephone number: 903-209-4013. **NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.txed.uscourts.gov** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (95 pages) Redaction Request due 5/18/2018. Redacted Transcript Deadline set for 5/28/2018. Release of Transcript Restriction set for 7/26/2018. (jm, ) (Entered: 04/27/2018) |

| | | |
|---|---|---|
| 05/08/2018 | 93 (p.833) | Unopposed MOTION for Leave to File *Defendant Jackson National Life Insurance Company's Unopposed Motion for Leave to File Response to Plaintiffs' Opposed Motion for Leave to Amend Complaint to Add Class Representative UNDER SEAL* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Entered: 05/08/2018) |
| 05/08/2018 | 94 | SEALED RESPONSE to Motion re 89 (p.781) Opposed MOTION to Amend/Correct 1 (p.25) Complaint, 10 (p.94) Amended Complaint, *Defendants Response To Plaintiffs Opposed Motion For Leave To Amend Complaint To Add Class Representative* filed by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order, # 2 (p.51) Affidavit Declaration of Thomas R. Davis, # 3 (p.53) Exhibit 1, # 4 (p.54) Exhibit 2, # 5 (p.55) Exhibit 3, # 6 (p.74) Exhibit 4, # 7 (p.76) Exhibit 5, # 8 (p.79) Exhibit 6)(Levy, David) (Entered: 05/08/2018) |
| 05/09/2018 | 95 (p.838) | ORDER Setting Hearing on Motion 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims* : Motion Hearing set for 5/31/2018 at 9:00 AM in Ctrm 208 (Sherman) before District Judge Amos L. Mazzant III. GRANTING 88 (p.777) Unopposed MOTION for Hearing re 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims , Defendant Jackson Natio filed by Jackson National Life Insurance Company.* Signed by District Judge Amos L. Mazzant, III on 5/9/2018. (baf, ) (Entered: 05/09/2018) |
| 05/09/2018 | | ORDER granting 93 (p.833) Motion for Leave to File. Signed by District Judge Amos L. Mazzant, III on 5/9/18. (Mazzant, Amos) (Entered: 05/09/2018) |
| 05/09/2018 | 96 (p.839) | MEMORANDUM OPINION AND ORDER granting in part and denying in part 52 Sealed Motion; granting 86 (p.767) Motion to Dismiss; granting 89 (p.781) Motion to Amend/Correct. Plaintiffs Richard Tredinnick, Eileen Tredinnick, Irwin Sears, Ruth Sears, James R. Glenn, Suzanne Housewright, Jeffrey R. Miller, Karen T. Miller, Billy Walker, and Carolyn Walker are DISMISSED without prejudice. David Cruson and John Denman are appointed as Class Representatives; and Corley Law Firm and McKool Smith PC are appointed as Class Counsel. Signed by District Judge Amos L. Mazzant, III on 5/9/2018. (rpc, ) Modified on 5/9/2018 (rpc, ). (Entered: 05/09/2018) |
| 05/09/2018 | 97 (p.875) | THIRD AMENDED SCHEDULING ORDER: Final Pretrial Conference set for 10/26/2018 at 09:00 AM in Ctrm 208 (Sherman) before District Judge Amos L. Mazzant III. Discovery due by 8/15/2018. Identify trial witnesses by 9/3/2018 Jury instructions due by 10/23/2018. Mediation Completion due by 9/27/2018. Motions due by 8/8/2018. Proposed Pretrial Order due by 10/9/2018. Signed by District Judge Amos L. Mazzant, III on 5/9/2018. (rpc, ) (Entered: 05/09/2018) |
| 05/11/2018 | | NOTICE of RESETTING of Hearing on Motion 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims* : At the request of the parties, Motion Hearing reset for 6/5/2018 09:00 AM in Ctrm 208 (Sherman) before District Judge Amos L. Mazzant III. (tls) (Entered: 05/11/2018) |
| 05/11/2018 | 98 (p.1638) | REDACTION to 94 Sealed Response to Motion, *Defendant's Response to Plaintiffs' Opposed Motion for Leave to Amend Complaint to Add Class Representative* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of |

| | | |
|---|---|---|
| | | Proposed Order, # 2 (p.51) Affidavit Declaration of Thomas R. Davis, # 3 (p.53) Exhibit 1, # 4 (p.54) Exhibit 2, # 5 (p.55) Exhibit 3, # 6 (p.74) Exhibit 4, # 7 (p.76) Exhibit 5, # 8 (p.79) Exhibit 6)(Levy, David) (Entered: 05/11/2018) |
| 05/23/2018 | 99 (p.882) | MOTION to Dismiss *Defendant Jackson National Life Insurance Company's Rule 12(b)(2) Motion to Dismiss Certain Claims* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Entered: 05/23/2018) |
| 05/23/2018 | 100 (p.891) | ANSWER to 90 (p.800) Amended Complaint, *Answer to Plaintiffs' Class Action Complaint* by Jackson National Life Insurance Company.(Levy, David) (Entered: 05/23/2018) |
| 05/23/2018 | 101 (p.933) | Emergency MOTION to Stay *Defendant Jackson National Life Insurance Company's Opposed Emergency Motion to Stay Pending Interlocutory Appeal* by Jackson National Life Insurance Company. (Attachments: # 1 (p.25) Text of Proposed Order)(Levy, David) (Entered: 05/23/2018) |
| 05/25/2018 | 102 (p.945) | NOTICE by Jackson National Life Insurance Company *Defendant Jackson National Life Insurance Company's Notice of Filing Rule 23(f) Petition* (Attachments: # 1 (p.25) Exhibit A)(Davis, Thomas) (Entered: 05/25/2018) |
| 05/25/2018 | 103 (p.1019) | ORDER re 101 (p.933) Emergency MOTION to Stay. Signed by District Judge Amos L. Mazzant, III on 5/25/2018. (rpc, ) (Entered: 05/25/2018) |
| 05/29/2018 | 104 (p.1020) | Joint MOTION to Amend/Correct 97 (p.875) Scheduling Order, by David Cruson, John Denman. (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 05/29/2018) |
| 05/31/2018 | 105 (p.1033) | RESPONSE in Opposition re 101 (p.933) Emergency MOTION to Stay *Defendant Jackson National Life Insurance Company's Opposed Emergency Motion to Stay Pending Interlocutory Appeal filed by David Cruson, John Denman, Dale Morris, Janice Morris, Ronald L. Wyatt.* (Attachments: # 1 (p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 05/31/2018) |
| 06/04/2018 | 106 (p.1043) | FOURTH AMENDED SCHEDULING ORDER: Discovery due by 10/24/2018., Identify trial witnesses by 11/9/2018, Jury instructions due by 1/7/201?., Mediation Completion due by 12/6/2018., Motions due by 10/17/2018., Proposed Pretrial Order due by 12/18/2018. Signed by District Judge Amos L. Mazzant, III on 6/4/2018. (rpc, ) (Entered: 06/04/2018) |
| 06/04/2018 | 107 (p.1050) | REPLY to Response to Motion re 101 (p.933) Emergency MOTION to Stay *Defendant Jackson National Life Insurance Company's Opposed Emergency Motion to Stay Pending Interlocutory Appeal - Defendant Jackson National Life Insurance Company's Reply In Support of its Emergency Motion to Stay* filed by Jackson National Life Insurance Company. (Levy, David) (Entered: 06/04/2018) |
| 06/05/2018 | 108 (p.1056) | Minute Entry for proceedings held before District Judge Amos L. Mazzant, III: Motion Hearing held on 6/5/2018 re 59 SEALED MOTION *Defendant Jackson National Life Insurance Company's Motion for Summary Judgment On Plaintiffs' Breach of Contract And Breach of Fiduciary Duty Claims* filed by Jackson National Life Insurance Company. (Court Reporter Jan Mason.) (daj, ) (Entered: 06/05/2018) |
| 06/05/2018 | 109 (p.1057) | PAPER TRANSCRIPT REQUEST by Jackson National Life Insurance Company for proceedings held on 06/05/2018 before Judge Amos L. Mazzant. (Levy, David) (Entered: 06/05/2018) |

| | | |
|---|---|---|
| 06/06/2018 | [110](p.1059) | RESPONSE in Opposition re [99 (p.882)](p.882) MOTION to Dismiss *Defendant Jackson National Life Insurance Company's Rule 12(b)(2) Motion to Dismiss Certain Claims* filed by David Cruson, John Denman, Dale Morris, Janice Morris, Ronald L. Wyatt. (Attachments: # [1 (p.25)](p.25) Text of Proposed Order)(LeClair, Lewis) (Entered: 06/06/2018) |
| 06/11/2018 | [111](p.1067) | REPLY to Response to Motion re [99 (p.882)](p.882) MOTION to Dismiss *Defendant Jackson National Life Insurance Company's Rule 12(b)(2) Motion to Dismiss Certain Claims Defendant Jackson National Life Insurance Company's Reply In Support of its Motion to Dismiss Under Rule 12(b)(2)* filed by Jackson National Life Insurance Company. (Levy, David) (Entered: 06/11/2018) |
| 06/12/2018 | [112](p.1073) | MEMORANDUM OPINION AND ORDER. Defendant Jackson National Life Insurance Company's Emergency Motion to Stay Pending Interlocutory Appeal (Dkt. # [101 (p.933)](p.933) ) is hereby GRANTED in part. Accordingly, the case is stayed pending the outcome of the appeal to the Fifth Circuit with the exception of the Court ruling on Jackson's motion for summary judgment. Signed by District Judge Amos L. Mazzant, III on 6/12/2018. (rpc, ) (Entered: 06/12/2018) |
| 06/12/2018 | [113](p.1082) | NOTICE by David Cruson, John Denman, Dale Morris, Janice Morris, Ronald L. Wyatt *NOTICE OF FILING RULE 23(F) PETITION RESPONSE* (Attachments: # [1 (p.25)](p.25) Exhibit A)(LeClair, Lewis) (Entered: 06/12/2018) |
| 06/27/2018 | [114](p.1119) | NOTICE via United States Fifth Circuit Court of Appeals: IT IS ORDERED that the motion for leave to appeal under Fed. R. Civ. P. 23(f) is GRANTED. (kls, ) (Additional attachment(s) added on 6/27/2018: # [1 (p.25)](p.25) 5th Circuit Letter) (kls, ). (Entered: 06/27/2018) |
| 06/27/2018 | [118](p.1145) | NOTICE OF INTERLOCUTORY APPEAL as to [96 (p.839)](p.839) MEMORANDUM OPINION AND ORDER granting in part and denying in part [52](p.52) Sealed Motion; granting [86 (p.767)](p.767) Motion to Dismiss; granting [89 (p.781)](p.781) Motion to Amend/Correct, by Jackson National Life Insurance Company. ***Notice (18-90023) from 5th Circuit regarding permission granted for filing appeal - entry [114 (p.1119)](p.1119) received 6/27/2018. (kls, ) (Entered: 08/27/2018)** |
| 07/06/2018 | | Appeal filing fee, $505, paid. Receipt 6-42555. (gsg) (Entered: 07/09/2018) |
| 07/09/2018 | [115](p.1125) | PAPER TRANSCRIPT REQUEST by Jackson National Life Insurance Company for proceedings held on 03/05/2018 (Class Certification Hearing); 06/05/2018 Hearing on Def's Motion for Summary Judgment before Judge Amos L. Mazzant III. (Peterson, William) (Entered: 07/09/2018) |
| 08/08/2018 | [116](p.1781) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of the hearing on Summary Judgment held on June 5, 2018 before Judge Amos L. Mazzant. Court Reporter/Transcriber: Jan Mason,Telephone number: 903-209-4013. <br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.txed.uscourts.gov** <br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. (64 pages) Motion to Redact due |

| | | |
|---|---|---|
| | | 8/29/2018. Release of Transcript Restriction set for 11/6/2018. (jm, ) (Entered: 08/08/2018) |
| 08/08/2018 | 117 (p.1127) | MEMORANDUM OPINION AND ORDER. ORDERED that Defendant Jackson National Life Insurance Company's 59 Motion for Summary Judgment is hereby DENIED with regard to Plaintiffs' breach of contract claim and GRANTED with regard to Plaintiffs' breach of fiduciary duty claim. Signed by District Judge Amos L. Mazzant, III on 8/8/2018. (daj, ) (Entered: 08/08/2018) |
| 08/27/2018 | | NOTICE of certification of eROA provided to 5th Circuit Court of Appeals. (dlc, ) (Entered: 08/27/2018) |
| 08/27/2018 | | NOTICE of Docketing Notice of Appeal from USCA re 118 (p.1145) Notice of Interlocutory Appeal, filed by Jackson National Life Insurance Company. USCA Case Number 18-40605 as of 6/27/2018, pursuant to Notice 114 (p.1119) from 5th Circuit granting permission to file appeal. (kls, ) (Entered: 08/27/2018) |

# TAB 2

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

June 27, 2018

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 18-90023   Richard Tredinnick, et al v. Jackson National
Life Ins Co.
        USDC No. 4:16-CV-912

Enclosed is an order entered in this case.

Please be advised that no future filings should be made in the
above case number.

The case will be assigned a new appeal number issued under
separate cover.

        Sincerely,

        LYLE W. CAYCE, Clerk

        By: _____
        Angelique B. Tardie, Deputy Clerk
        504-310-7715

Mr. David O'Toole
Mr. Samuel Franklin Baxter
Mr. Lewis T. LeClair
Mr. David Jack Levy
Mr. William R. Peterson

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 18-90023

_____

DAVID CRUSON; JOHN DENMAN,

      Plaintiffs - Respondents

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,

      Defendant - Petitioner

_____

Motion for Leave to Appeal
Under Fed. R. Civ. P. 23(f)

_____

**A True Copy**
**Certified order issued Jun 27, 2018**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

Before DENNIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:

     IT IS ORDERED that the motion for leave to appeal under Fed. R. Civ. P. 23(f) is GRANTED.

# TAB 3

# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| RICHARD TREDINNICK, EILEEN TREDINNICK, IRWIN SEARS, RUTH SEARS, DAVID CRUSON, JAMES R. GLENN, SUZANNE HOUSEWRIGHT, JEFFREY R. MILLER, KAREN T. MILLER, BILLY WALKER, and CAROLYN WALKER | § § § § § § § § | |
| | § | Civil Action No.  4:16-CV-00912 |
| | § | Judge Mazzant |
| v. | § § | |
| JACKSON NATIONAL LIFE INSURANCE COMPANY | § § § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Plaintiffs' Opposed Motion for Leave to Amend Complaint to Add Class Representative (Dkt. #89), Unopposed Motion to Dismiss (Dkt. #86), and Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #52).  After reviewing the relevant pleadings, motions, and oral arguments, the Court finds that Plaintiffs' Opposed Motion for Leave to Amend Complaint to Add Class Representative (Dkt. #89) and Unopposed Motion to Dismiss (Dkt. #86) are granted. Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #52) should be granted in part and denied in part.

## BACKGROUND

Plaintiffs Richard Tredinnick, Eileen Tredinnick, Irwin Sears, Ruth Sears, David Cruson, James R. Glenn, Suzanne Housewright, Jeffrey R. Miller, Karen T. Miller, Billy Walker, and Carolyn Walker ("Named Plaintiffs" or "Plaintiffs") bring this proposed nationwide class action on behalf of themselves and others who purchased variable annuity investment products from Defendant Jackson National Life Insurance Company ("Jackson").  In so doing, Plaintiffs aim to

18-40605.839

wrest and remedy harm resulting from Jackson's systemic contractual misrepresentation and breach when assessing certain fees—surrender charges—on those products.

Jackson nationally markets variable annuities through a network of individual sales agents, marketing organizations, third-party marketing organizations, brokerage firms, and financial institutions. Jackson sells variable annuities through four distribution channels—independent broker/dealers, regional broker/dealers, financial institutions, and individual sales agents ("affiliated agents").  To support its affiliated sales agents, Jackson prepares, approves, and disseminates account service forms, brochures, marketing, and sales materials.  Affiliated agents use these materials to market and sell annuities to customers, many of whom are senior citizens. Jackson primarily markets variable annuities to older customers and senior citizens in the Eastern District of Texas and nationwide.  When marketing its annuities, Jackson touts their guaranteed safety of principal, lifetime income streams, and opportunities for market growth.

A deferred annuity can either be fixed or variable.  Fixed annuities appreciate at a guaranteed fixed interest rate.  The issuer of a fixed annuity pays the purchaser a guaranteed interest rate—similar to a debt instrument.  Variable annuities, on the other hand, invest in equity portfolios and do not appreciate at a guaranteed fixed rate.  As equity markets shift in value, so does the return on the annuity.

Fees significantly shape variable annuity performance.  One fee—the surrender charge—generates substantial revenue for issuers like Jackson.  Such surrender charges include withdrawal charges and recapture charges (collectively, "surrender charge(s)").  From 2009-2013, Jackson published the following surrender charges—2009: $25,432,934; 2010: $31,960,116; 2011: $37,748,144; 2012: $40,792,400; 2013: $52,189,880. (Dkt. #10 at pp. 11, 12).  In 2014, Jackson stopped publicly reporting surrender charges.  Given this burgeoning trend of annual surrender

18-40605.840

charges, however, Plaintiffs presume that Jackson earned over $50 million in surrender charges in 2014 and 2015.

Plaintiffs claim that Jackson assesses surrender charges on withdrawals from annuities and again on the surrender charges themselves.  In doing so, Plaintiffs aver that Jackson breaches the plain language of its contract and contravenes Securities and Exchange Commission ("SEC") annuity consumer protection guidelines.  Plaintiffs aim to stop this practice and compensate current contract holders who paid excess surrender charges.

On November 14, 2017, Plaintiffs filed an Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #52). On January 19, 2018, Jackson filed a response (Dkt. #57).  On February 15, 2018, Plaintiffs filed a reply (Dkt. #68).  On February 28, 2018, Jackson filed a sur-reply (Dkt. #81).  On March 5, 2018, the Court held a hearing on this matter where it heard oral argument from counsel for both Plaintiffs and Jackson (Dkt. #84).

On April 18, 2018, Plaintiffs filed an Unopposed Motion to Dismiss (Dkt. #86), seeking to remove all of the Named Plaintiffs as class representatives, except David Cruson.  Jackson filed its response the same day (Dkt. #87).  On April 24, 2018, Plaintiffs filed an Opposed Motion for Leave to Amend Complaint to Add Class Representative (Dkt. #89), seeking to add John Denman as a putative class representative.  On May 8, 2018, Jackson filed its response (Dkt. #94).

## LEGAL STANDARD

### I.    LEAVE TO AMEND

"Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."  *S&W Enters. v. SouthTrust Bank*, 315 F.3d 533, 536 (5th Cir. 2003).  Federal Rule of Civil Procedure 16(b), a schedule may be modified for "good cause."  *Id*.  The Fifth Circuit has established four factors the Court should consider when determining whether good cause exists:

18-40605.841

"(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure the prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546–47 (5th Cir. 2003).

Federal Rule of Civil Procedure 15(a)(2) states that the Court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a).  "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters.*, 315 F.3d at 536.  Whether to allow amendment "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992).

## II.    PERSONAL JURISDICTION

In addition to its opposition to class certification, Jackson challenges whether the Court has personal jurisdiction over claims against Jackson.  Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2).  After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction,"  if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l*

4

18-40605.842

*Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977).  Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)).  However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence."  *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).  First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant.  *Id.*  And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution.  *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992).  Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees.  *Bullion*, 895 F.2d at 216.  The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

18-40605.843

*Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction.  *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted).  However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state.  *Helicopteros*, 466 U.S. at 414 n.8.  For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out

6

of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*.

## III.    CLASS CERTIFICATION

"Rule 23 governs whether a proposed class falls within the limited exception to 'the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "Four prerequisites must be met by all classes: numerosity, commonality, typicality, and adequacy of representation." *Id.* (citing FED. R. CIV. P. 23(a)). The party seeking certification must first demonstrate that

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and then, "the proposed class must satisfy at least one of the

18-40605.845

three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 349,

131 S. Ct. 2541, 2552, 180 L. Ed. 2d 374 (2011). Those requirements are

> (1) prosecuting separate actions by or against individual class members would create risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b).

## ANALYSIS

## I.    LEAVE TO AMEND AND MOTION TO DISMISS

Plaintiffs Richard Tredinnick, Eileen Tredinnick, Irwin Sears, Ruth Sears, James R. Glenn, Suzanne Housewright, Jeffrey R. Miller, Karen T. Miller, Billy Walker, and Carolyn Walker request dismissal from this case without prejudice so that they can pursue different claims against Jackson in Texas State Court related to the charges they incurred under their broker Tim Hightower's ("Hightower") Exit Plan.[1]  Thus, Plaintiffs assert that they "do not wish to entangle

---

[1] Hightower initially used a "re-entry scheme," where he would withdraw money from his clients' accounts and then redeposit some, or all, of that money back into those accounts, generating additional commissions for himself with little, if any, benefit to his clients. Jackson initially restricted Hightower's use of this scheme and ultimately terminated him. When Hightower was no longer able to use his re-entry scheme, he convinced Plaintiffs to engage in his "Exit Plan," which involved moving their money to other companies.  However, these cash-outs would incur surrender chargers. To offset the "loss" of cashing out, Hightower had Plaintiffs purchase new contracts from another carrier (like Pacific Life) that provided "bonus credit that would offset a portion of the surrender charge incurred by the

18-40605.846

this class action . . . with their individual state-court claims against Jackson" and also seek to avoid a possible claim preclusion argument from Jackson (Dkt. #89 at p. 3). Plaintiffs' assert that the remaining class representative, Mr. Cruson, has elected not to pursue any individual claims against Jackson.[2]

In their motion for leave to amend, Plaintiffs wish to add Mr. Denman as a putative class representative to strengthen the class's representation. Plaintiffs claim that "Plaintiffs' counsel identified Mr. Denman within the last month" and because he did not use Mr. Hightower, there are arguably no "issues associated with unique defenses or typicality." (Dkt. #86 at p. 2).

Jackson asserts it is too late to add a new putative class representative and doing so would unduly prejudice Jackson (Dkt. #94). The Court disagrees. *See In re Norplant Contraceptive Prod. Liab. Litig.*, 163 F.R.D. 255, 257 (E.D. Tex. 1995) (granting the plaintiffs leave to amend to add additional parties); *see also Ruderman vs. Washington National Insurance Co*., 263 FRD 670, 677 (S.D. Fl. 2010) (granting certification and allowing additional plaintiffs to intervene to be added as class representatives).

Mr. Denman complains of the same surrender charge calculation as the one listed in the original complaint. Thus, "granting leave to amend in order to add [him as a Named Plaintiff] will cause neither undue delay nor undue prejudice, and the amendment is certainly germane to the original complaint. Additionally, there is no evidence to suggest that Plaintiffs are acting in bad faith in seeking to add these new plaintiffs." *In re Norplant*, 163 F.R.D. at 257. Jackson will not

---

client." (Dkt. #57, Exhibit S-03, Hightower Dep. 78:4–7). He also instructed Plaintiffs to write letters to his broker-dealer (Capital Investments Group, Inc.) to be "made whole" for the amounts not covered by the "bonuses." The broker-dealer paid these "make whole" amounts (Dkt. #57, Exhibit N).

[2] Also Jackson argues that Plaintiffs essentially acknowledge that the Named Plaintiffs' individual claims create "unique circumstances [that] are **atypical** of any class under Rule 23(a)(3)" (Dkt. #87 at p. 1) (emphasis in original). If that were true, Mr. Cruson would also "fall[] under the same umbrella and suffer[] that same shortcomings, as a prospective class representative." (Dkt. #87 at p. 2). However, as discussed *infra* Part III.A.4, the Court finds that these individual claims do not preclude a finding of typicality.

18-40605.847

be unfairly prejudiced because at the time the motion for leave was filed, the Court had not yet

ruled on the motion for class certification. *See id.* The Court finds that Plaintiffs should be allowed

to amend their complaint to add Mr. Denman as a class representative.

## II.    PERSONAL JURISDICTION

Jackson challenges whether the Court has personal jurisdiction over claims against

Jackson.  Jackson relies on *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco Cty.*,

137 S. Ct. 1773, 1775, 198 L. Ed. 2d 395 (2017), asserting that "[a] class of non-Texas residents

would be improper, because Jackson is not subject to general personal jurisdiction in Texas and

non-Texas putative class members cannot establish specific personal jurisdiction over Jackson

merely because the named Plaintiffs are from Texas." (Dkt. #57 at p. 23).  Plaintiffs argue that

Jackson waived this challenge by not arguing it in its previous motion to dismiss (Dkt. #68 at p.

10).

Federal Rule of Civil Procedure 12(h)(1) "advises a litigant to exercise great diligence in

challenging personal jurisdiction, venue, or service of process.  If he wishes to raise any of these

defenses he must do so at the time he makes his first defensive move." *Golden v. Cox Furniture*

*Mfg. Co. Inc.*, 683 F.2d 115, 118 (5th Cir. 1982).  Under Federal Rule of Civil Procedure 12(h)(1),

"[a] party waives any defense listed in rule 12(b)(2)-(5) by . . . omitting it from a motion in the

circumstances described in Rule 12(g)(2)." FED. R. CIV. P. 12(h)(1)(A).  Federal Rule of Civil

Procedure 12(g) provides that "a party that makes a motion under this rule must not make another

motion under this rule raising a defense or objection that was available to the party but omitted

from its earlier motion." FED. R. CIV. P. 12(g)(2).  Accordingly, a party must assert any Rule

12(b)(2) motion that is available at the time it files any Rule 12 motion.  *Stroman Realty, Inc. v.*

*Antt*, 528 F.3d 382, 385 n.1 (5th Cir. 2008); *Elbit Sys. Land & C41 Ltd. v. Hughes Network Sys,*

18-40605.848

*LLC*, No. 2:15-cv-37, 2017 WL 2651618, at *20 (E.D. Tex. June 20, 2017) (citing *e.g.*, *Peacock v. Ins. & Bonds Agency of Tex., PLLC*, No. 3:12-CV-1710-D, 2012 WL 3702920, at *1 (N.D. Tex. Aug. 28, 2012)).

Jackson asserts that it raised its personal jurisdiction objection in its answer and has properly preserved its objection to nationwide certification outside its home state (*See* Dkt. #43 at p. 43). Even though Federal Rule of Civil Procedure 12 requires defendants to file motions contained in that rule before filing an answer, courts often consider a motion to dismiss under Rule 12(b) timely as long as the defense is properly preserved in the party's answer. *Brokerwood Intern. (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 379–81 (5th Cir. 2004); *Isbell v. DM Records, Inc.*, 2011 WL 1299611, at *2 n.2 (E.D. Tex. March 31, 2011) ("courts often 'consider a post-answer motion to dismiss as properly before the court as long as the movant also raised the defense . . . in his or her answer.'") (quoting *Delhomme v. Caremark RX Inc.*, 232 F.R.D. 573, 575–76 (N.D. Tex. 2005)); *Cloeren Inc. v. Extrusion Dies Indus., LLC*, 2012 WL 12897045 at *2 (E.D. Tex. Aug. 14, 2012) ("Although a post-answer Rule 12(b)(6) motion is technically untimely under the Rules, if a defense has previously been included in the answer, a court will generally allow a Rule 12(b)(6) motion.") (citing *Jones v. Lopez*, 262 F. Supp. 2d 701, 706 (W.D. Tex. 2001); *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999)). Accordingly, as long as Jackson otherwise preserved its 12(b)(2) defense, its failure to file a motion before it filed its answer did not constitute waiver.

Jackson initially raised its personal jurisdiction objection in its answer (Dkt. #43 at p. 43). Jackson filed its first Rule 12 motion on February 6, 2017, by filing a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, and 12(b)(1) asserting Dale and Janice Morris and Ronald L. Wyatt lacked standing (Dkt. #5). At that time, Jackson did not attempt to

18-40605.849

file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Moreover, on March 31, 2017, Jackson renewed its Rule 12 motion after Plaintiffs amended their complaint, and again this motion was not based on lack of personal jurisdiction under 12(b)(2).[3]  In its response to Plaintiffs' motion for class certification, Jackson finally raised and briefed its objection to the Court's personal jurisdiction (Dkt. #57 at pp. 23–25).

Even where the defense was asserted in a timely answer, delay in challenging personal jurisdiction by motion to dismiss may result in waiver.  *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *11 (W.D. Tex. Apr. 5, 2017) (citing *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994) ("[A] party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive litigation in the forum.")).  *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 654 (5th Cir. 2002).  A defendant may waive or forfeit a personal jurisdiction defense through litigation on the merits in situations in which it is not clear that the defendant maintains its personal jurisdiction defense. *See, e.g.*, *Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010) (holding that despite defendant's initial response to plaintiff's injunction motion including a statement that the district court lacked personal jurisdiction over it, defendant nevertheless waived its personal jurisdiction defense by substantially litigating on the merits, including both briefing and oral arguments addressing the merits of plaintiff's claim); *Gerber v. Riordan*, 649 F.3d 514, 518 (6th

---

[3] On September 29, 2017, the Court granted in part and denied in part Jackson's motion to dismiss (Dkt. #31), dismissing Plaintiffs' negligent misrepresentation claim under 12(b)(6) and dismissing Dale and Janice Morris's and Ronald L. Wyatt's claims under 12(b)(1) for lack of standing.

Cir. 2011) (holding defendants waived their personal jurisdiction defense where defendants filed an initial motion to dismiss for lack of personal jurisdiction, which was rejected for reasons other than the merits, and then participated in litigating on the merits before renewing their motion, which included their counsel making a general appearance).

Thus, Jackson waived its defense to personal jurisdiction by failing to timely move or plead such a defense, assuming that such a defense was available at the time Jackson filed its 12(b)(6) motion. FED. R. CIV. P. 12(g)(2); FED. R. CIV. P. 12(h)(1)(A).  Jackson argues that the Supreme Court's decision *Bristol-Myers* "represented a change in the law coming after Jackson's original motion to dismiss, which provided Jackson a basis to object to nationwide certification that was not previously available; thus, Jackson did not waive that objection under Rule 12(g)(2) or (h)(1)" (Dkt. #81 at p. 10).  *See Bristol-Myers,* 137 S. Ct. at 1775.

The Supreme Court issued the *Bristol-Myers* decision on June 19, 2017.  Since then, courts have been split as to whether *Bristol-Myers* precludes nationwide certification of a diversity-based class action outside the defendant's home state.  *See Monteville Sloan, et al., v. General Motors LLC*, No. 16-CV-07244-EMC, 2018 WL 784049, at *3–4 (N.D. Cal. Feb. 7, 2018) (declining to apply *Bristol-Myers* to class actions); *but see DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018); *Spratley v. FCA US LLC*, No. 317CV0062MADDEP, 2017 WL 4023348, at *7–8 (N.D.N.Y. Sept. 12, 2017); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 (D. Ariz. Oct. 2, 2017).

Even if the *Bristol-Myers* decision represented a change in the law that created a basis to object to nationwide certification based on personal jurisdiction that was not previously available to Jackson (which Jackson has not shown),[4] the Court finds that Jackson still waived the defense

---

[4] Contrary to Jackson's contention, the Court finds that the Supreme Court's decision in *Bristol-Myers* does not constitute a change in the law and involves only the straightforward application of settled principles of specific

18-40605.851

by delaying in challenging personal jurisdiction and substantially litigating on the merits.  The

right or privilege to assert that objection came into existence on June 19, 2017, when the *Bristol-*

*Myers* decision was issued.  By waiting exactly seven months after *Bristol-Myers* to informally

raise the personal jurisdiction objection in its response to class certification (Dkt. #57 at pp. 23-25)

and then proceed to substantially litigate on the merits,[5] including filing its motion for summary

judgment (Dkt. #59), Jackson waived the objection.[6]

## III.    CLASS CERTIFICATION

In considering class certification, "the district [court] 'must conduct a rigorous analysis of

the Rule 23 prerequisites before certifying a class.'"  *Yates v. Collier*, 868 F.3d 354, 362 (5th Cir.

2017) (quoting *Castano*, 84 F.3d at 740).  This analysis may require some overlap with the merits

of the claims.  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013).

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the

---

personal jurisdiction. *See Bristol–Myers*, 137 S.Ct. at 1783 ("Our straightforward application in this case of settled principles of personal jurisdiction will not result in the parade of horribles that respondents conjure up.").  "And even if it did not, *Bristol–Myers* concerns only the 'due process limits on the exercise of specific jurisdiction by a State.'" *Thomas v. Kellogg Co.*, No. C13-5136RBL, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (quoting *Bristol–Myers*, 137 S.Ct.at 1783). It is unclear whether *Bristol–Myers* even applies to this case, filed in federal district court. *See Bristol–Myers*, at 1783–84 ("[S]ince our decision concerns the due process limits on the exercise of specific jurisdiction *by a State*, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.") (emphasis added). Nor has Jackson identified controlling precedent in the Fifth Circuit directly precluding its jurisdictional argument.

[5](*See also* Dkt. #26—Unopposed Motion to Set Hearing On Motion to Dismiss Amended Class Action Complaint; Dkt. #28—Motion to Preclude Plaintiffs' Proposed Expert, Mr. Rory P. McDonald, From Access to Defendant's Confidential Information Pursuant to Paragraph 19 of The Protective Order (later withdrawn)).

[6] Courts in the Eastern District have recently applied this analysis to patent venue challenges after the Supreme Court's decision in *TC Heartland*, which was declared an intervening change in the law by the Federal Circuit.  *In re Micron Tech., Inc.*, 875 F.3d 1091, 1100 (Fed. Cir. 2017) (citing *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1515, 197 L. Ed. 2d 816 (2017)); *see Keranos, LLC, v. Silicon Storage Tech. Inc., et al*, 2:13-cv-00017-RWS-RSP, Dkt. #383 at 3 (E.D. Tex. March 1, 2018) ("The Court agrees with [Plaintiff] that by waiting almost nine months after *TC Heartland* to raise the venue objection, Defendants waived the objection."*); but see Orthosie Sys., LLC v. Redtail Telematics, Corp.*, No. 4:16-CV-00927, 2017 WL 3608185, at *2 (E.D. Tex. Aug. 22, 2017) (finding Defendant adequately preserved improper venue defense by filing its first Rule 12(b)(3) approximately two months after *TC Heartland*, "before the parties had begun to significantly litigate the case").  "Nothing in the Federal Rules of Civil Procedure would preclude a district court from applying other standards, such as those requiring timely and adequate preservation, to find a venue objection lost if, for example, it was not made until long after the statutory change took effect."  *In re Micron Tech., Inc.*, 875 F.3d at 1100.

18-40605.852

certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The Court must be mindful of the practicalities of trying the particular case as a class action when conducting this rigorous analysis. *Dukes*, 564 U.S. at 351 ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740 (1982) (internal quotation omitted)); *see Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 556 (5th Cir. 2011).

"The party seeking certification bears the burden of proof" that the proposed class meets all certification requirements. *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original).

## A.  23(a) – Prerequisites

### 1.  Ascertainability[7]

Before considering the express Rule 23 requirements, the Court considers whether a class exists that can be adequately defined. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). The *Proposed Class of Jackson Contract Holders Damaged by Overcharges* consists of the following:

---

[7] In their reply, Plaintiffs concede that the economic loss rule bars recovery of their breach-of-fiduciary-duty claims (Dkt. #68 at p. 8) and the Court excludes them from their proposed class definitions.

18-40605.853

All persons who, within the applicable statute of limitations, purchased a Perspective series, Elite Access series, or Retirement Latitudes series of variable annuity products from Jackson National Life Insurance Company or its affiliates, and incurred a Surrender Charge during their ownership of such product but excluding the judge and staff to whom this case is assigned and any member of the judge's immediate family.

Plaintiffs assert that this class should be certified for the claims whether or not Jackson breached its contracts with the class members through its calculation of surrender charges, except those with contracts issued in Louisiana and Tennessee.

The *Proposed Class of Jackson Contract Holders for Injunctive Relief* consists of the following:

All persons who purchased a Perspective series, Elite Access series, or Retirement Latitudes series of variable annuity products from Jackson National Life Insurance Company or its affiliates and that still have an active contract with Jackson and so might incur a Surrender Charge during their ownership of such product but excluding the judge and staff to whom this case is assigned and any member of the judge's immediate family.

Plaintiffs assert that this class should be certified for the claims regarding the interpretation of Jackson's contracts regarding surrender chargers with the class members, except those with contracts issued in Louisiana and Tennessee.

The Court is persuaded that Plaintiffs have selected a feasible and manageable process to identify class members using Jackson's records. The information that has been produced on Jackson's annuity policy holders and their transactions allows for the identification of over 150,000 Jackson annuity policy holders who have incurred surrender charges. The Court finds these records are sufficient objective criteria to ascertain the proposed class under Plaintiffs' proposed class definition.

18-40605.854

### 2. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all the class members would be impracticable. FED. R. CIV. P. 23(a). "[A] number of facts other than the actual or estimated number of purported class members may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Ibe*, 836 F.3d at 528. The Fifth Circuit has found that 100 to 150 members is within the range that satisfies the numerosity requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

Plaintiffs estimate that there are more than 150,000 members of the nationwide class who have incurred surrender charges. These overcharged policies are distributed throughout the fifty states of the United States and the District of Columbia. In its response, Jackson does not dispute that Plaintiffs' proposed nationwide class is sufficiently numerous to satisfy Rule 23(a)(1). Joinder is also impracticable. The numerosity requirement is therefore met.

### 3. Rule 23(a)(2): Commonality

Commonality requires "questions of law or fact common to the class." FED R. CIV. P. 23(a)(2). "Even a single common question of law or fact can suffice to establish commonality, so long as resolution of that question 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Ibe*, 836 F.3d at 528 (quoting *Dukes*, 564 U.S. at 350).

Plaintiffs assert that the class members share common facts and questions as to breach of contract, including the uniform terms of the contracts and the uniform conditions of the breach of contract, that are central to their claims. The Court agrees.

18-40605.855

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) (quoting *Dukes*, 564 U.S. at 350).

The factual and legal questions as to whether Jackson calculated its surrender charge correctly and whether its actions breached its contracts with its annuity holders can be resolved through the presentation of common evidence and generate common answers for all plaintiffs. Neither party asserts that the contract language is ambiguous (*See* Dkt. #57 at p. 1) ("Plaintiffs' lawsuit is founded on an unreasonable reading of unambiguous contract language."). Jackson also stipulates to the following facts regarding variable annuity products issued in states other than New York, which shows there are no material differences in its contract language, how Jackson calculates and applies withdrawal charges, and how it markets its contract:

- There are no material differences in how Jackson calculates [Surrender] Charges for residents of any one state of the United States as compared to any other;

- There are no material differences in the language in Jackson's variable annuity contracts concerning the calculation of Surrender Charges between a contract issued in any one state of the United States as compared to any other;

- With respect to each type of Jackson variable annuity contract, there are no material differences in the language in Jackson's variable annuity prospectuses concerning the calculation of Surrender Charges between a contract issued in any one state of the United States as compared to any other state; except that the prospectuses for some of Jackson's variable annuity contracts have an Appendix B that other prospectuses do not. However,

18-40605.856

Jackson calculates Surrender Charges uniformly, regardless of the presence or absence of Appendix B;

- There are no material differences in the language of Jackson's variable annuity contracts concerning the calculation of Surrender Charges;

- There are no material differences in the language in Jackson's marketing materials concerning Surrender Charges in any one state of the United States as compared to any other state, except as set forth in paragraph 3 above; and

- There are no material differences in the training material or how Jackson trains its support personnel to respond to questions or inquiries from policy holders concerning Surrender Charges in any one state of the United States as compared to any other state.

(Dkt. #52 at pp. 8–9).

Given the uniformity of Jackson's contracts and actions, the contention of breach is a common question.  The commonality of Rule 23(a)(2) is met.  *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) ("Rule 23(a)(2) requires that all of the class members' claims depend on a common issue of law or fact whose resolution "will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.") (quoting *Dukes*, 131 S.Ct. at 2551) (emphasis in original).  The Court will address Jackson's arguments relating to its affirmative defenses and individualized damages in the predominance section because Plaintiffs have raised "at least one contention that is central to the validity of each class member's claims." *See In re Deepwater Horizon*, 739 F.3d at 810.

### 4.  Rule 23(a)(3): Typicality

Typicality requires a determination of whether the named plaintiffs' claims are typical of those of the proposed class they seek to represent.  FED R. CIV. P. 23(a)(3).  The test "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). "Typicality does not require a complete identity of claims.  Rather, the critical inquiry is whether

18-40605.857

the class representative's claims have the same essential characteristics of those of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."  *Id.*

The parties disagree as to whether the Named Plaintiffs are typical of those of the members of the proposed class.  Plaintiffs assert that the Named Plaintiffs in this lawsuit represent typical holders of Jackson variable annuity contracts who have incurred surrender charges.  Mr. Denman purchased two variable annuities from Jackson called Prospective Rewards on November 16, 2012.  Mr. Denman incurred the following surrender charge: $75,226.53 on August 10, 2017.  Mr. Cruson purchased six variable annuities from Jackson called Perspective II between the dates of January, 23, 2014 and January 31, 2014. Mr. Cruson incurred the following surrender charges: $3,933.80 on June 22, 2016, $3,624.60 on June 21, 2016, $3,209.41 on June 22, 2016, and $3,595.95 on June 21, 2016.  Plaintiffs contend that their claims "share the same legal theories . . . and arise from the same conduct—each class representative withdrew funds from a Jackson variable annuity and suffered the same Surrender Charge injury as the proposed class." (Dkt. #52 at p. 14).

Jackson asserts that the Mr. Cruson was compensated for all surrender charges that he incurred under Hightower's Exit Plan.  Moreover, Jackson argues "Plaintiffs' lawsuits will be consumed by defenses related to these payments—*e.g.*, no standing, no damages, unjust enrichment, and offset—causing their litigation and strategies to differ meaningfully from those of the putative class members who did not receive such payments." (Dkt. #57 at p. 8).  Jackson further argues that the Named Plaintiffs have not suffered living or death benefit damages and "[t]here are no allegations that any [Named] Plaintiff took a living benefit impacted by a surrender

20

charge, nor is it alleged that any Plaintiff is beneficiary that took a death benefit impacted by a surrender charge." (Dkt. #57 at p. 8).

Plaintiffs counter that money Mr. Cruson received was paid by other parties, for reasons specific to those parties and not to benefit Jackson.  Plaintiffs assert that Mr. Cruson was compensated with payments for the settlement of claims with their broker and broker-dealer because they could not deliver on the promised Jackson re-entry strategy.  Thus, Jackson has provided no compensation for its actions and is not entitled to an offset of damages from those payments.[8]  Furthermore, Plaintiffs assert that differences in living and death benefit damages is merely a difference in damages calculation.  For all class members, Jackson's surrender charge calculation resulted in less money being in the accounts than there should be.  Those class members who have also invoked a living or a death benefit of their contract are simply entitled to additional damages.

The variations between the representatives and other members of the class are fundamentally variances in damages (e.g., the amount of the overcharge or when the overcharge occurred), not variances in the merits of the claims.  "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. Cty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[T]ypicality is not primarily concerned with whether each person in a proposed class suffers the same type of damages . . . it is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

---

[8]"Under the 'collateral source rule,' a party may not have the benefit of insurance independently procured by the injured party, and to which the party was not privy." *Structural Metals, Inc. v. S & C Elec. Co.*, No. SA-09-CV-984-XR, 2013 WL 870084, at *5 (W.D. Tex. Mar. 7, 2013), *aff'd*, 590 F. App'x 298 (5th Cir. 2014) (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex. 1980). "The collateral source rule is an exception to the one satisfaction rule." *Structural Metals*, 2013 WL 870084, at *5 (applying the collateral source rule to contract and warranty claims, finding payments for different injuries did not trigger the one satisfaction rule).

To the extent whether the Named Plaintiffs are subject to such affirmative defenses, which are discussed in greater detail *infra*, the issue in this case is whether the putative class representatives and the class members all share common contract language and common conditions resulting in their harms.  In other words, "[i]n the event the class members in this case were to proceed in a parallel action, they would advance legal and remedial theories similar, if not identical, to those advanced by the [N]amed [P]laintiffs." *Lightbourn*, 118 F.3d at 426.  Thus, the Court finds the typicality requirement is met.

### 5.  Rule 23(a)(4): Adequacy

Rule 23(a)(4) provides that the court may certify a class only if "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  For adequacy, a court considers "[1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]"  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001) (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).  "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests."  *Id.*  (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986); *see Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005); *James*, 254 F.3d at 570; *Treasure Chest*, 186 F.3d at 625–626.

Jackson does not dispute the experience of Plaintiffs' counsel and the Court finds Plaintiffs' counsel have extensive experience in class and other complex litigation and are qualified to conduct this litigation.  However, Jackson again argues that Mr. Cruson has been fully compensated by the settlement agreements and have no real interest in prosecuting this lawsuit

18-40605.860

(Dkt. #57 at p. 9).  Even if the Court were to find that Jackson is entitled to the one satisfaction defense, the Court still finds that this does not create a conflict in Mr. Cruson's interests.  *See Treasure Chest*, 186 F.3d at 626 (noting that although the differences described by defendant might create variances in the ways that the named plaintiffs and class members prove causation and damages, this did not affect the alignment of their interests).

Jackson further argues that the Named Plaintiffs lack knowledge and interest in monitoring or prosecuting this lawsuit.  *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("[R]epresentatives must show themselves sufficiently informed about the litigation to manage [it]."). Jackson cites to the testimony of the Named Plaintiffs, asserting the Named Plaintiffs "cannot articulate what is wrong with Jackson's calculation, much less how . . . the contracts should be interpreted." (Dkt. #57 at p. 9).

Plaintiffs respond that the discovery record shows that the Named Plaintiffs are well suited to pursue the class's claims (Dkt. #68 at pp. 6–7).  To date, the Named Plaintiffs have collected and produced documents and Mr. Cruson has been deposed.  During his deposition, Mr. Cruson testified that they would represent the class and do what was required of them. (*See* Dkt. #52, Exhibit A-5, Cruson Dep. At 107:12-24).  The Court further finds that Mr. Denman will only strengthen the class's representation and eliminate Jackson's primary concerns regarding the Hightower Exit Plan.

"Although, certainly, class representatives need not be legal scholars and are entitled to rely on counsel, plaintiffs do need to know more than that they were involved in a bad business deal." *Berger*, 257 F.3d at 483 (internal quotations omitted).  It is clear that a proposed class representative's understanding of their case "should not be limited to derivative knowledge acquired solely from counsel."  *Id.* at 483 n.18.  "An example of an adequate class representative

18-40605.861

is one with 'commendable familiarity with the complaint and the concept of a class action.'" *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 587 (W.D. Tex. 2002) (quoting *Horton,* 690 F.2d at 484). However, a lack of detailed factual knowledge about the case or a lack of understanding regarding the legal theories by the named plaintiffs does not preclude class certification in a complex case. *See In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 733 (S.D. Tex. 2006).

While the Named Plaintiffs cannot be expected to know all of the legal minutia involved in litigating their case, they should at least have an understanding of why all of the individuals or companies are defendants other than their general knowledge that they were "involved in a bad business deal." *Berger*, 257 F.3d at 480 (internal quotations omitted); *see Ogden v. AmeriCredit Corp.,* 225 F.R.D. 529, 534–35 (N.D. Tex. 2005). The Named Plaintiffs have reviewed important documents, including multiple drafts of the complaint; they have discussed the details of the case with their lawyers; they know that they must continue to supervise their attorneys; they understand the fundamental nature of the claims presented; and they comprehend the damage that the alleged breach has caused them to suffer. Adequacy is satisfied.

## B. 23(b)(3): Predominance and Superiority

### 1. Predominance of Common Questions

The predominance inquiry in Rule 23(b)(3) is "more demanding than the commonality requirement of Rule 23(a) and requires courts to consider how a trial on the merits would be conducted if a class were certified." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007) (citing *Bell Atl. Corp. v. AT&T Corp.,* 339 F.3d 294, 301–02 (5th Cir. 2003)) (internal quotations omitted). The Court must determine whether the issues in the lawsuit could cause the proposed class to "degenerat[e] into a series of individual trials," such that class certification is inappropriate. *Maldanado*, 493 F.3d at 525 (citing *Bell Atl.*, 339 F.3d at 302

18-40605.862

(internal quotations omitted)); *see also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) ("Whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case.").

The Fifth Circuit's analysis in *Frey v. First Nat'l Bank* is instructive on Rule 23(b)(3)'s predominance inquiry:

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689 (1997). This inquiry requires us to consider "how a trial on the merits would be conducted if a class were certified." *Gene and Gene LLC v. BioPay LLC,* 541 F.3d 318, 326 (5th Cir. 2008) (quoting *Bell Atl.,* 339 F.3d at 302). This "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id.* (quoting *Bell Atl.,* 339 F.3d at 302). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins*, 782 F.2d 468, 472 (5th Cir. 1986).

602 F. App'x 164, 169–70 (5th Cir. 2015).

To show a breach of contract, Plaintiffs must prove: (1) the existence of a valid contract; (2) performance by Plaintiffs; (3) breach of contract by Jackson; and (4) damages resulting from the breach. *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Here, the class's claims depend on the determination of whether surrender charges assessed by Jackson breached the annuity contracts. This case differs from *Dukes*, where the members of the class alleged varying types of unlawful conduct, from which arose varying causation issues. *See Dukes,* 131 S.Ct. at 2553. The question of liability in that case required an individualized analysis. *Id*. In the present case, however, a single determination of the legality of the fees charged by Jackson will determine liability for the entire case.

25

As discussed above, Jackson has stipulated that there are no material differences between the various Jackson contracts for surrender charge purposes and neither party asserts that the contract is ambiguous.  The evidence necessary to prove the breach of contract claim is essentially identical to the evidence necessary to identify the class members: whether class members purchased an annuity policy with Jackson and whether they suffered a surrender charge.  The only substantively disputed issue is whether Jackson's method of calculating surrender charges is permitted by Jackson's contracts (i.e., breach).  Answering that question can be done on a class-wide basis.  For every class member, the answer will uniformly be either "yes" or "no."

Jackson argues that the interpretation of an unambiguous contract must be resolved on an individual basis due to variations in state contract law.  Jackson also asserts that its affirmative defenses implicate individual facts and circumstances, rather than classwide proof.  Lastly, Jackson asserts that the surrender charge and benefits damages will require "extensive individualized analysis." (Dkt. #57 at p. 10).  The Court will address each argument in turn.

### i.  Variations in State Contract Law

The parties essentially disagree about whether the differences in states' parol evidence rules matter.  Jackson argues that there are variations among the states with regard to the use of extrinsic evidence to construe contracts and that a state-by-state analysis will be necessary to determine Plaintiffs' breach of contract question.  Jackson argues that certain Plaintiffs received different prospectuses, which describe the calculation of surrender charges.  Jackson asserts that the prospectuses and similar illustration documents given to some customers and the commercial setting of these contracts requires interpretation of the contract would need to be considered on a case-by-case basis, including the use of extrinsic evidence.

18-40605.864

The Court finds that these distinctions do not defeat predomination.  Jackson's variable annuity contracts are form contracts and Plaintiffs challenge Jackson's uniform calculation of surrender charges. Courts routinely certify class actions involving breaches of form contracts. *Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149, 155 (S.D. Tex. 2003) ("An action primarily involving interpretation of a form contract is well suited for class adjudication, at least on the issue of liability.") (citing *Durrett v. John Deere Co.,* 150 F.R.D. 555, 558 (N.D. Tex. 1993)). *See, e.g. Sacred Heart Health Systems, Inc. v. Humana Military Healthcare,* 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment"); *Smilow v. Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32 (1st Cir. 2003) ("Overall, we find that common issues of law and fact predominate here. The case turns on interpretation of the form contract, executed by all class members and defendant."); *Allapattah Servs. v. Exxon Corp.,* 333 F.3d 1248, 1261 (11th Cir. 2003); *Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (collecting cases).

As discussed above, Jackson has stipulated that "[t]here are no material differences in the language of Jackson's variable annuity contracts concerning the calculation of Surrender Charges[.]" (Dkt. #52 at p. 8).  Jackson has also stipulated that it calculates its surrender charges the same way regardless of what prospectus might be provided to a client, and "Jackson calculates Surrender Charges uniformly, regardless of the presence or absence of Appendix B." (Dkt. #52 at pp. 8–9).   It is hard to see what extrinsic evidence would be relevant to interpreting unambiguous form contract terms or Jackson's liability based on its calculation, and Jackson does not identify any extrinsic evidence or ambiguous contact terms.  In sum, issues regarding extrinsic evidence do not necessarily defeat the predominance requirement in a case involving form contracts, and do not defeat predominance in this case.

27

18-40605.865

### ii.  Affirmative Defenses

Plaintiffs assert that although there are variations in the statute of limitations for breach of contract claims, these variations are statutory and can be "folded into the formulaic computation of damages." (Dkt. #52 at p. 19 n.8)  The Court agrees.  As recognized by the Fifth Circuit, "[t]hough individual class members whose claims are shown to fall outside the relevant statute of limitations are barred from recovery, this does not establish that individual issues predominate[.]" *Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir. 2004); *Castro v. Collecto, Inc.*, 256 F.R.D. 534, 542–43 (W.D. Tex. 2009) (certifying class over defendants' assertions that their statute-of-limitations defense would require "mini-trials" as to each class member to determine whether that member's claim was time-barred).  *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485–86 (C.D. Cal. 2012) (finding predominance was not defeated when the doctrines used by plaintiffs for tolling a statute of limitations involve proof common to the defendants).

"What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350, 131 S.Ct. at 2551.  Limitations defenses generally present common questions, rather than individual ones, because a limitations defense's merits generally depend on (1) the date on which the statute of limitations accrued and (2) the date on which the action was filed.  Here, the filing date of the class action is the same for all class members: November 29, 2016 (*See* Dkt. #1).  The date on which the statute of limitations accrued is also common among all class members because Jackson's single act of calculating its surrender charges is alleged to have breached the annuity policy terms with all class members at once.  The Court finds the statute of limitations defense does not defeat predominance.

18-40605.866

Jackson also contends that certain knowledge-based defenses such as waiver and ratification require an individualized inquiry that defeats predominance. Jackson asserts the individualized facts include, among others: (1) the extent of each class member's knowledge about the surrender charge calculations; (2) what their brokers or attorneys told them; (3) whether that was contrary to the manner in which Jackson calculates them; (4) whether they were informed after each withdrawal (as Plaintiffs were) of the charges and remaining contract values; and (5) whether they complained, remained silent, or acted in a manner that was inconsistent with claiming that the surrender charges should have been calculated differently.

The Court finds that these affirmative defenses also do not preclude certification.  Many of these knowledge-based defenses require plaintiffs to have full knowledge of the circumstances in order for the defense to prevail. *See, e.g., In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 650–51 n.10–13 (S.D. Fla. 2015) (collecting cases nationwide).

The Court rejects any contention that an annuity policyholder could have gained "full knowledge" of the proper interpretation of the annuity policy's surrender charge calculation through subsequent conversations with brokers or attorneys.  *See, e.g., Id.* at 651 (holding that plaintiffs could undercut defendant's affirmative defenses of ratification, waiver, voluntary payment, and failure to mitigate through the use of common evidence of defendant's misinforming its customers regarding its assessment of overdraft fees).  Here, although some class members may have been aware of a greater surrender charge than anticipated, they could not have been aware of the lawfulness of Jackson's conduct until either liability is established or Jackson admits that its actions were unlawful.  *See Allen v. Holiday Universal*, 249 F.R.D. 166, 169 (E.D. Pa. 2008) (holding that the defense of ratification could not preclude class certification because the class members could not obtain "full knowledge of all material facts," including how the form contract

29

18-40605.867

properly applied and whether the defendants' acts taken pursuant to that contract were unlawful, until a ruling was made on the contract).

Thus, the success or failure of the potential defenses is susceptible to common methods of proof.  Jackson does not need to examine the circumstances surrounding the negotiation, execution, and delivery of each individual annuity policy, nor its reasons for how it calculated the surrender charges, in order to determine whether defenses and counterclaims will apply in any individual annuity purchase.  *Cf. Witt v. Chesapeake Expl., L.L.C.*, 276 F.R.D. 458, 469 (E.D. Tex. 2011); *In re Wilborn,* 609 F.3d 748, 756 (5th Cir. 2010).  The basic facts are common to the class: class members had similar contracts and Jackson applied the same surcharge calculation to all the annuity contracts.  There is no need for an extensive file-by-file review to sort out the factual details as to each plaintiff.  *Cf. Hancock v. Chicago Title Ins. Co.*, 263 F.R.D. 383, 388 (N.D. Tex. 2009), *aff'd sub nom. Benavides v. Chicago Title Ins. Co.*, No. 10-10136, 2011 WL 1057567 (5th Cir. Mar. 23, 2011) (finding that the class action failed the predominance requirement because "[e]ach borrower's claim presents an insular inquiry: whether the reissue credit was properly applied or withheld *in that particular case.*") (emphasis in original).  Whether and to what extent class members were adequately warned of the surcharge and the surcharge calculation, or continued to accept the allegedly incorrect surcharge amount is a matter for trial, or summary judgment, based on common methods of proof.

Lastly, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane,

18-40605.868

Federal Practice and Procedure § 1778, pp. 123–24 (3d ed. 2005)).   In the present case, the surrender charges were applied uniformly nationwide and only one question remains regarding Jackson's application.     Jackson's affirmative defenses do not defeat the predominance requirement.

### iii.   Individualized Damages

Jackson argues that Plaintiffs have failed to provide a reliable method to calculate surrender overcharges.  Plaintiffs assert that once the breach of contract issue is resolved, the computation of damages is an objective question that does not require subjective consideration for particular class members.  To show the amount of overcharges can be calculated with reasonable certainty using class-wide proof, Plaintiffs offer their damage's expert EJ Janik, who concludes Jackson's records can be used to create a model for quantifying the amount by which Plaintiffs were overcharged for their annuity contract withdrawals.

"Generally, individualized damages calculations will not preclude a finding of predominance."  *Ibe*, 836 F.3d at 529.  However, where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class.  *Bell,* 399 F.3d. at 308 (holding that "class certification is not appropriate" because plaintiffs "failed to demonstrate that the calculation of individualized actual economic damages, if any, suffered by the class members can be performed in accordance with the predominance requirement"); *O'Sullivan,* 319 F.3d 732, 745 (5th Cir. 2003) (holding that district court abused its discretion in certifying class "[i]n light of the individual calculation of damages that is required"); *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 419 (5th Cir.1998) (holding that certification under Rule 23(b)(3) was not appropriate because "plaintiffs' claims for

18-40605.869

compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole").

The measure for breach of contract damages is "just compensation for the loss of damage actually sustained." *Amigo Broad., LP v. Spanish Broad. Sys., Inc.,* 521 F.3d 472, 482–83 (5th Cir. 2008) (citing *Stewart v. Basey,* 245 S.W.2d 484, 486 (Tex. 1952)). Jackson calculates surrender charges in the same way for each product type, regardless of what state the contract was issued in. Jackson also maintains centralized records for its contract holders and their transactions.

The right of every class member to recover damages or not to recover damages may be resolved in "one stroke." Plaintiffs have shown that the amount of each class member's damages, if any, is calculable from Jackson's records; that Jackson still possesses such records; and that such records are maintained sequentially in order of the year and date the annuity contract was signed. Thus, the fact that the amount of damage, if any, awardable to each individual class member will vary according to the amount of that class member's contract with Jackson does not defeat predominance. That is, the common question of whether class members are entitled to a refund in surrender charges pursuant to Jackson's annuity contract "predominate[s] over any questions affecting only individual members." *Amgen*, 568 U.S. at 459; *see In re Deepwater Horizon,* 739 F.3d at 816 (upholding a finding of predominance despite diverse damages because "even without a common means of measuring damages, [the] common issues [of fact and law] nonetheless predominated over the issues unique to individual claimants.").

### 2. Class Treatment is Superior to Other Methods of Adjudicating the Controversy

When determining whether class treatment is superior to the available methods of adjudicating the controversy, the Court examines the following factors: "(A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B)

18-40605.870

the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties encountered in managing a class action." *Amchem Prods., Inc.*, 521 U.S. at 615–616.

A class action constitutes the only realistic way Plaintiffs' claims can be adjudicated.  Many of the class members' claims will be small relative to the high costs of maintaining individual actions.  The size of the class should not present management difficulties.  Once the breach of contract issue is resolved, the computation of damages is an objective question that does not require subjective consideration for particular class members.  Streamlining claims in this one forum will avoid inconsistency and simplify the process of resolving the surrender charge claims.  Thus, conservation of judicial resources warrants a class action.

### C.  23(b)(2) – Injunction Relief Class

Plaintiffs also assert that the Injunctive Relief class meets the requirements of Rule 23(b)(2).  "It is well-established that '[i]nstead of requiring common issues, [Rule] 23(b)(2) requires common behavior by the defendant toward the class.'"  *Yates*, 868 F.3d at 366 (quoting *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012)). "Rule 23(b)(2) certification is available if three requirements are satisfied: (1) 'class members must have been harmed in essentially the same way'; (2) 'injunctive relief must predominate over monetary damage claims'; and (3) 'the injunctive relief sought must be specific.'" *Yates*, 868 F.3d at 366–67 (quoting *Maldonado*, 493 F.3d at 524).  "[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *See also Allison*, 151 F.3d at 415.  As made clear recently by the Supreme Court:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or

18-40605.871

declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant.

*Dukes*, 564 U.S. at 360.

For the members of this class, Plaintiffs assert that they simply seek that Jackson calculate future surrender charges in accordance with its contracts.  Plaintiffs contend that the Injunctive Relief class (defined above) has the potential to be harmed in exactly the same way, and the class is specific.  The injunctive relief in such a request also predominates over monetary relief, since damages calculations would be "incidental" and would not require additional hearings.

Rule 23(b)(2) simply "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360–61 (emphasis added); *see also Allison*, 151 F.3d at 415 (explaining that only damages "in the nature of a group remedy" may be sought under Rule 23(b)(2)).  Plaintiffs in this case are seeking to recover individualized damages arising out of the alleged overcharges.

In this case, Plaintiffs seek millions of dollars in excess surrender charges based on individualized damages claims of the putative class members.  The calculation of the alleged overcharges will require, among other things, analysis of the Remaining Premium, the duration of the Premium, the timing of previous withdrawals, the amount of previous withdrawals with regard to the fee percentage, and whether subsequent withdrawals were affected, as to each account. *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000); *see also, e.g.*, *Tolbert v. RBC Capital Markets Corp.*, No. CV H-11-0107, 2016 WL 3034497, at *8 (S.D. Tex. May 26, 2016) ("Each class member's recovery would be based on the amount forfeited from his or her account, and would, by necessity, require individual damages calculations.  This runs afoul of *Dukes*

34

18-40605.872

prohibition of individualized damage awards [under Rule 23(b)(2)]."); *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011) (denying certification under Rule 23(b)(2) where individualized damages were at issue because "[t]he monetary tail would be wagging the injunction dog," and an injunction would not provide "final" relief as required by the rule). Therefore, Plaintiffs' proposed class to be certified under Rule 23(b)(2) is denied.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Opposed Motion for Leave to Amend Complaint to Add Class Representative (Dkt. #89) and Unopposed Motion to Dismiss (Dkt. #86) are **GRANTED**.  Plaintiffs Richard Tredinnick, Eileen Tredinnick, Irwin Sears, Ruth Sears, James R. Glenn, Suzanne Housewright, Jeffrey R. Miller, Karen T. Miller, Billy Walker, and Carolyn Walker are **DISMISSED without prejudice**.

It is therefore **ORDERED** that Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #52) is **GRANTED in part** and **DENIED in part**.  Plaintiffs' proposed class to be certified under Rule 23(b)(2) is **DENIED**.  Plaintiffs' proposed class to be certified under Rule 23(b)(3) is **GRANTED**, and the class consists of:

> All persons who, within the applicable statute of limitations, purchased a Perspective series, Elite Access series, or Retirement Latitudes series of variable annuity products from Jackson National Life Insurance Company or its affiliates, and incurred a Surrender Charge during their ownership of such product but excluding the judge and staff to whom this case is assigned and any member of the judge's immediate family.

It is further **ORDERED** that David Cruson and John Denman are appointed as Class Representatives; and Corley Law Firm and McKool Smith PC are appointed as Class Counsel.

18-40605.873

**SIGNED this 9th day of May, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

18-40605.874

**TAB 4**

# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID CRUSON and JOHN DENMAN | § | |
| | § | |
| | § | Civil Action No. 4:16-CV-00912 |
| v. | § | Judge Mazzant |
| | § | |
| JACKSON NATIONAL LIFE INSURANCE | § | |
| COMPANY | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Defendant Jackson National Life Insurance Company's Emergency Motion to Stay Pending Interlocutory Appeal (Dkt. #101). After reviewing the relevant pleadings, the Court finds that the motion should be granted in part.

## BACKGROUND

Plaintiffs David Cruson and John Denman ("Plaintiffs") bring this proposed nationwide class action on behalf of themselves and others who purchased variable annuity investment products from Defendant Jackson National Life Insurance Company ("Jackson"). In so doing, Plaintiffs aim to wrest and remedy harm resulting from Jackson's systemic contractual misrepresentation and breach when assessing certain fees—surrender charges—on those products.

Jackson nationally markets variable annuities through a network of individual sales agents, marketing organizations, third-party marketing organizations, brokerage firms, and financial institutions. Jackson sells variable annuities through four distribution channels—independent broker/dealers, regional broker/dealers, financial institutions, and individual sales agents ("affiliated agents"). To support its affiliated sales agents, Jackson prepares, approves, and disseminates account service forms, brochures, marketing, and sales materials. Affiliated agents use these materials to market and sell annuities to customers, many of whom are senior citizens.

18-40605.1073

Jackson primarily markets variable annuities to older customers and senior citizens in the Eastern District of Texas and nationwide.  When marketing its annuities, Jackson touts their guaranteed safety of principal, lifetime income streams, and opportunities for market growth.

A deferred annuity can either be fixed or variable.  Fixed annuities appreciate at a guaranteed fixed interest rate.  The issuer of a fixed annuity pays the purchaser a guaranteed interest rate—similar to a debt instrument.  Variable annuities, on the other hand, invest in equity portfolios and do not appreciate at a guaranteed fixed rate.  As equity markets shift in value, so does the return on the annuity.

Fees significantly shape variable annuity performance.  One fee—the surrender charge—generates substantial revenue for issuers like Jackson.  Such surrender charges include withdrawal charges and recapture charges (collectively, "surrender charge(s)").  From 2009-2013, Jackson published the following surrender charges—2009: $25,432,934; 2010: $31,960,116; 2011: $37,748,144; 2012: $40,792,400; 2013: $52,189,880. (Dkt. #10 at pp. 11, 12).  In 2014, Jackson stopped publicly reporting surrender charges.  Given this burgeoning trend of annual surrender charges, however, Plaintiffs presume that Jackson earned over $50 million in surrender charges in 2014 and 2015.

Plaintiffs claim that Jackson assesses surrender charges on withdrawals from annuities and again on the surrender charges themselves.  In doing so, Plaintiffs aver that Jackson breaches the plain language of its contract and contravenes Securities and Exchange Commission annuity consumer protection guidelines.  Plaintiffs aim to stop this practice and compensate current contract holders who paid excess surrender charges.

On May 9, 2018, the Court granted in part and denied in part Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel (the "Certification Order") (Dkt. #96).

18-40605.1074

It its Certification Order, the Court certified Plaintiffs' proposed class under Federal Rule of Civil

Procedure 23(b)(3), and the class consists of:

> All persons who, within the applicable statute of limitations, purchased a
> Perspective series, Elite Access series, or Retirement Latitudes series of variable
> annuity products from Jackson National Life Insurance Company or its affiliates,
> and incurred a Surrender Charge during their ownership of such product but
> excluding the judge and staff to whom this case is assigned and any member of the
> judge's immediate family.

(Dkt. #96 at p. 35).

Following the Certification Order, Jackson filed a Notice of Filing Rule 23(f) Petition,

indicating that Jackson requested permission to appeal the Certification Order to the United States

Court of Appeals for the Fifth Circuit (Dkt. #102).  On May 23, 2018, Jackson filed an Emergency

Motion to Stay Pending Interlocutory Appeal (Dkt. #101).  On May 31, 2018, Plaintiffs filed a

response (Dkt. #105).  On June 4, 2018, Jackson filed a reply (Dkt. #107).

On May 29, 2018, the parties filed a Joint Motion to Amend Scheduling Order, requesting

a 70-day continuance of the all scheduling deadlines and to move the mediation deadline to four

weeks after the Fifth Circuit rules on Jackson's Rule 23(f) petition (Dkt. #104).  On June 4, 2018,

the Court granted the parties' request (Dkt. #106).

## LEGAL STANDARD

Under Fifth Circuit law, the stay of a case pending appeal constitutes "extraordinary relief."

*Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 275 (5th Cir. 1994). The decision

whether to stay a case lies within the sound discretion of the district court. *Weingarten Realty

Inv'rs v. Miller*, 611 F.3d 904, 910 (5th Cir. 2011).  District courts have the inherent power to stay

proceedings pending before them, but this power is "incidental to the power inherent in every court

to control the disposition of the cases on its docket with economy of time and effort for itself, for

counsel, and for litigants."  *In re M.J. Beebe*, No. 95-20244, 1995 WL 337666, at *2

18-40605.1075

(5th Cir. May 15, 1995) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts determining whether to issue a stay pending appeal may consider factors such as (1) whether the movant is likely to succeed on the merits; (2) whether the movant would suffer irreparable harm absent a stay; (3) whether granting the stay would substantially harm the other parties; and (4) whether granting the stay would serve the public interest. *In re First S. Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987). *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks and citation omitted). These traditional four factors "must be fully applied except where there is a serious legal question involved *and* the balance of equities heavily favors a stay; in those situations, the movant only needs to present a substantial case on the merits." *Weingarten Realty Investors*, 661 F.3d at 910 (emphasis added).

The movant bears the burden of showing that a stay is warranted. *Id.* Where "there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *see Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (citation omitted) ("'[A] stay is not a matter of right, even if irreparable injury might result otherwise.' It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'").

## ANALYSIS

Jackson asks the Court to enter a stay of all further proceedings pending their Rule 23(f) interlocutory appeal of the Court's Certification Order, certifying the class action because they can establish all four elements required by law. Plaintiffs contends that the Court should deny the stay because the class will suffer substantial harm. Further, Plaintiffs assert that Jackson cannot satisfy the remaining elements necessary to justify the Court issuing a stay.

4

18-40605.1076

### A.  Likelihood of Success on the Merits

In order for the Court to issue a stay, the movant must first demonstrate a likelihood of success on the merits on appeal.  *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).  The Fifth Circuit has stated that "the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay."  *Ruiz v. Estelle*, 650 F.2d 555, 565–66 (5th Cir. Unit A June 1981) (citing *Providence Journal v. Fed. Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979); *Hous. Insulation Contractors Ass'n v. Nat'l Labor Relations Bd.*, 339 F.2d 868, 870 (5th Cir. 1964)).  The Fifth Circuit further explained that "if the balance of equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits."  *Id.* The Court acknowledges that there are serious legal questions involved in the case, and as such, if Jackson demonstrate a substantial case on the merits, then this element is met.

Jackson asserts that it has presented a substantial case on the merits based on the Court's resolution of the jurisdictional issue and the Court's class certification analysis under Rule 23(b).  First, Jackson asserts that under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco Cty.*, 137 S. Ct. 1773, 1775, 198 L. Ed. 2d 395 (2017), the Court's exercise of specific personal jurisdiction over Jackson for out-of-state named plaintiffs is improper (Dkt. #101 at p. 5).  Jackson also argues that the Court erred in finding that Jackson waived its objection to personal jurisdiction because before the Court certified the class, there were no out-of-state named plaintiffs to object to (Dkt. #101 at p. 5) ("Given the procedural posture of

18-40605.1077

this case, and because there were no out-of-state named plaintiffs, Jackson . . . did not waive its objection [to personal jurisdiction.]") (*See also* Dkt. #107 at p. 4).[1]

Jackson additionally attacks the Court's conclusion that common questions of law or fact predominate over individual questions required by Rule 23(b) (Dkt. #101 at p. 5). *See* FED. R. CIV. P. 23(b).   Jackson asserts that the "Court incorrectly disregarded the individualized inquiry [and proof] needed for each plaintiff's breach of contract claim", including Jackson's affirmative defenses of ratification and waiver (Dkt. #101 at p. 6).   Lastly, Jackson argues that certification was inappropriate because Plaintiffs have failed to present a workable damages model (Dkt. #101 at p. 6).

The Fifth Circuit recognizes that a party presents a substantial case on the merits when there is a lack of precedent to clarify the issues at bar.[2]   Given the novelty of this matter and significant lack of precedent regarding the application of *Bristol-Myers*, the Court finds that Jackson has made a substantial case on the merits.   Since Jackson has established that this proceeding involves a serious legal question presenting a substantial case on the merits, the Court asks whether the balance of equities favors granting a stay.   *Ruiz*, 650 F.2d at 565–66.

---

[1] The Court did not address this argument in the Certification Order because Jackson first raised the argument in its Sur-Reply in Response to Plaintiffs' Opposed Motion for Class Certification and Appointment of Class Counsel (Dkt. #81at pp. 9–10). (*See* Dkt. #57 at pp. 23–25). *See Branch v. CEMEX, Inc.*, No. H-11-1953, 2012 WL 2357280, at *9 (S.D. Tex. June 20, 2012) ("Legal arguments raised for the first time in a sur-reply, like arguments raised for the first time in a reply, are waived."); *Miles Bramwell USA, LLC v. Weight Watchers Intern., Inc.*, No. 4:12-cv-292, 2013 WL 1797031, at *4 (March 27, 2013), *adopted by* 2013 WL 1793934 (E.D. Tex. April 26, 2013). However, Jackson filed a Rule 12(b)(2) Motion to Dismiss Certain Claims (Dkt. #99) for lack of specific personal jurisdiction after the Court granted class certification.  If necessary, the Court will address Jackson's motion to dismiss following the Fifth Circuit's ruling on the appeal of the Certification Order.

[2] In *Ruiz*, the Fifth Circuit looked to case law to find a constitutional mandate for the disputed legal issue.  650 F.2d at 568.  The Fifth Circuit found that there was no "constitutionally mandated square footage requirement" for prison cells based on its reading of *Rhodes v. Chapman*, 101 S. Ct. 2392, 2395–2396 (1981), *Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir. 1977), and *William v. Edwards*, 547 F.2d 1206, 1215 (5th Cir. 1977).  *Id.* at 568.  The Fifth Circuit subsequently found that "we know of no constitutional mandate for correctional units to be situated within 50 miles of a major metropolitan area in order to ensure adequate staffing. Therefore, we conclude that the State has made a substantial case on the merits. . . ."  *Id.* at 574.

18-40605.1078

### B.  Balancing the Equitable Factors

When determining whether to grant a stay, the Court must also weigh the following equitable factors: (1) whether the movant will suffer irreparable harm absent a stay; (2) whether the non-movant will suffer injury if the stay is granted; and (3) whether a stay serves the public interest.  *See In re First S. Sav. Ass'n*, 820 F.2d at 704.

 "[A]n 'injury is "irreparable" only if it cannot be undone through monetary remedies.'" *Burgess v. Fed. Deposit Ins. Corp.,* 871 F.3d 297, 304 (5th Cir. 2017) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 F.2d 464, 472 (5th Cir. 1985)) (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B Nov. 1981)). "'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Va. Petrol. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.3d 921, 925 (D.C. Cir. 1958)).[3]

Jackson asserts that absent a stay, it will endure extensive discovery and substantial motions practice that could be rendered unnecessary if the Fifth Circuit finds that the Court lacks sufficient jurisdiction over it (Dkt. #101 at pp. 6–7).  Courts have recognized that the cost of pretrial litigation and discovery for defending a class action lawsuit with numerous plaintiffs can amount to irreparable hardship.  *Pena v. Taylor Farms Pacific, Inc.*, 2015 WL 5103157 at *5 (E.D. Cal. Aug. 31, 2015) (class size: "several thousand" members); *Risinger v. SOC LLC*, 2015 WL 7573191 at *2–3 (D. Nev. Nov. 24, 2015) (class size: 4,000 plaintiffs); *Brown v. Wal-Mart*

---

[3] When evaluating claimed irreparable harm for a motion to stay proceedings, the Fifth Circuit applies criteria that is very similar to that it uses to assess irreparable harm in a motion for preliminary injunction.  *Burgess*, 871 F.3d at 304. Under such criteria, alleged irreparable harm cannot be speculative.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21–22 (2008) (emphasis added) (finding that a movant must show that "he is *likely* to suffer irreparable harm. . . ."); *see also United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant . . . *A presently existing actual threat must be shown*.") (emphasis in original).

18-40605.1079

*Stores, Inc.*, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012) (class size: 22,000 plaintiffs). The class in this matter numbers in the thousands or tens of thousands, and the Court appreciates the pretrial burdens that accompany a large class of plaintiffs.  The Court also finds that Plaintiffs will shoulder no pretrial litigation costs if the case is stayed during the pendency of the appeal.

Lastly, the Court's most recent Fourth Amended Scheduling Order (Dkt. #106) extended all deadlines until the Fifth Circuit likely rules on the Certification Order.  Thus, any urgency or timeliness concerns Plaintiffs may have are also alleviated by the Fourth Amended Scheduling Order.

Therefore, although the Court recognizes that pretrial litigation and discovery for defending a class action lawsuit can constitute irreparable harm, the Court declines to find that such harm in this case reaches an irreparable level.  However, the Court does find that the third factor—whether issuance of the stay will substantially injure other parties interested in the proceeding—weighs in favor issuing a stay.

Lastly, Jackson maintains that issuing a stay of the Certification Order until the Fifth Circuit can resolve the complex and important issues in this case favors the public interest.  The Court finds that the public policy of efficient allocation of judicial resources should be considered because Jackson has shown a serious legal question on appeal and all deadlines have been extended until the likely resolution of the appeal.  Thus, there is "reason to invoke the general public policy of preserving judicial resources from the risk of reversal." *Weingarten Realty Inv'rs*, 661 F.3d at 913 ("Such a policy might favor staying district court proceedings where a difficult question is presented on appeal, because the district court's order could be overturned.").

Jackson has demonstrated that Plaintiffs would suffer no substantial harm due to a stay and that a stay would serve the public interest.  Thus, the balance of equities supports granting a stay

18-40605.1080

pending appeal.  However, the Court exempts ruling on Jackson's motion for summary judgment (Dkt. #59) from the stay.  The motion is currently ripe and the Court has already heard oral argument from counsel at the hearing held on June 5, 2018.  Furthermore, the motion is unaffected by the Fifth Circuit's ruling on the jurisdictional issue—it is uncontested that the Court has jurisdiction over the Texas residents claims against Jackson (Dkt. #99 at p. 4)—and certification issue—if reversed, individual breach of contract claims against Jackson will still exist.

## CONCLUSION

It is therefore **ORDERED** that Defendant Jackson National Life Insurance Company's Emergency Motion to Stay Pending Interlocutory Appeal (Dkt. #101) is hereby **GRANTED in part**.  Accordingly, the case is stayed pending the outcome of the appeal to the Fifth Circuit with the exception of the Court ruling on Jackson's motion for summary judgment.

**SIGNED this 12th day of June, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

18-40605.1081

# TAB 5

# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DAVID CRUSON and JOHN DENMAN | § | |
| | § | |
| | § | Civil Action No.  4:16-CV-00912 |
| v. | § | Judge Mazzant |
| | § | |
| JACKSON NATIONAL LIFE INSURANCE | § | |
| COMPANY | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Jackson National Life Insurance Company's Motion for Summary Judgment (Dkt. #59). Having considered the relevant pleadings and evidence, the Court finds the motion should be granted in part and denied in part.

## BACKGROUND

Plaintiffs David Cruson and John Denman ("Named Plaintiffs" or "Plaintiffs") bring this proposed nationwide class action on behalf of themselves and others who purchased variable annuity contracts (the "contract(s)") from Defendant Jackson National Life Insurance Company ("Jackson").  In so doing, Plaintiffs aim to wrest and remedy harm resulting from Jackson's systemic contractual misrepresentation and breach when assessing certain fees—surrender charges—on those products.

Jackson nationally markets variable annuities through a network of individual sales agents, marketing organizations, third-party marketing organizations, brokerage firms, and financial institutions. Jackson sells variable annuities through four distribution channels—independent broker/dealers, regional broker/dealers, financial institutions, and individual sales agents ("affiliated agents").  To support its affiliated agents, Jackson prepares, approves, and disseminates account service forms, brochures, marketing, and sales materials.  Affiliated agents use these

18-40605.1127

materials to market and sell annuities to customers, many of whom are senior citizens. Jackson primarily markets variable annuities to older customers and senior citizens in the Eastern District of Texas and nationwide.  When marketing its annuities, Jackson touts their guaranteed safety of principal, lifetime income streams, and opportunities for market growth.

A deferred annuity can either be fixed or variable.  Fixed annuities appreciate at a guaranteed fixed interest rate.  The issuer of a fixed annuity pays the purchaser a guaranteed interest rate—similar to a debt instrument.  Variable annuities, on the other hand, invest in equity portfolios and do not appreciate at a guaranteed fixed rate.  As equity markets shift in value, so does the return on the annuity.

Fees significantly shape variable annuity performance.  One fee—the surrender charge—generates substantial revenue for issuers like Jackson.  Such surrender charges include withdrawal charges and recapture charges (collectively, "surrender charge(s)").  From 2009–2013, Jackson published the following surrender charges—2009: $25,432,934; 2010: $31,960,116; 2011: $37,748,144; 2012: $40,792,400; 2013: $52,189,880 (Dkt. #10 at pp. 11–12).  In 2014, Jackson stopped publicly reporting surrender charges.  Given this burgeoning trend of annual surrender charges, however, Plaintiffs presume that Jackson earned over $50 million in surrender charges in 2014 and 2015.

Plaintiffs claim that Jackson assesses surrender charges on withdrawals from annuities and again on the surrender charges themselves.  In doing so, Plaintiffs aver that Jackson breaches the plain language of its contract and contravenes Securities and Exchange Commission annuity consumer protection guidelines.  Plaintiffs aim to stop this practice and compensate current and former contract holders who paid excess surrender charges.

2

18-40605.1128

On January 19, 2018, Jackson filed its motion for summary judgment (Dkt #59).   On February 15, 2018, Plaintiffs filed a response (Dkt. #70).   On February 22, 2018, Jackson filed a reply (Dkt. #77).   On February 28, 2018, Plaintiffs filed a sur-reply (Dkt. #79).   On June 5, 2018, the Court held a hearing on Jackson's motion for summary judgment (Dkt. #108).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  Substantive law identifies which facts are material.  *Id.*  The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment."  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323.  If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence

18-40605.1129

of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."  *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).  A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 257.  Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden.  Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment.  *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)).  The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

As a preliminary matter, Plaintiffs concede that the economic loss rule likely forecloses their ability to recover damages for their breach of fiduciary duty claim because "the damages [they seek] to recover for the class are the same damages [they seek] for breach of contract" (Dkt. #70 at p. 29).  The Court agrees and summary judgment is granted as to Plaintiffs' breach of fiduciary duty claim.  The Court now turns to whether Plaintiffs have a viable breach of contract claim.

### I.    Breach of Contract

The Court, sitting in diversity, applies Texas law in the interpretation of contracts.  *H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 150 F.3d 526, 529 (5th Cir. 1998).

18-40605.1130

Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach." *In re Staley,* 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.).

The only contested element is whether Jackson is in breach of its contracts.  The parties apparently agree that the contract is unambiguous, however, their respective interpretations of the agreement are different as to the application of the surrender charges.

Plaintiffs assert that Jackson breached and continues to breach the annuity policies in two ways: (1) applying the surrender charge to the Remaining Premium withdrawn, instead of only deducting the surrender charge from the remaining Contract Value, and (2) Jackson's calculation of the surrender charge is unsupported by the contract language because it includes a calculation of a gross amount for the withdrawal as an initial step, which results in "withdrawal charges on top of withdrawal charges" (Dkt. #70 at pp. 10–17).

Jackson asserts that Plaintiffs' breach of contract claim fails as a matter of law because it properly calculates the surrender charges pursuant to the "unambiguous language of the contracts" (Dkt. #59 at pp. 10–11).  Jackson argues that the prospectuses for the annuity contracts, which are alleged to be incorporated into the contracts by reference, "reinforce this methodology with specific examples and mathematical formulas."  (Dkt. #59 at p. 11).

### A.  The Prospectus, Including Exhibit B, is Not Part of the Entire Contract

Jackson asserts that "the prospectuses for the Jackson products at issue (*i.e.,* Perspective II and Perspective Rewards) include an 'Exhibit B,' which provides an explanation and illustration of how surrender charges are calculated." (Dkt. #59 at p. 7).  Jackson asserts it calculates surrender

18-40605.1131

charges based on the gross remaining premium withdrawn, which includes the surrender charge, and supports this interpretation with examples illustrated in the prospectus.

As support that it is using the correct calculation and application of surrender charges, Jackson argues that the contracts are partially-integrated, not fully integrated.  Accordingly, Jackson argues that the prospectuses should be considered as part of the contracts (Dkt. #59 at p. 18).  Plaintiffs assert that the contracts are fully integrated and do not include the prospectuses as part of the contracts (Dkt. #70 at p. 20).

As this Court is sitting in diversity jurisdiction, the Court applies the parol evidence rule of Texas.  *Harville Rose Serv. v. Kellogg Co.*, 448 F.2d 1346, 1349 (5th Cir. 1971).  Under that rule, evidence offered contrary to the apparent terms of an integrated contract[1] is admissible only if the contract is incomplete or ambiguous.  *Jack H. Brown & Co. v. Toys "R" Us, Inc.*, 906 F.2d 169, 173 (5th Cir. 1990) (applying Texas law).

Under both Federal and Texas law, the Court may look to parol evidence to determine whether an invoice is a complete expression of the terms agreed upon between the parties, and thus, partially or fully integrated.  *Pennzoil Co. v. F.E.R.C.,* 645 F.2d 360, 388 (5th Cir.1981) ("It is only after consideration of the extrinsic evidence that the parol evidence rule applies if in light of the circumstances and purposes of the contract the court finds it unambiguous and integrated . . . ."); 49 TEX. PRACTICE: Contract Law § 8.3 (2017) ("Until the contract is deemed either unintegrated, partially integrated, or fully integrated, the parol evidence rule does not bar any evidence.") (citing *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981); *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 651 (Tex. App.—Houston

---

[1] Contracts are presumed integrated. *N. K. Parrish, Inc. v. Sw. Beef Indus. Corp.*, 638 F.2d 1366, 1368–69 (5th Cir. 1981) (applying Texas law).

18-40605.1132

[14th Dist.] 2004), *opinion supplemented on overruling of reh'g,* (2 pets.) (Feb. 10, 2005)).  Each

policy includes the following provision or a slight variation:

> **ENTIRE CONTRACT**. The Contract, and any attached Company forms,
> endorsements, and amendments together make up the entire Contract.

(Dkt. #72, Exhibit P at p. 9 (VA630); Exhibit I at p. 9 (VA210 same); Exhibit. J at p. 9 (VA220

same); Exhibit K at p. 9 (VA250 same); Exhibit L at p. 9 (VA610 same); Exhibit N at p. 9 (VA340

same); Exhibit O at p. 9 (VA620 same); Exhibit Q at p. 9 (VA640 same)).   Instead of stating

"attached Company forms," the two variations recite "application," suggesting the application is

the "attached Company form." (Dkt. #72, Exhibit H at p. 6 (VA200 "Entire Contract. The policy

is a Contract. The Contract, Contract Data Page, application, if any, and any applicable

endorsements make up the entire Contract."); Exhibit M at p. 4 (VA600 "Entire Contract. The

Contract, application, if any, and any applicable riders, endorsements and amendments together

make up the entire Contract.")).

Furthermore, Jackson has previously argued and prevailed in arguing that a similar "Entire

Contract" provision in one of its contracts meant the contract was fully integrated and foreclosed

extrinsic evidence.  *See In re Jackson Nat. Life Ins. Co. Premium Litig*., 107 F. Supp. 2d 841, 849

(W.D. Mich. 2000).   In that case, the provision read

> **CONSIDERATION: ENTIRE CONTRACT**. The consideration for issuing this
> Policy is the application and the payment of the first premium. This Policy and the
> application, a copy of which is attached and made a part of this policy, constitute
> the entire contract between the parties. . . .

*Id*.  That provision in the Michigan case also further suggests that "attached Company forms" in

the contract in this case is the "application."  Lastly, the prospectus in this case states:

> This prospectus provides a description of the material rights and obligations under
> the Contract. **Your Contract and any endorsements are the formal contractual**
> **agreement between you and the Company.** It is important that you read the
> Contract and endorsement, which reflect state or other variations.

18-40605.1133

(Dkt. #72, Exhibit G, JACKSON_00011129) (emphasis added).  That is a clear indication that the prospectus was not intended to be a part of the contract.  *See Miller v. Nationwide Life Ins. Co.*, 448 F. App'x 423, 432 (5th Cir. 2011) ("[T]he prospectus does not form part of the contract[.]"); *Prusky v. Prudential Ins. Co. of Am.*, No. CIV.A. 00-2783, 2001 WL 34355665, at *6–*7 (E.D. Pa. Oct. 30, 2001) (confirming that a prospectus was not part of a contract based on language in a prospectus similar to the contract's Entire Contract provision).

The Contract also includes a modification provision, which states

> **MODIFICATION OF CONTRACT**. Any change or waiver of the provisions of this Contract must be in writing and signed by the President, a Vice President, the Secretary or Assistant Secretary of the Company. No financial representative or producer has authority to change or waive any provision of this Contract. The Company may amend or waive any portion of this Contract without notice or consent if state or federal law permits or so requires.

(Ex. P at p. 9 (VA630)).  Thus, a representative's or producer's statements or explanations to customers regarding the calculation of surrender charges cannot change the contract.

Therefore, the "Entire Contract" provision describes the documents that "make up the entire contract" and it is clear that the parties did not intend for the prospectus to become part of the contract.  Accordingly, the Court finds that the contracts are fully integrated and self-serving parol evidence cannot be used to vary or contradict the terms of the subject policies.[2]

---

[2] This conclusion also forecloses Jackson's argument that the prospectuses are incorporated by reference. Unsigned documents may be incorporated into and become part of a contract if the contract "plainly refers" to the unsigned document. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam); *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968). Incorporation by reference requires more than merely mentioning the document. *Bob Montgomery Chevrolet, Inc. v. Dent Zone Cos.*, 409 S.W.3d 181, 189 (Tex. App.—Dallas 2013, no pet.) (citation omitted). The language in the signed document must show the parties intended for the unsigned document to become part of the agreement. *Id.*; *see also One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) (citing 11 Williston on Contracts § 30:25 (4th ed. 1999) ("[I]n order to uphold the validity of terms incorporated by reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.")).

18-40605.1134

### B.  The Contract is Not Ambiguous as to the Calculation and Application of the Surrender Charge

"In Texas, whether the language of a contract is ambiguous is a question of law for the court." *Hennigan v. Chargers Football Co*., 431 F.2d 308, 314 (5th Cir. 1970) (citing *City of Pinehurst v. Spooner Addition Water Co*., 432 S.W.2d 515, 518 (Tex. 1968)).  Neither party asserts that the relevant contractual provisions are ambiguous (Dkt. #59 at ¶ 8; Dkt. #70 at ¶ 8).  However, "[a] court may conclude that a contract is ambiguous even in the absence of such a pleading by either party." *Sage St. Assocs. v. Northdale Const. Co*., 863 S.W.2d 438, 445 (Tex. 1993).

"An unambiguous contract must be interpreted by the court as a matter of law." *Id.* (citing *SAS Inst., Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex. 2005)).  If a contract "is worded so that a court can give it a certain or definite legal meaning or interpretation, it is not ambiguous." *Id.* When a contract is unambiguous, extrinsic evidence "will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports.'" *Skyland Developers, Inc. v. Sky Harbor Assocs.,* 586 S.W.2d 564, 568 (Tex. App— Corpus Christi 1979, no writ) (quoting *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)).  The Court must enforce the unambiguous language in a contract as written, and the applicable standard is the "objective intent" evidenced by the language used, rather than the subjective intent of the parties.  *See Sun Oil Co.,* 626 S.W.2d at 731–32.

Contract terms "are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).  The Court's primary concern is to enforce the parties' intent as expressed in the contract.  *Sundaram*, 2008 WL 80017 at *9.  When construing a contract, the intention of the parties is to be gathered from the instrument as a whole.  *See Seagull Energy*, 207 S.W.3d at 345; *SAS Inst.*, 167 S.W.3d at 841.  The "court is bound to read all parts of a contract

9

18-40605.1135

together to ascertain the agreement of the parties." *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex. 1994). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *SAS Inst., Inc.,* 167 S.W.3d at 841.

The Court may not consider extrinsic evidence to contradict or to vary the meaning of unambiguous language in a written contract in order to create an ambiguity. *Sears, Roebuck & Co. v. Commercial Union Ins. Corp.,* 982 S.W.2d 151, 154 (Tex. App.—Houston [1st Dist.] 1998, no pet.). The Court may consider the parties' interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to be ambiguous. *See Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 283 (Tex. 1996). An "ambiguity must become evident when the contract is read in context of the surrounding circumstances, not after parol evidence of intent is admitted to create an ambiguity." *CBI Indus.,* 907 S.W.2d at 521. One of the exceptions to the parol evidence rule is that if the written instrument itself shows to be either ambiguous or incomplete, parol testimony is admissible to show what the real contract was to the extent necessary to remove the ambiguity, and to make the contract complete in its terms which show to be incomplete. *Warren Bros. Co. v. AAA Pipe Cleaning Co.,* 601 S.W.2d 436, 438 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (quoting *Magnolia Warehouse & Storage Co. v. Davis & Blackwell,* 195 S.W. 184, 185 (1917)). In other words, "[w]here a writing is incomplete or ambiguous, parol evidence is admissible to explain the writing or to assist in the ascertainment of the true intentions of the parties insofar as the parol evidence does not alter or contradict any part of the written memorandum in question." *Warren Bros.,* 601 S.W.2d at 438–39.

If after application of the pertinent rules of construction, the contract is subject to two or more reasonable interpretations, the contract is ambiguous, and a fact issue exists regarding the

10

18-40605.1136

parties' intent.  *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).  A lack of clarity in the language chosen by the parties does not suffice to render an agreement ambiguous.  *Universal C.I.T. Credit Corp. v. Daniel,* 243 S.W.2d 154, 157 (1951). Rather, "[o]nly if the intention of the parties as expressed on the face of the document is doubtful may the court resort to parol evidence to resolve the doubt."  *Massey v. Massey,* 807 S.W.2d 391, 405 (Tex. App.—Houston [1st Dist.] 1991, writ denied).  An ambiguity does not arise simply because the parties advance conflicting interpretations of their agreement. *See Forbau,* 876 S.W.2d at 134.

For an ambiguity to exist, both interpretations must be reasonable.  *Columbia Gas*, 940 S.W.2d at 589.  It is for the Court to decide whether there is more than one reasonable interpretation of a contract, thereby creating a fact issue concerning the parties' intent.  *Id*.  "If the contract contains an ambiguity, summary judgment is improper 'because the interpretation of the instrument becomes a fact issue.'"  *Gilliland v. Cornell Companies, Inc.*, No. CIV.A.H-07-1655, 2008 WL 4858353, at *6 (S.D. Tex. Nov. 10, 2008) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

The relevant surcharge provision reads:

**At or before the Income Date, the Owner may withdraw all or part of the amounts under this Contract by informing the Company at the Service Center.** For full withdrawal, this Contract, or a completed Lost Contract Affidavit, must be returned to the Service Center.

**Premiums withdrawn from the Contract Value may be subject to Withdrawal Charges and Recapture Charges**. In addition to a Withdrawal Charge and Recapture Charge, a withdrawal from a Fixed Account Option may also incur an Excess Interest Adjustment.
. . . .

Unless otherwise specified, the withdrawal will be made from each Investment Division and each Fixed Account Option in proportion to their current value.

11

18-40605.1137

(Dkt. #72, Exhibit P at p. 16 (VA630)) (emphasis added).

**WITHDRAWAL CHARGE**. A Withdrawal Charge may be imposed upon certain withdrawals and in the event of payments under an income option commencing during the first Contract Year. **Withdrawal Charges will be calculated in accordance with the Withdrawal Charge schedule on the Contract Data Page. The Withdrawal Charge is equal to the Withdrawal Charge percentage applied to the portion of Remaining Premium withdrawn.** The Withdrawal Charge will be taken from the Investment Divisions and the Fixed Account Options in the same proportion as the requested withdrawal.

**The Withdrawal Charge will be deducted from the remaining Contract Value such that the actual reduction in Contract Value as a result of the withdrawal may be greater than the withdrawal amount requested and paid.**

For purposes of determining the Withdrawal Charge, earnings are defined as the excess of the Contract Value over the sum of Remaining Premiums. Withdrawals will be allocated first to earnings, if any (which may be withdrawn free of any Withdrawal Charge), and second to Remaining Premium on a first-in, first-out basis so that all withdrawals will be allocated to Remaining Premium to which the lowest (if any) Withdrawal Charges apply.

**ADDITIONAL FREE WITHDRAWAL.** During a Contract Year, You may make partial withdrawals from the Contract without the Withdrawal Charge and Excess Interest Adjustment being applied. This Additional Free Withdrawal is equal to:
1. 10% of Premium that remains subject to Withdrawal Charges and that has not been previously withdrawn (this can be utilized once or in segments throughout the Contract Year); less,
2. earnings, as defined in the Withdrawal Charge provision. Any amount to satisfy the minimum required distribution would reduce the amount available under Your Additional Free Withdrawal.
. . . .

Although Additional Free Withdrawals reduce Contract Value in either the Investment Division and/or the Fixed Account Option, they do not reduce Remaining Premium.

(Dkt. #72, Exhibit P at p. 17 (VA630)) (emphasis added).

The contract further defines "Remaining Premium" as

**REMAINING PREMIUM.** The total Premium reduced by withdrawals that **incur** Withdrawal Charges and withdrawals of Premiums that are no longer subject to Withdrawal Charges.

(Dkt. #72, Exhibit P at p. 6 (VA630)) (emphasis added).

12

18-40605.1138

The Court finds that the contract is unambiguous and, in contrast, sets forth a three-step process related to the calculation of surrender charges.

> **Step 1**
> **At or before the Income Date, the Owner may withdraw all or part of the amounts under this Contract by informing the Company at the Service Center.** For full withdrawal, this Contract, or a completed Lost Contract Affidavit, must be returned to the Service Center. **Premiums withdrawn from the Contract Value may be subject to a Withdrawal Charge.**
> . . . .
>
> **Unless otherwise specified, the withdrawal will be made from each Investment Division and each Fixed Account Option in proportion to their current value.**

(Dkt. #72, Exhibit P at p. 16 (VA630)) (emphasis added).  Summarizing Step 1, the Owner may withdraw amounts from the contract by informing the Company, "Premiums withdrawn from Contract Value may be subject to a Withdrawal Charge," and those "withdrawal[s] will be made from each Investment Division and each Fixed Account Option in proportion to their current value." (Dkt. #72, Exhibit P at p. 16 (VA630)).  The next page of the contract describes the Withdrawal Charge of Step 1 (*See* Dkt. #72, Exhibit P at p. 17 (VA630)).

> **Step 2**
> **WITHDRAWAL CHARGE**. . . . **The Withdrawal Charge is equal to the Withdrawal Charge percentage applied to the portion of Remaining Premium withdrawn.** The Withdrawal Charge will be taken from the Investment Divisions and the Fixed Account Options in the same proportion as the requested withdrawal.

(Dkt. #72, Exhibit P at p. 17 (VA630)) (emphasis added).  Summarizing Step 2, the Withdrawal Charge specified in Step 1 "is equal to the Withdrawal Charge percentage applied to the portion of Remaining Premium withdrawn."  Providing an implicit order and distinction to Step 1, Step 2 states that this "Withdrawal Charge will be taken from the Investment Divisions and the Fixed Account Options in the same proportion as the requested withdrawal" where in Step 1 "the

18-40605.1139

withdrawal w[as] made from each Investment Division and each Fixed Account Option in proportion to their current value." (*See* Dkt. #72, Exhibit P at pp. 16–17 (VA630)).

> **Step 3**
> **The Withdrawal Charge will be <u>deducted from the remaining Contract Value</u> such that the actual reduction in Contract Value as a result of the withdrawal may be greater than the withdrawal amount requested and paid**.

(Dkt. #72, Exhibit P at p. 17 (VA630)) (emphasis added).  Summarizing Step 3, the calculated Withdrawal Charge is deducted from "the remaining Contract Value" and it is made clear to the reader that the "actual reduction of Contract Value as a result of the withdrawal may be greater than the withdrawal amount requested and paid." (Dkt. #72, Exhibit P at p. 17 (VA630)).

Jackson asserts that the surrender charge is deducted from the Remaining Premium withdrawn (i.e. amount of premium withdrawn).  Jackson asserts that a customer can request a "gross" or "net" withdrawal when they fill out the withdrawal form.  A "gross" withdrawal is the total amount withdrawn from a customer's account and includes any withdrawal charges.  A "net" withdrawal is the check amount received after withdrawal charges are deducted from the gross amount withdrawn.  Thus, Jackson asserts it calculates surrender charges based on the gross Remaining Premium withdrawn (or amount of premium withdrawn), which includes the surrender charge, and supports this interpretation with examples illustrated in the prospectus.

However, the contract clearly states that the Withdrawal Charge will be deducted from the "remaining Contract Value" and not the requested withdrawal amount.  Furthermore, the terms "gross" and "net" withdrawal are absent from the contract language.  Lastly, the calculation Jackson uses to arrive at the specific surrender charge amount is also absent from the contract. Jackson has failed to prove as a matter of law that it properly calculates and applies the surrender

18-40605.1140

charges pursuant to the unambiguous language of the contracts.[3]  Thus, Jackson has failed to prove as a matter of law that it is not in breach of the contracts and summary judgment is therefore denied.

## II.   Securities Litigation Uniform Standards Act

Lastly, Jackson argues that Plaintiffs' breach of contract claim is barred by the Securities Litigation Uniform Standards Act ("SLUSA").  The SLUSA states that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging . . . an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security . . . ." 15 U.S.C. § 77p(b)(1).  The SLUSA prevents a securities class action from proceeding on the basis of state law if the complaint "*alleg[es]* . . . an untrue statement or omission." 15 U.S.C. § 77p(b)(1) (emphasis added).  "The issue of preemption thus hinges on the content of the allegations—not on the label affixed to the cause of action." *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004); *see, e.g.*, *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310–11 (6th Cir. 2009) ("Courts . . . must look to . . . the substance of a complaint's allegations in applying SLUSA. . . . It is whether the complaint covers the prohibited theories, no matter what words are used (or disclaimed) in explaining them."); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005) ("[P]reemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are alleged in

---

[3] Jackson's formula to calculate the surrender charge is as follows:

Surrender Charge % x (Amount of premium withdrawn / (1 – Surrender Charge %)).

(Dkt. #59 at 15–17).  There is no mention of that calculation in the contract.

18-40605.1141

one form or another.  A contrary approach, under which only essential legal elements of a state law claim trigger preemption, is inconsistent with the plain meaning of the statute.").

For example, in *Miller*, the plaintiff purchased annuities from the defendant with the understanding there would be no fees charged.  391 F.3d at 701–02.  The plaintiff filed suit claiming violations under the Securities Act of 1933 after realizing he had been charged short-term trading fees contrary to his contract.  *Id.*  The Fifth Circuit found the claims alleging federal securities law violations to be barred by the statute of limitations, and further dismissed the state law breach of contract claim pursuant to SLUSA.  *Id.*  The court concluded that, although the plaintiff "styled it [as] a claim for 'breach of contract[,]'" the plaintiff had alleged both untrue statements and omissions of material fact in his state law breach of contract claim.  *Id.* at 702.

Jackson asserts that "Plaintiffs' Complaint is replete with allegations that Jackson made untrue statements or omitted material facts in connection with the sale of annuities." (Dkt. #59 at p. 27).  However, Jackson's citations to the Amended Complaint take issue with Plaintiffs' negligent misrepresentation claim, which the Court previously dismissed (Dkt. #31).

Furthermore, the Ninth Circuit addressed this very question: "Does SLUSA displace class actions alleging breach of a variable universal life insurance contract?"  *Freeman Investments, L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1113 (9th Cir. 2013).  *Freeman* involved a dispute over the meaning of a specific contractual term.  *Id.* at 1115.  The plaintiffs in *Freeman* contended that a particular term should have been interpreted according to certain industry standards, while defendant argued that the term should have been interpreted based on other language in the insurance policy. *Id.* Thus, in order to "succeed on th[eir] claim, plaintiffs need not show that [defendant] misrepresented the cost of insurance or omitted critical details.  They need only persuade the court that theirs is the better reading of [a] contract term."  *Id.*

16

Similar to *Freeman*, Plaintiffs' breach of contract claim's essence is the proper interpretation of Jackson's contracts and the way Jackson calculates its surrender charges. Specifically, Plaintiffs claim that

> Jackson is assessing excess charges as a matter of uniform application of its methodology and breaching the terms of its contract as to all contract holders who incur such charges.
> . . .
>
> Common questions of law and fact predominate over any individual questions affecting Class members, including, but not limited to, the specific and uniform way in which Defendant has imposed Surrender Charges.
> . . .
>
> Jackson's assessment of surrender charges was done consistently and uniformly in a manner contrary to the terms and conditions of the applicable contracts.

(Dkt. #90 at ¶¶ 30, 71, 82).

"[W]hile a contract dispute commonly involves a 'disputed truth' about the proper interpretation of the terms of a contract, that does not mean one party omitted a material fact by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract." *Freeman*, 704 F.3d at 1115–16 (quoting *Webster v. N.Y. Life Ins. & Annuity Corp.,* 386 F. Supp. 2d 438, 441 (S.D.N.Y.2005)).  As such, the Court finds Plaintiffs' breach of contract claim is not barred by the SLUSA.

## CONCLUSION

It is therefore **ORDERED** that Defendant Jackson National Life Insurance Company's Motion for Summary Judgment (Dkt. #59) is hereby **DENIED** with regard to Plaintiffs' breach of contract claim and **GRANTED** with regard to Plaintiffs' breach of fiduciary duty claim.

18-40605.1143

**SIGNED this 8th day of August, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

18-40605.1144

# TAB 6

1 Corporate Way
Lansing, Michigan 48951
www.jackson.com



Thank you for choosing Jackson National Life Insurance Company, hereinafter also referred to as "the Company" or "Jackson." If You have any questions, please contact the Company at the Service Center address and telephone number shown on the Contract Data Page.

**THIS ANNUITY CONTRACT IS ISSUED BY THE COMPANY AND IS A LEGAL AGREEMENT BETWEEN THE OWNER ("YOU") AND JACKSON NATIONAL LIFE INSURANCE COMPANY. READ YOUR CONTRACT CAREFULLY.**

**AMOUNTS ALLOCATED TO THE SEPARATE ACCOUNT INVESTMENT DIVISIONS ARE NOT GUARANTEED AND MAY INCREASE OR DECREASE BASED UPON THE INVESTMENT EXPERIENCE OF THE UNDERLYING MUTUAL FUNDS.**

**THE FIXED ACCOUNT OPTIONS ARE SUBJECT TO AN EXCESS INTEREST ADJUSTMENT WHICH MAY INCREASE OR DECREASE AMOUNTS PAYABLE, TRANSFERRED OR WITHDRAWN, BUT THE FIXED ACCOUNT CONTRACT VALUE WILL NEVER DECREASE TO LESS THAN THE SUM OF THE FIXED ACCOUNT MINIMUM VALUES.**

**THE SEPARATE ACCOUNT WITHIN THIS CONTRACT IS NOT COVERED BY AN INSURANCE GUARANTY FUND OR OTHER SOLVENCY PROTECTION ARRANGEMENT BECAUSE THIS CONTRACT IS A CONTRACT UNDER WHICH THE RISK IS BORNE BY THE CONTRACT OWNER.**

**THE FIXED ACCOUNT MINIMUM VALUE, DEATH BENEFIT OR ANY PAID-UP ANNUITY VALUE WILL NEVER BE LESS THAN THAT REQUIRED BY THE STATE  WHERE THIS CONTRACT WAS ISSUED.**

**THERE ARE CERTAIN LIMITATIONS CONTAINED IN THIS CONTRACT. THEY INCLUDE TRANSFERS (Pages 3d, 11 and 12), PREMIUMS (Page 3e), FIXED ACCOUNT OPTIONS (Pages 3e, 13 and 14) AND SUBSTITUTION OF INVESTMENT DIVISION(S) (Page 10). SHOULD THE COMPANY IMPOSE ANY LIMITATIONS CONTAINED IN THIS CONTRACT, WE WILL GIVE 31 DAYS ADVANCE NOTICE OF SUCH LIMITATION(S) TO THE POLICYHOLDER.**

---

**NOTICE OF RIGHT TO EXAMINE CONTRACT**

YOU MAY RETURN THIS CONTRACT TO THE SELLING PRODUCER OR THE COMPANY WITHIN 20 DAYS (30 DAYS IF IT WAS PURCHASED AS A REPLACEMENT CONTRACT) AFTER YOU RECEIVE IT. THE COMPANY WILL REFUND THE CONTRACT VALUE LESS ANY CONTRACT ENHANCEMENT, WITHOUT DEDUCTION FOR ANY SALES CHARGES, FOR THE BUSINESS DAY ON WHICH THE CONTRACT IS RECEIVED AT ITS SERVICE CENTER. UPON SUCH REFUND, THE CONTRACT SHALL BE VOID.

---

INDIVIDUAL DEFERRED VARIABLE AND FIXED ANNUITY CONTRACT (FLEXIBLE PREMIUM). DEATH BENEFIT AVAILABLE. INCOME OPTIONS AVAILABLE. NONPARTICIPATING.

This Contract is signed by the Company

**President and Chief Executive Officer**

**Secretary**

VA640TX 01/12

18-40605.271



## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Jackson's toll-free telephone number for information or to make a complaint at:

**1-800/644-4JNL  (1-800/644-4565)**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the
Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim, you should contact the Company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Para informacion o para someter una queja, usted puede llamar al numero de telefono gratis de Jackson.

**1-800/644-4JNL  (1-800/644-4565)**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al
Texas Department of Insurance
P.O. Box 149104
Austin, TX 78714-9104
FAX # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTA SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse primero con la Compania.  Si no se resuelve la disputa, puede entonces comunicarse con el Departamento de Seguros de Texas.

**ADJUNTE ESTE AVISO A SU POLIZA:** Este aviso es solo para su informacion y no se convierte en parte o condicion del documento adjunto.

Z3000TX 01/09

18-40605.272

# TABLE OF CONTENTS

| Provision | Page Number |
|---|:---:|
| CONTRACT DATA PAGE | 3a |
| DEFINITIONS | 4 |
| GENERAL PROVISIONS | 8 |
| ACCUMULATION PROVISIONS | 13 |
| WITHDRAWAL PROVISIONS | 16 |
| DEATH BENEFIT PROVISIONS | 22 |
| INCOME PROVISIONS | 25 |
| TERMINATION PROVISION | 28 |
| TABLE OF INCOME OPTIONS | 29 |

**Premium Tax Notice:** There is currently no premium tax on annuities in Texas. In the event that any such tax becomes applicable to this Contract, the Company will notify the Owner. The Company will undertake to advise the Owner of the amount of such tax and its effect upon any payment to be made.

18-40605.273

## CONTRACT DATA PAGE (CONT'D)

| | |
|---|---|
| **Mortality and Expense Charge:** | On an annual basis, this charge equals  1.6500% of the daily net asset value of the Investment Divisions. |
| **Administration Charge:** | On an annual basis, this charge equals 0.150% of the daily net asset value of the Investment Divisions. |
| **Total Asset Based Charges:** | **On an annual basis, the total of all asset based charges is equal to 1.8000% of the daily net asset value of the Investment Divisions.** |
| | Asset based charges are based on the value of the Separate Account and are deducted daily as part of the Accumulation Unit Value calculation. Total asset based charges include the Mortality and Expense Charge, the Administration Charge and asset based charges for optional benefits. |

**Optional Benefits Elected at Issue:**

| **BENEFIT** | **CHARGE** |
|---|---|
| Guaranteed Minimum Withdrawal Benefit (GMWB) Charge: | The GMWB Charge is comprised of two components: a GMWB withdrawal benefit charge and a GMWB death benefit charge. |
| | On a quarterly basis, the GMWB withdrawal benefit charge equals  0.2375% of the Guaranteed Withdrawal Balance (GWB).   Upon step-up on or after the 2nd Contract Anniversary following the effective date of this endorsement, the Company reserves the right to increase the GMWB withdrawal benefit charge percentage, subject to a maximum GMWB withdrawal benefit charge percentage, on a quarterly basis, of 0.4750%. |
| | On a quarterly basis, the GMWB death benefit charge equals  0.1750% of the GMWB death benefit. |
| | The GMWB Charge is deducted from the Contract Value (i) at the end of each Contract Quarter; and (ii) upon termination of the GMWB, and will be discontinued upon the earlier of the termination of this benefit or the date on which the Contract Value equals zero. |

18-40605.275

## CONTRACT DATA PAGE (CONT 'D)

| | |
|---|---|
| **Annual Contract Maintenance Charge:** | An annual charge of no more than $35.00 will be deducted by the Company from those Contracts where the Contract Value is less than $50,000 at the time such charge is assessed. |

**Withdrawal Charge Schedule:**

| Completed Years Since Receipt of Premium | Withdrawal Charge Percentage |
|:---:|:---:|
| 0 | 7.50% |
| 1 | 7.00% |
| 2 | 6.00% |
| 3 | 5.50% |
| 4 | 4.75% |
| 5 | 3.75% |
| 6 | 3.00% |
| 7 | 2.00% |
| 8 | 1.00% |
| 9+ | 0.00% |

**Recapture Charge Schedule:**

| Completed Years Since Receipt of Premium | Recapture Charge Percentage |
|:---:|:---:|
| 0 | 6.00% |
| 1 | 5.50% |
| 2 | 4.50% |
| 3 | 4.00% |
| 4 | 3.50% |
| 5 | 3.00% |
| 6 | 2.00% |
| 7 | 1.00% |
| 8 | 0.50% |
| 9+ | 0.00% |

**Total Combined Withdrawal Charge and Recapture Charge Schedule:**

| Completed Years Since Receipt of Premium | Total Combined Percentage |
|:---:|:---:|
| 0 | 13.50% |
| 1 | 12.50% |
| 2 | 10.50% |
| 3 | 9.50% |
| 4 | 8.25% |
| 5 | 6.75% |
| 6 | 5.00% |
| 7 | 3.00% |
| 8 | 1.50% |
| 9+ | 0.00% |

| | |
|---|---|
| **Excess Interest Adjustment:** | Certain payments, transfers and withdrawals from a Fixed Account Option are subject to an Excess Interest Adjustment, the calculation of which may result in an increase or decrease in amounts payable. In no event will a total withdrawal from a Fixed Account Option be less than the Fixed Account Minimum Value. (See Fixed Account Option section of the Contract for details.) |

18-40605.276

## CONTRACT DATA PAGE (CONT 'D)

**Transfer/Transfer Charge:**  A fee of $25.00 is charged for each transfer in excess of 15 in any Contract Year. Any Transfer Charge is deducted from the amount transferred prior to the allocation to the new Contract Option. Transfer Charges will not be applied to transfers due to dollar cost averaging or other systematic investment programs provided by the Company, nor will these transfers count against the 15 free transfers allowed in a Contract Year.

Asset allocation service providers must comply with the Company's administrative systems, rules, and procedures.

A transfer will be effective as of the end of the Business Day when the Company receives a transfer request prior to market close in Good Order, otherwise the transfer will be effective as of the end of the next Business Day.

The Company will not be liable for a transfer made in accordance with the Owner's instructions.

**FROM INVESTMENT DIVISION TO INVESTMENT DIVISION.** Prior to and after the Income Date, You may transfer all or a portion of Your Contract Value in one Investment Division to any available Investment Division(s).

**FROM INVESTMENT DIVISION TO A FIXED ACCOUNT OPTION.** If allowed by the Company, in its sole discretion, prior to the Income Date, You may transfer all or a portion of Your Contract Value in an Investment Division to a Fixed Account Option. The Company, in its sole discretion, may restrict or prohibit this type of transfer at any time on a nondiscriminatory basis.

**FROM A FIXED ACCOUNT OPTION TO AN INVESTMENT DIVISION OR TO A FIXED ACCOUNT OPTION.** If allowed by the Company, in its sole discretion, prior to the Income Date, You may transfer all or a portion of Your Contract Value in a Fixed Account Option to any available Investment Division(s) or to a Fixed Account Option(s), subject to any applicable Excess Interest Adjustment. The Company may restrict, limit or prohibit transfers, in its sole discretion, to or from a Fixed Account Option(s) from time to time on a nondiscriminatory basis.

18-40605.277

## CONTRACT DATA PAGE (CONT'D)

**Premium(s):**     Premiums are flexible with the exception that Premiums will not be accepted on or after the first Contract Anniversary following the Owner's 85th birthday. This means that the Owner may change the amounts, frequency or timing of Premiums. The initial Premium must be at least $5,000 for Nonqualified Plan Contracts and $2,000 for Qualified Plan Contracts. Subsequent Premiums must be at least $500 ($50 if made in connection with an automatic payment plan). Total Premiums under a Contract may not exceed $1,000,000. However, the Company may waive the minimums or maximums at any time. The Company reserves the right to refuse any Premium payment.

The Owner may allocate Premiums among the Fixed Account Option(s) and Investment Divisions, subject to the approval of the Company, which will be granted in advance on a nondiscriminatory basis. Allocations may be made in any percent from 0% to 100% in whole percentages. The minimum that may be allocated to a Fixed Account Option or an Investment Division is $100. The Company reserves the right to restrict or refuse any Premium allocation to a Fixed Account Option(s) at any time on a nondiscriminatory basis. We will provide 31 days prior notice to the Owner of any restriction. Any subsequent Premium will be allocated according to Your most recent instructions on file with the Company, provided that each allocation meets the minimums and restrictions described above, regardless of such instructions.

The Company reserves the right to require, in advance, the automatic transfer of amounts allocated to the 1-Year Fixed Account Option to the Investment Division(s) of Your choice in regular installments over a specified period from the date of allocation on a nondiscriminatory basis. A pre-determined amount will be transferred from the 1-Year Fixed Account Option to the Owner selected Investment Division(s) such that at the end of the specified period all amounts in the 1-Year Fixed Account Option will have been transferred. The Company reserves the right to specify in advance the transfer amount, the length of the period, and the transfer frequency over which the transfers will be completed. The funds being transferred will be allocated to the Investment Division(s) elected by You. You may change Your selected Investment Division(s) at any time. These automatic transfers will not count against the 15 free transfers in a Contract Year.

18-40605.278

## CONTRACT DATA PAGE (CONT'D)

**CONTRACT OPTIONS:**

**Investment Division(s):**   Availability is indicated in the current prospectus and any supplements.

**Separate Account:**   Jackson National Separate Account I

**Fixed Account Options:**   1-Year Period; 3-Year Period; 5-Year Period; and 7-Year Period, the availability of which to be determined by the Company.

Availability is indicated in the current prospectus and any supplements or related Fixed Account documents.

The Contract Options You have selected will be detailed in a confirmation sent to You by the Company on or after the Issue Date.

If You have questions about this Contract including requests for information about coverage or complaint resolutions, You may contact our Service Center at the following address or telephone number.

|  |  |
|---|---|
| Jackson Service Center | Express Mail: |
| P.O. Box 24068 | Jackson Service Center |
| Lansing, MI 48909-4068 | 1 Corporate Way |
| 1-800-644-4565 | Lansing, MI 48951 |

18-40605.279

# DEFINITIONS

**ACCUMULATION UNIT.** A unit of measure used to calculate the value in an Investment Division prior to the Income Date.

**ADJUSTED PREMIUM.** The Adjusted Premium is determined at the time each Premium payment is processed and is equal to the sum of all Premium payments (including the current Premium payment) less the sum of all partial withdrawals (including any Withdrawal Charges, Recapture Charges, and Excess Interest Adjustments on such withdrawals).

**ANNUITANT.** The natural person on whose life annuity payments for this Contract are based. Any reference to the Annuitant includes any Joint Annuitant.

**ANNUITY UNIT.** A unit of measure used to calculate the amount of a variable annuity payment.

**BASE INTEREST RATE.** The rate of interest declared by the Company, at its sole discretion, for a specified Fixed Account Option period.

**BENEFICIARY(IES).** The natural person(s) or entity(ies) entitled to receive any Contract benefits upon the death of the Owner or Annuitant as applicable in the circumstances.

**BUSINESS DAY.** Each day that the New York Stock Exchange is open for business. All requests for transactions that are received at the Company's Service Center in Good Order on any Business Day prior to market close, generally 4 P.M. Eastern Time, will be processed effective the end of that Business Day.

**CONTINGENT ANNUITANT.** The natural person that is designated as a subject life for purposes of electing an optional endorsement on a Qualified Plan custodial account contract only. Any reference to the Annuitant does not include any Contingent Annuitant.

**CONTRACT.** The Individual Deferred Variable and Fixed Annuity Contract between You and the Company.

**CONTRACT ANNIVERSARY.** Each one year anniversary of the Issue Date.

**CONTRACT ENHANCEMENT.** The amount credited to the Separate Account Contract Value and/or the Fixed Account Contract Value for each Premium received in accordance with the Contract Enhancement Provision.

**CONTRACT OPTION.** One of the allocation options offered by the Company under this Contract. Each Contract Option is more fully explained in the Accumulation Provisions.

**CONTRACT VALUE.** The Contract Value equals the sum of the Separate Account Contract Value and the Fixed Account Contract Value.

**CONTRACT YEAR.** The twelve-month period beginning on the Issue Date or any Contract Anniversary.

18-40605.280

## DEFINITIONS (CONT'D)

**CURRENT INTEREST RATE.** The Base Interest Rate plus any additional interest rate credited by the Company, less any charges due under any optional endorsements to the Contract. In no event will the Current Interest Rate be less than the Fixed Account Minimum Interest Rate.

**DESIGNATED OPTION(S).** The Investment Division(s) and/or Fixed Account Option(s) made available by the Company and selected by the Owner to which amounts will be transferred from a Source Option pursuant to one of the Company's systematic investment programs.

**EXCESS INTEREST ADJUSTMENT.** An adjustment applied, with certain exceptions, to amounts withdrawn, transferred or annuitized from a Fixed Account Option prior to the end of the applicable Fixed Account Option period.

**FIXED ACCOUNT.** Contract Values allocated to the Fixed Account Options. Allocations made to Fixed Account Options are part of the general obligations of the Company. The general obligations are made up of all general assets of the Company, other than those in the Separate Account and other segregated asset accounts.

**FIXED ACCOUNT CONTRACT VALUE.** The sum of all amounts allocated or transferred to the Fixed Account Options under the Contract, reduced by any applicable taxes, plus all interest credited to the Fixed Account Options, adjusted for withdrawals (including any applicable charges and adjustments for such withdrawals), transfers and charges.

**FIXED ACCOUNT MINIMUM INTEREST RATE.** The interest rate used to determine the Fixed Account Minimum Value. The Fixed Account Minimum Interest Rate may vary by Redetermination Period as described in the Accumulation Provisions. The Initial Fixed Account Minimum Interest Rate is shown on the Contract Data Page.

**FIXED ACCOUNT MINIMUM VALUE.** Premiums, net of any applicable premium tax, Contract Enhancements, and transfers allocated to the Fixed Account Option, less transfers, withdrawals, and charges from the Fixed Account Option, accumulated at the Fixed Account Minimum Interest Rate, less any Withdrawal Charge, Recapture Charge or tax due.

**FIXED ACCOUNT OPTION.** A Contract Option within the Fixed Account for a specific period under which the Current Interest Rate will be credited.

**GOOD ORDER.** The receipt by the Company of any and all information, documentation, instructions and/or Premium deemed necessary by the Company, in its sole discretion, to issue the Contract or execute any transaction pursuant to the terms of the Contract.

**HOSPITAL.** A facility located within the United States or its territories which is operated pursuant to law; operates primarily for the care and treatment of sick and injured persons as inpatients; provides continuous 24-hour nursing service by or under the supervision of a registered professional nurse (R.N.); is supervised by a staff of licensed physicians; and, has medical, diagnostic and major surgical facilities on a prearranged basis.

**IMMEDIATE FAMILY.** A spouse, child, brother, sister, parent or grandparent.

18-40605.281

## DEFINITIONS (CONT'D)

**INCOME DATE.** The date on which annuity payments are to begin under an income option.

**INVESTMENT DIVISIONS.** Separate and distinct divisions of the Separate Account to which specific Underlying Mutual Fund shares are allocated, and for which Accumulation Units and Annuity Units are separately maintained. The Contract Value in the Investment Divisions will go up or down depending on the performance of the Underlying Mutual Funds.

**ISSUE DATE.** The date the Contract was issued by the Company, as shown on the Contract Data Page.

**JOINT OWNER.** If there is more than one Owner, each Owner shall be a Joint Owner of the Contract. Joint Owners have equal ownership rights and must each authorize any exercising of those ownership rights under the Contract.

**LATEST INCOME DATE.** The Contract Anniversary on or next following the Owner's 95th birthday under a Non-Qualified Plan Contract, or such earlier date required by the applicable qualified plan, law or regulation.

**NONQUALIFIED PLAN.** A retirement plan which does not qualify for favorable tax treatment under Section 401, 403, 408, 408A or 457 of the Internal Revenue Code, as amended.

**NURSING HOME.** A facility located in the United States or its territories; operates pursuant to law in the jurisdiction in which it is located; provides custodial care under the supervision of a registered nurse (R.N.) or a Physician; and, *does not* include any place owned or operated by a member of the Beneficiary's, Annuitant's or Joint Annuitant's, Owner's or Joint Owner's Immediate Family.

**OWNER ("YOU," "YOUR").** The natural person(s) or entity(ies) so designated on the Contract Data Page, or by subsequent designation. Usually, but not always, the Owner is also the Annuitant. If Joint Owners are designated, all references to Owner shall mean Joint Owners. The ownership of this Contract may be changed by submitting a written request signed by all Owners to the Service Center. Any change will take effect when recorded by the Company. The Company is not liable for any payment made or action taken before the Company records such change.

**PHYSICIAN.** An individual who is licensed to practice medicine and treat illness or injury in the United States or its territories where treatment is received and who is acting within the scope of his or her license. The term Physician only refers to a Physician licensed and currently practicing in the United States or its territories. Physician does not include:
1. an Annuitant or Joint Annuitant;
2. an Owner or Joint Owner;
3. Beneficiary(ies); or
4. a person who is part of the Beneficiary's, Annuitant's or Joint Annuitant's, Owner's or Joint Owner's Immediate Family.

**PREMIUM(S).** Considerations paid into this Contract by or on behalf of the Owner.

**QUALIFIED PLAN.** A retirement plan which qualifies for favorable tax treatment under Sections 401, 403, 408, 408A or 457 of the Internal Revenue Code, as amended.

18-40605.282

## DEFINITIONS (CONT'D)

**REDETERMINATION DATE.** The one-month anniversary of the Issue Date falling in January each calendar year.

**REDETERMINATION PERIOD.** The twelve-month period beginning on each Redetermination Date.

**RECAPTURE CHARGE.** The charge assessed against certain withdrawals from the Contract Value and in the event of payments under an income option, which reflects that portion of the Contract Enhancement(s) still subject to recapture.

**REMAINING PREMIUM.** The total Premium reduced by withdrawals that incur Withdrawal Charges and Recapture Charges, and withdrawals of Premiums that are no longer subject to Withdrawal Charges and Recapture Charges.

**SEPARATE ACCOUNT.** A segregated asset account established and maintained by the Company in accordance with Michigan law in which a portion of the Company's assets have been allocated for this and certain other contracts.

**SEPARATE ACCOUNT CONTRACT VALUE.** The current value of the amounts allocated to the Investment Divisions of this Contract.

**SERVICE CENTER.** The Company's address and telephone number as specified on the Contract Data Page or as may be designated by the Company from time to time.

**SOURCE OPTION (THE SOURCE).** The Investment Division or Fixed Account Option made available by the Company and selected by the Owner from which amounts will be transferred to a Designated Option(s) pursuant to one of the Company's systematic investment programs.

**TERMINAL ILLNESS.** A noncorrectable medical condition, which will result in the death of the Owner within (12) twelve months or less from the date of the Physician's statement.

**UNDERLYING MUTUAL FUNDS.** The registered management investment companies in which assets of the Investment Divisions of the Separate Account will be invested.

**WITHDRAWAL CHARGE.** The charge assessed against certain withdrawals from the Contract Value and in the event of payments under an income option commencing during the first Contract Year.

**WITHDRAWAL VALUE.** The Contract Value, less any tax payable, minus any applicable Withdrawal Charges, Recapture Charges, Annual Contract Maintenance Charges, and charges due under any optional endorsement to the Contract, adjusted for any applicable Excess Interest Adjustment.

18-40605.283

# GENERAL PROVISIONS

**ANNUITANT.** The Owner may change the Annuitant at any time prior to the Income Date, unless the Owner is not a natural person. If the Owner is not a natural person, the age of the Annuitant will be used in lieu of the Owner's age for all purposes under this Contract, unless otherwise specified in the Contract. Also, if the Owner is not a natural person the following benefits will apply to the Annuitant: Waiver of Withdrawal Charge and Recapture Charge due to Terminal Illness, the Waiver of Withdrawal Charge and Recapture Charge for Specified Conditions and the Waiver of Withdrawal Charge and Recapture Charge for Extended Care.

**ASSIGNMENT.** The Owner may assign this Contract before the Income Date, but the Company will not be bound by an assignment unless it is in writing and has been accepted and recorded at the Company's Service Center. The Company reserves the right to refuse assignments or transfers at any time on a nondiscriminatory basis. An assignment will take effect when recorded by the Company. The Company is not responsible for any payment made before an assignment is recorded. The Owner may exercise these rights subject to the interest of any assignee or irrevocable beneficiary. **THE COMPANY ASSUMES NO RESPONSIBILITY FOR THE VALIDITY OR TAX CONSEQUENCES OF ANY ASSIGNMENT. IF YOU MAKE AN ASSIGNMENT, YOU MAY HAVE TO PAY INCOME TAX. YOU ARE ENCOURAGED TO SEEK LEGAL AND/OR TAX ADVICE.**

**BENEFICIARY.** The individual(s) or entity(ies) designated by the Owner to receive any amount payable under this Contract upon the Owner's death or upon the death of the Annuitant on or after the Income Date pursuant to the terms of this Contract. (See Income Provision section for details.) The original Beneficiary(ies) will be shown on the Contract Data Page. If two or more Beneficiaries are named, those Beneficiaries surviving the applicable death shall share any benefit that would have been due a Beneficiary that predeceased the applicable death in proportion equal to the proportion identified in the Beneficiary designation unless otherwise stated on the Beneficiary designation. If no Beneficiaries survive the applicable death, the death benefit shall be paid to the Owner's estate if the Owner is a natural person, otherwise to the Owner.

Upon the death of a Joint Owner, the surviving Joint Owner shall be treated as the primary Beneficiary and all other Beneficiaries shall become contingent Beneficiaries.

The Owner may request a change of any Beneficiary designation by submitting a written request to the Company's Service Center. No Beneficiary change will take effect unless received by the Company before the applicable death and unless and until recorded by the Company.

**CHARGES AND FEES.** The Company may assess charges or fees under the Contract. Please see the Contract Data Page for more information as to charges or fees.

The Annual Contract Maintenance Charge specified on the Contract Data Page will be deducted on each Contract Anniversary that occurs on or prior to the Income Date. It will also be deducted when the Contract Value is withdrawn in full if the full withdrawal is not on a Contract Anniversary. The amount of Annual Contract Maintenance Charge may be reduced when sales of the Contract are made to a trustee, employer, or similar entity pursuant to an employee-sponsored retirement plan or when sales are made in a similar arrangement where offering the Contract to a group of individuals or certain individual(s) results in savings of administration expenses. The entitlement of such reduction in Annual Contract Maintenance Charge will be determined by the Company.

18-40605.284

## GENERAL PROVISIONS (CONT'D)

**CONFORMITY WITH LAWS.** This Contract will be interpreted under the law of the state in which it is issued and any applicable federal laws. Any provision that is in conflict with the law of such state or any federal law is amended to conform to the minimum requirements of such law.

**CONTESTABILITY.** The Company will not contest this Contract from its Issue Date, as shown on the Contract Data Page.

**CONTRACT ENHANCEMENT.** The Contract Enhancement percentage is equal to 6% if the Adjusted Premium is less than $100,000 at the time the Premium is received or 8% if the Adjusted Premium is equal to or greater than $100,000 at the time the Premium is received.

At the time each Premium payment is received, the Company will credit an amount equal to the Contract Enhancement Percentage, multiplied by the Premium. The Contract Enhancement will be allocated to the Investment Divisions and/or Fixed Account Options in the same proportion as the Premium.

At the time that a Premium is received during the first Contract Year that causes the Adjusted Premium to equal or exceed $100,000 when it was less than $100,000 before the receipt of the Premium, the Company will credit an additional Contract Enhancement equal to 2% of any previous Premium for which a 6% Contract Enhancement was credited and for which no additional 2% Contract Enhancement has already been credited. The additional 2% Contract Enhancement will be allocated to the Investment Divisions and/or Fixed Account Options in the same proportion as the currently received Premium.

Your Contract Value will reflect any gains or losses attributable to a Contract Enhancement. A Contract Enhancement, and any gains or losses attributable to a Contract Enhancement distributed under Your Contract will be considered earnings under the Contract for tax purposes.

**DEFERMENT OF PAYMENTS.** The Company may defer payment from a Fixed Account Option for a period not exceeding six (6) months. Deferral for the six (6) month period will be made only if We make a written request and receive written approval from the regulatory official of the Issue State. Subject to state requirements, interest will be credited during such deferred period.

**ENTIRE CONTRACT.** The Contract, and any attached Company forms, endorsements and amendments together make up the entire Contract.

**INCORRECT AGE OR SEX.** If the age or sex of the Owner or Annuitant is incorrect, the payments will be those that the Premiums paid would have purchased at the correct age and sex. Any underpayments will be adjusted immediately by the Company. Overpayments will be deducted from future payments.

**MODIFICATION OF CONTRACT.** Any change or waiver of the provisions of this Contract must be in writing and signed by the President, a Vice President, the Secretary or Assistant Secretary of the Company. No financial representative or producer has authority to change or waive any provision of this Contract. The Company may amend or waive any portion of this Contract without notice or consent if state or federal law permits or so requires.

**NONPARTICIPATING.** This Contract does not share in the Company's surplus or earnings.

18-40605.285

## GENERAL PROVISIONS (CONT'D)

**NOTICE.** Information or instructions given to the Company by You must be in a form satisfactory to the Company, referred to as Good Order. Such notice takes effect when the Company accepts it and it is recorded at the Service Center.

Any notice the Company sends to the Owner will be sent to the Owner's last known address unless the Owner requests otherwise in writing. Any request or notice must be sent to the Service Center, unless the Company advises You otherwise. You are responsible for promptly notifying the Company of any address change.

**PROOF OF AGE, SEX OR SURVIVAL.** The Company may require satisfactory proof of correct age or sex at any time. If any payment under this Contract depends on the Annuitant, Owner or Beneficiary being alive, the Company may require satisfactory proof of survival.

**PROTECTION OF PROCEEDS.** Proceeds under this Contract are not assignable by any Beneficiary prior to the time such proceeds become payable. To the extent permitted by applicable law, proceeds are not subject to the claims of creditors or to legal process.

**REPORTS.** The Company will send You a report at least once a year as of a date not more than four months prior to the date of mailing. This report will show You information based on each Contract Option You have chosen under the Contract. The Company will also send You reports as required by law. They shall be addressed to the last address of the Owner known to the Company.

**SUBSTITUTION OF INVESTMENT DIVISION(S).** The Company may substitute any Underlying Mutual Fund(s) with another Underlying Mutual Fund without Your consent. Substitution would occur if the Company determines that the use of certain Underlying Mutual Fund(s) is no longer possible or if the Company determines it is no longer appropriate for the purposes of the Contract. No substitution will be made without notice to You. Changes of Underlying Mutual Fund(s) are subject to the federal securities laws and, if required, the laws of the state where the Contract was issued for delivery. Should a substitution, addition, or deletion occur, You will be allowed to select from the then current Investment Divisions and substitution may be made with respect to both existing Contract Value in that Investment Division(s) and the allocation of future Premiums.

**SUSPENSION OF PAYMENTS.** The Company may suspend or postpone any transfers or payments to or from the Investment Divisions if any of the following occur:
1. The New York Stock Exchange is closed (except for normal holiday closing); or
2. An emergency exists as determined by the Securities and Exchange Commission such that it is not reasonably practical to dispose of securities in the Separate Account or to determine the value of its assets.

The applicable rules and regulations of the Securities and Exchange Commission will govern whether the condition described in 2. exist.

18-40605.286

## GENERAL PROVISIONS (CONT'D)

**TAXES.** The Company may deduct from the Contract Value any premium taxes or other taxes payable to a state or other government entity because of this Contract. Should the Company advance any amount so due, the Company is not waiving any right to collect such amount at a later date. The Company will deduct any withholding taxes required by applicable law as a result of any withdrawals or amounts payable from this Contract.

**TRANSFER.** The conditions for transfer between Contract Options are explained in the Contract Data Page. The Company reserves the right to restrict the number, means and frequency of transfers per year that may be requested by the Owner.

Your ability to make transfers is subject to modification if the Company determines, at the Company's sole discretion, that the exercise by one or more owners is, or would be, to the disadvantage of other owners. Restrictions may be applied in any manner reasonably designed to prevent any use of the transfer provision which is considered by the Company to be to the disadvantage of other owners. A modification regarding Your ability to make transfers to or from one or more of the Contract Options could include, but not be limited to:
1. The requirement of a minimum time period between each transfer;
2. Limiting transfer requests of an agent acting on behalf of one or more owners or under a power of attorney on behalf of one or more owners;
3. Limiting the dollar amount that may be transferred at any one time;
4. A restriction that transfers from the 1-Year Fixed Account Option in any Contract Year may not exceed the maximum amount, which is equal to:
    a. 1/3 of the Contract Value in the 1-Year Fixed Account Option as of the most recent Contract Anniversary, in the first Contract Year that this restriction is in effect or if in the prior Contract Year this restriction was in effect and the maximum amount was not transferred from the 1-Year Fixed Account Option;
    b. 1/2 of the Contract Value in the 1-Year Fixed Account Option as of the most recent Contract Anniversary, if in the prior Contract Year this restriction was in effect and the maximum amount was transferred from the 1-Year Fixed Account Option but in the second prior Contract Year either the restriction was not in effect or the maximum amount was not transferred;
    c. the remaining Contract Value in the 1-Year Fixed Account Option, if in both of the two prior Contract Years this restriction was in effect and the maximum amount was transferred from the 1-Year Fixed Account Option.
    If this restriction is imposed, the Company may limit Your ability to transfer into or allocate new Premium to the 1-Year Fixed Account Option in any Contract Year You make a transfer from the 1-Year Fixed Account Option. If this restriction is imposed, the Company may limit Your ability to transfer from the 1-Year Fixed Account Option in any Contract Year You make a transfer into or allocate new Premium to the 1-Year Fixed Account Option. If this restriction is imposed, the Company may require any transfers from the 1-Year Fixed Account Option to occur at least twelve (12) months after the last transfer from the 1-Year Fixed Account Option in the previous Contract Year. If this restriction is imposed, systematic investment programs may be excluded; transfers under such programs do not count against the maximum amount, and the Contract Value under such programs is excluded from the determination of the maximum amount.
5. A systematic transfer program in the event that a restriction on transfers from the Fixed Account Option(s) is imposed.

18-40605.287

## GENERAL PROVISIONS (CONT'D)

The Company may provide systematic investment programs that allow You to transfer funds among the Investment Divisions and the Fixed Account Options. These programs may include dollar cost averaging, portfolio rebalancing, and the automatic monthly transfer of earnings from the 1-Year Fixed Account Option and/or money market Investment Division to other Investment Divisions or Fixed Account Options. You may contact the Company's Service Center, and the Company will furnish all necessary forms to request these programs. The Company makes no guarantee that these programs will result in a profit or protect against loss in a declining market. The Company may restrict Your participation in these programs if You allocate funds to a Fixed Account Option.

In order to participate in a dollar cost averaging program or automatic transfer of earnings program, the Separate Account Contract Value plus the Fixed Account Contract Value must be at least $15,000. The Company may waive this requirement at its discretion. For a dollar cost averaging program, You may authorize the automatic transfer of a fixed dollar amount or selected percentage of the value of a Source Option, periodically to one or more Designated Option(s). The intervals between transfers may be monthly, quarterly, semi-annually or annually.

Additionally, the Company may offer Owners selecting dollar cost averaging an enhanced interest rate(s) on Premium allocated to the 1-Year Fixed Account Option (Source Option) provided all amounts in the Source Option are transferred to the Designated Option(s) within a specific duration determined by the Company. The duration and interest rates are available from the Service Center upon request. Each month, the Company will transfer a predetermined amount from the Source Option. Upon the Owner's cancellation of this program, the Company will transfer the Source Option balance, including any interest, into the Designated Option(s) selected by the Owner.

18-40605.288

# WITHDRAWAL PROVISIONS

At or before the Income Date, the Owner may withdraw all or part of the amounts under this Contract by informing the Company at the Service Center. For full withdrawal, this Contract, or a completed Lost Contract Affidavit, must be returned to the Service Center.

Premiums withdrawn from the Contract Value may be subject to Withdrawal Charges and Recapture Charges. In addition to a Withdrawal Charge and Recapture Charge, a withdrawal from a Fixed Account Option may also incur an Excess Interest Adjustment.

Upon full withdrawal, the Owner will receive the Withdrawal Value. The Withdrawal Value will be based on values at the end of the Business Day on which the request for withdrawal is received at the Service Center in Good Order. **In no event shall the amount withdrawn, whether a full withdrawal or partial withdrawal, exceed the Withdrawal Value.**

Except in connection with a systematic withdrawal program, the minimum partial withdrawal amount is $500, or if less, the Owner's entire interest in the Investment Division or Fixed Account Option from which a withdrawal is requested.

The Owner's interest in the Investment Division or Fixed Account Option from which the withdrawal is requested must be at least $100 after the withdrawal is completed if anything is left in that Investment Division or Fixed Account Option.

Unless otherwise specified, the withdrawal will be made from each Investment Division and each Fixed Account Option in proportion to their current value. Withdrawals will be based on values at the end of the Business Day on which the request for withdrawal is received in Good Order at the Service Center.

The Company will waive the Withdrawal Charge and Recapture Charge on any withdrawal necessary to satisfy the minimum distribution requirements of the Internal Revenue Code. If You request an amount greater than the required minimum distribution for this Contract, the entire withdrawal will be subject to the Withdrawal Charge and Recapture Charge.

You may elect to take a systematic withdrawal by surrendering a specific sum or a certain percentage on a monthly, quarterly, semiannual or annual basis, subject to a $50 minimum withdrawal. Such withdrawals will be counted in determining the portion of the Contract Value taken as an Additional Free Withdrawal. Systematic withdrawals in excess of the Additional Free Withdrawal amount may be subject to a Withdrawal Charge, Recapture Charge and/or an Excess Interest Adjustment.

**WITHDRAWAL CHARGE.** A Withdrawal Charge may be imposed upon certain withdrawals and in the event of payments under an income option commencing during the first Contract Year. Withdrawal Charges will be calculated in accordance with the Withdrawal Charge schedule on the Contract Data Page. The Withdrawal Charge is equal to the Withdrawal Charge percentage applied to the portion of Remaining Premium withdrawn. The Withdrawal Charge will be taken from the Investment Divisions and the Fixed Account Options in the same proportion as the requested withdrawal.

The Withdrawal Charge will be deducted from the remaining Contract Value such that the actual reduction in Contract Value as a result of the withdrawal may be greater than the withdrawal amount requested and paid.

18-40605.292

## WITHDRAWAL PROVISIONS (CONT'D)

For purposes of determining the Withdrawal Charge, earnings are defined as the excess of the Contract Value over the sum of remaining Contract Enhancements and Remaining Premiums. Withdrawals will be allocated first to earnings, if any (which may be withdrawn free of any Withdrawal Charge), second to Remaining Premium on a first-in, first-out basis so that all withdrawals will be allocated to Remaining Premium to which the lowest (if any) Withdrawal Charges apply, and third to Contract Enhancements (which may be withdrawn free of any Withdrawal Charge.)

**RECAPTURE CHARGE.** The Contract Enhancement may be recaptured upon certain withdrawals and in the event of payments under an income option. Recapture Charges will be calculated in accordance with the Recapture Charge schedule set forth on the Contract Data Page. The Recapture Charge is equal to the Recapture Charge percentage applied to the portion of Remaining Premium withdrawn. The Recapture Charge will be taken from the Investment Divisions and the Fixed Account Options in the same proportion as the requested withdrawal.

The Recapture Charge will be deducted from the remaining Contract Value such that the actual reduction in Contract Value as a result of the withdrawal may be greater than the withdrawal amount requested and paid.

For purposes of determining the Recapture Charge, earnings are defined as the excess of the Contract Value over the sum of remaining Contract Enhancements and Remaining Premiums. Withdrawals will be allocated first to earnings, if any (which may be withdrawn free of any Recapture Charge), second to Remaining Premium on a first-in, first-out basis so that all withdrawals will be allocated to Remaining Premium to which the lowest (if any) Recapture Charges apply, and third to Contract Enhancements (which may be withdrawn free of any Recapture Charge.)

**ADDITIONAL FREE WITHDRAWAL.** During a Contract Year, You may make partial withdrawals from the Contract without the Withdrawal Charge, Recapture Charge, and Excess Interest Adjustment being applied. This Additional Free Withdrawal is equal to:

1. 10% of Premium that remains subject to Withdrawal Charges and/or Recapture Charges and that has not been previously withdrawn (this can be utilized once or in segments throughout the Contract Year); less,

2. earnings, as defined in the Withdrawal Charge and Recapture Charge provision.

Any amount to satisfy the minimum required distribution would reduce the amount available under Your Additional Free Withdrawal.

**In no event shall the Additional Free Withdrawal exceed the Withdrawal Value.**

Withdrawal Charges, Recapture Charges, and Excess Interest Adjustments are waived on amounts withdrawn that are less than or equal to the Additional Free Withdrawal. Although Additional Free Withdrawals reduce Contract Value in either the Investment Division and/or the Fixed Account Option, they do not reduce Remaining Premium. As a result, You will not receive the benefit of an Additional Free Withdrawal if You take a full withdrawal. Withdrawals during the Contract Year in excess of the Additional Free Withdrawal may be subject to a Withdrawal Charge and Recapture Charge, as well as any applicable Excess Interest Adjustment.

18-40605.293

## WITHDRAWAL PROVISIONS (CONT'D)

**WAIVER OF THE WITHDRAWAL CHARGE AND RECAPTURE CHARGE DUE TO TERMINAL ILLNESS.** If the Owner incurs a Terminal Illness while the Contract's Withdrawal Charge and/or Recapture Charge would normally apply, the Company will waive the Withdrawal Charge and Recapture Charge on the amount the Owner requests withdrawn from the Contract under this provision. The Excess Interest Adjustment may apply. The amount You request withdrawn from the Contract under this provision will not reduce Remaining Premium.

You can withdraw an amount without a Withdrawal Charge or Recapture Charge pursuant to this benefit only once, regardless of the subsequent occurrence of the same condition or the occurrence of a different condition. You are not eligible for this waiver if You have a Terminal Illness on the Issue Date of the Contract.

The amount withdrawn pursuant to this provision shall be requested by the Owner up to 100% of the Contract Value. The amount withdrawn pursuant to this provision shall not exceed $250,000 and will be taken from the Separate Account Contract Value and the Fixed Account Contract Value as stated in the Withdrawal Provisions of this Contract. A withdrawal from the Fixed Account Option(s) may be subject to an Excess Interest Adjustment. This may mean an increase or decrease in the amount of Your benefit.

**Claim Requirements.** Written proof of the Owner's Terminal Illness must be received in Good Order at the Service Center before a Terminal Illness benefit payment will be considered. Written proof includes a properly completed Company claim form, Your signed medical records release, and a Physician's statement of condition satisfactory to the Company. The Company reserves the right to request additional medical information from any Physician or institution which may have provided treatment for the Terminal Illness. The Company may require, at its expense, an additional examination by a Physician of its choice. If there is a discrepancy between medical opinions, the opinion of the Company's Physician will govern, unless state law requires otherwise.

For the purpose of this Terminal Illness Benefit, Physician's statement means a written statement, acceptable to the Company, signed by a Physician which:
1. gives the Physician's diagnosis of the Owner's noncorrectable medical condition; and
2. states with reasonable medical certainty, that the noncorrectable medical condition will result in the death of the Owner within twelve (12) months or less from the date of the Physician's statement.

This statement will take into consideration the ordinary and reasonable medical care, advice and treatment available in the same or similar communities.

Written notice and proof of claim must be submitted to the Service Center any time after the date the Owner develops a Terminal Illness. Contact the Service Center for details on how to apply for benefits under this provision.

**A PAYMENT UNDER THIS PROVISION MAY BE TAXABLE. AS WITH ALL TAX MATTERS, YOU ARE ENCOURAGED TO SEEK LEGAL AND/OR TAX ADVICE.**

18-40605.294

## WITHDRAWAL PROVISIONS (CONT'D)

**WAIVER OF WITHDRAWAL CHARGE AND RECAPTURE CHARGE FOR SPECIFIED CONDITIONS.** If the Owner incurs one of the Specified Conditions, as set out below, while the Contract's Withdrawal and/or Recapture Charge would normally apply, the Company will waive the Withdrawal Charge and Recapture Charge on the amount the Owner requests withdrawn from the Contract under this provision. The Excess Interest Adjustment may apply. The amount You request withdrawn from the Contract under this provision will not reduce Remaining Premium.

You can withdraw an amount without a Withdrawal Charge or Recapture Charge pursuant to this benefit only once, regardless of the subsequent occurrence of the same condition or the occurrence of a different condition. You are not eligible for this waiver if You have or have had one of these Specified Conditions on the Issue Date of the Contract.

Each of the following is a **Specified Condition:**

- **Heart Attack:** The death of a portion of heart muscle (myocardium) resulting from a blockage of one or more coronary arteries.

- **Stroke:** Any acute cerebral vascular accident producing neurological impairment and resulting in paralysis or other measurable objective neurological deficit persisting for at least 30 days.

- **Coronary Artery Surgery:** The actual undergoing of bypass surgery using either a saphenous vein or internal mammary artery graft for the treatment of coronary artery disease.

- **Life-Threatening Cancer:** Only those types of cancer manifested by the presence of a malignant tumor characterized by the uncontrolled growth and spread of malignant cells and the invasion of tissue. As used herein, leukemia and Hodgkin's disease (except Stage I Hodgkin's disease) shall be considered life-threatening cancer. LIFE-THREATENING CANCER DOES NOT INCLUDE premalignant tumors or polyps, cancer in situ, intraductal noninvasive carcinoma of the breast, carcinoid of the appendix, Stage I transitional carcinoma of the urinary bladder or any skin cancers other than melanomas.

- **Renal Failure:** The end stage of chronic, irreversible failure of both kidneys to function, necessitating regular renal dialysis expected to continue for a period of at least 6 months or resulting in renal transplantation.

- **Alzheimer's Disease:** Shall be defined as a progressive degenerative disease of the brain characterized by the loss of intellectual capacity involving impairment of memory or judgment or changes in personality which result in a significant reduction in mental and social functioning and which requires continuous supervision. For the purpose of this benefit, Alzheimer's disease shall be evidenced by a diagnosis of Alzheimer's disease from a neurologist licensed in the United States. The term Alzheimer's disease does not include neuroses or psychotic illness.

18-40605.295

## WITHDRAWAL PROVISIONS (CONT'D)

The amount withdrawn under this provision without a Withdrawal Charge or Recapture Charge shall be as requested by the Owner up to 25% of the Contract Value. In the case of Joint Owners, this benefit applies to each of them up to 12 1/2% of the Contract Value. The amount withdrawn will be taken from the Separate Account Contract Value and the Fixed Account Contract Value as stated in the Withdrawal Provisions of this Contract. A withdrawal from the Fixed Account Option(s) may be subject to an Excess Interest Adjustment. This may mean an increase or decrease in the amount of Your benefit.

**Claim Requirements.** Written proof of the Owner's Specified Condition must be received in Good Order by the Company at its Service Center before a Specified Condition benefit will be considered. Written proof includes a properly completed Company claim form, Your signed medical records release, and a Physician's statement of condition satisfactory to the Company. The Company reserves the right to request additional medical information from any Physician or institution which may have provided treatment for the Specified Condition. The Company may require, at its expense, an additional examination by a Physician of its choice. If there is a discrepancy between medical opinions, the opinion of the Company's Physician will govern, unless state law requires otherwise.

For purposes of this Specified Condition benefit, Physician's statement means a written statement, acceptable to the Company, signed by a Physician which:
1. gives the Physician's diagnosis of the Owner's Specified Condition, including documentation supported by clinical, radiological, histological or laboratory evidence of the condition; and
2. gives the Physician's diagnosis of life-threatening cancer according to the criteria of malignancy established by The American Board of Pathology after a study of the histocytologic architecture or pattern of the suspect tumor, tissue or specimen; or
3. gives the Physician's diagnosis of a heart attack including each and all the following three criteria:
    a. a clinical picture of a myocardial infarction; and
    b. electrocardiographic findings consistent with a myocardial infarction; and
    c. elevation of cardiac enzymes above standard laboratory levels of normal (in the case of CPK, a CPK-MB measurement must be used).

Written notice and proof of claim must be submitted to the Service Center anytime after the date the Owner develops a Specified Condition. Contact the Service Center for details on how to apply for benefits under this provision.

**A PAYMENT UNDER THIS PROVISION MAY BE TAXABLE. AS WITH ALL TAX MATTERS, YOU ARE ENCOURAGED TO SEEK LEGAL AND/OR TAX ADVICE.**

18-40605.296

## WITHDRAWAL PROVISIONS (CONT'D)

**WAIVER OF WITHDRAWAL CHARGE AND RECAPTURE CHARGE FOR EXTENDED CARE.**
If You are confined as an inpatient to a Nursing Home or Hospital for ninety (90) consecutive days, a period during which the Withdrawal Charge and/or Recapture Charge otherwise would normally apply, the Company will waive the Withdrawal Charge and Recapture Charge on any amounts You request withdrawn from the Contract under this provision. The Excess Interest Adjustment may apply. The amount(s) You request withdrawn from the Contract under this provision will not reduce Remaining Premium.

You may exercise this provision only once, regardless of the subsequent occurrence of the same condition or the occurrence of a different condition. Once Your eligibility has been established, You may request one withdrawal or multiple withdrawals subject to the maximum allowed. You are not eligible for this waiver if:
1. You are confined to a Nursing Home or Hospital during the thirty-day (30) period following the Issue Date, unless such confinement is not related to a subsequent confinement for which You request the waiver; or,
2. You are no longer confined to a Nursing Home or Hospital.

Confinement to the Nursing Home or Hospital must be prescribed by a Physician and be medically necessary, meaning the confinement is appropriate and consistent with the diagnosis in accordance with accepted standards of practice, and which could not have been omitted without adversely affecting the confined Owner's condition.

Withdrawals made pursuant to this provision shall be up to 100% of the Contract Value. The amount(s) withdrawn pursuant to this provision shall not exceed $250,000 and will be taken from the Separate Account Contract Value and the Fixed Account Contract Value as stated in the Withdrawal Provisions of this Contract. A withdrawal from the Fixed Account Option(s) may be subject to an Excess Interest Adjustment. This may mean an increase or decrease in the amount of Your benefit.

**Claim Requirements.** Written notice and proof of claim of the Owner's confinement must be submitted to the Company at its Service Center 90 days after the date the Owner becomes confined to a Nursing Home or Hospital before a waiver will be considered pursuant to this provision. Written proof includes: (1) a properly completed Company claim form; (2) Your signed medical records release; and (3) a Physician's statement of condition satisfactory to the Company. The Company reserves the right to request additional medical information from any Physician, Hospital or Nursing Home. The Company may require, at its expense, an additional examination by a Physician of its choice. If there is a discrepancy between medical opinions, the opinion of the Company's Physician will govern, unless state law requires otherwise.

**A PAYMENT UNDER THIS PROVISION MAY BE TAXABLE. AS WITH ALL TAX MATTERS, YOU ARE ENCOURAGED TO SEEK LEGAL AND/OR TAX ADVICE.**

18-40605.297

# TAB 7

**Sealed Material Removed**

*See* Court Order dated October 25, 2018

# TAB 8

**Sealed Material Removed**

*See* Court Order dated October 25, 2018

# TAB 9

**Sealed Material Removed**

*See* Court Order dated October 25, 2018

# TAB 10

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 17, 2018, I electronically transmitted this Record Excerpts of Appellant to the Clerk of the Court using the Court's ECF system. I further certify that counsel of record for Plaintiffs–Appellees are being served with a copy of this Record Excerpts of Appellant by electronic means via the Court's ECF system, or by email.

*/s/ William R. Peterson*
William R. Peterson
*Attorney of record for*
*Jackson National Life Insurance Company*