# Case No. 18-40605

# In the United States Court of Appeals
# For the Fifth Circuit

DAVID CRUSON; JOHN DENMAN,

*Plaintiffs–Appellees,*

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,

*Defendant–Appellant.*

On Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:16-CV-912 (Mazzant, J.)

# REPLY BRIEF OF APPELLANT

MORGAN, LEWIS & BOCKIUS LLP
Scott T. Schutte
77 West Wacker Drive, Suite 500
Chicago, IL 60601
(312) 324-1000

MORGAN, LEWIS & BOCKIUS LLP
William R. Peterson
David J. Levy
Thomas R. Davis
Rachel H. Stinson
Jason F. Muriby
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5000

*Counsel for Appellant, Jackson National Life Insurance Company*

# TABLE OF CONTENTS

Table of Contents ...........................................................................................................i

Table of Authorities ..................................................................................................... iii

Response to Plaintiffs' Statement of Jurisdiction ....................................................1

Introduction .....................................................................................................................2

Response to Statement of Facts ...................................................................................4

Argument in Reply...........................................................................................................5

I.    The District Court Erred in Certifying a Nationwide Class. ..........................5

    A.    Jackson was not required to move to dismiss the claims of unnamed members of a putative class.....................................................7

    B.    The decision below is unprecedented. ...............................................10

    C.    Arbitration cases confirm Jackson's analysis. ...................................12

    D.    Jackson properly raised personal jurisdiction as an issue at the class certification stage.....................................................................13

II.    Plaintiffs' Brief Confirms that Individual Issues Predominate. ...................14

    A.    Brokers are their customers' agents, and their knowledge is imputed to Plaintiffs. .........................................................................15

    B.    Contract interpretation turns on individual issues..............................16

        1.    Jackson's arguments are consistent with the stipulations.........17

        2.    Individual extrinsic evidence must be considered in interpreting the contract. .........................................................17

        3.    Individual knowledge of trade usage is highly relevant. ..........19

    C.    Jackson's affirmative defenses present individual issues. ..................22

        1.    Jackson was not required to prove its affirmative defenses to defeat certification. ...........................................................22

        2.    Jackson has strong waiver and ratification defenses. ..............23

        3.    Jackson has a strong reformation defense................................25

        4.    Plaintiffs never sought certification under Rule 23(c)(4)........26

    D.    Plaintiffs failed to carry their burden to prove that variations in state law do not defeat predominance and superiority...................27

III.    Plaintiffs Failed to Provide a Damage Model Demonstrating that Damages Can Be Calculated on a Classwide Basis. .....................................29

Conclusion & Prayer for Relief .................................................................................31

Certificate of Service .................................................................................................32

Certificate of Compliance with Rule 32 ...................................................................33

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page(s)**

*Adams v. Grefer*,
   636 F. App'x 906 (5th Cir. 2016) ........................................................9

*Allen v. Holiday Universal*,
   249 F.R.D. 166 (E.D. Pa. 2008).........................................................24

*Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*,
   No. 1:16-CV-9281, 2018 WL 3474444 (N.D. Ill. July 19, 2018) ........................5

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)...........................................................21, 22

*Baxter v. Palmigiano*,
   425 U.S. 308 (1976)...............................................................7

*Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*,
   600 F. App'x 230 (5th Cir. 2015) .......................................................15

*Biscone v. JetBlue Airways Corp.*,
   681 F. Supp. 2d 383 (E.D.N.Y. 2010) ................................................7

*Braud v. Transp. Serv. Co.*,
   445 F.3d 801 (5th Cir. 2006) .........................................................9

*Bristol-Myers Squibb Co. v. Superior Ct.*,
   137 S. Ct. 1773 (2017)...............................................................5

*Brotz v. Simms Assoc., Inc.*,
   No. 6:17-CV-1603, 2018 WL 4963692 (M.D. Fla. Oct. 15, 2018) ....................10

*Campbell v. Freshbev LLC*,
   322 F. Supp. 3d 330, 337 (E.D.N.Y. 2018) .......................................11

*Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*,
   624 F.3d 185 (5th Cir. 2010) ......................................................27, 28

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) .......................................................27, 29

*Champlin Oil & Ref. Co. v. Chastain*,
  403 S.W.2d 376 (Tex. 1965) ..............................................................25

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ..............................................................13

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) ............................................................................8, 9

*Fabec v. Debt Mgmt. Partners, LLC*,
  No. 1:18-CV-1537, 2018 WL 4830085 (N.D. Ohio Oct. 4, 2018) ...................10

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  No. 5:17-CV-00564-NC, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017)............5

*Garvey v. Am. Bankers Ins. Co.*,
  No. 1:17-CV-986, 2018 WL 3549784 (N.D. Ill. July 23, 2018) .......................10

*Gasser v. Kiss My Face, LLC*,
  No. 3:17-CV-01675-JSC, 2018 WL 4538729 (N.D. Cal. Sept. 21, 2018).........11

*Geis v. Nestle Waters N. Am., Inc.*,
  321 F. Supp. 3d 230 (D. Mass. 2018)................................................10

*Gelb v. Auto. Ins. Co. of Hartford, Conn.*,
  168 F.2d 774 (2d Cir. 1948) ..............................................................20

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013)................................................................................8

*Gibson v. Chrysler Corp.*,
  261 F.3d 927 (9th Cir. 2001) ......................................................6, 7, 9

*Grant Thornton LLP v. Prospect High Income Fund*,
  314 S.W.3d 913 (Tex. 2010) ..............................................................16

*Gunnells v. Healthplan Svcs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ..............................................................23

*Gutierrez v. Wells Fargo Bank, NA*,
  889 F.3d 1230 (11th Cir. 2018) ..........................................................12

*Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.*,
   352 S.W.3d 462 (Tex. 2011) ........................................................18, 19

*In re Checking Account Overdraft Litig.*,
   780 F.3d 1031 (11th Cir. 2015). ...............................................12, 14

*In re Checking Account Overdraft Litig.*,
   307 F.R.D. 630 (S.D. Fla. 2015)......................................................... 24

*Klier v. Elf Atochem N. Am., Inc.*,
   658 F.3d 468 (5th Cir. 2011) .............................................................24

*Molock v. Whole Foods Mkt., Inc.*,
   297 F. Supp. 3d 114, 125 (D.D.C. 2018).........................................10

*Morgan Stanley Grp. Inc. v. New England Ins. Co.*,
   225 F.3d 270 (2d Cir. 2000) ......................................................19, 31

*Murray v. Fid. Nat. Fin., Inc.*,
   594 F.3d 419 (5th Cir. 2010) ..............................................................8

*O'Sullivan v. Countrywide Home Loans, Inc.*,
   319 F.3d 732 (5th Cir. 2003) .............................................................21

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013) .................................................................7

*Prescott v. Slide Fire Sols., LP*,
   No. 2:18-CV-296, 2018 WL 4409369 (D. Nev. Sept. 17, 2018) ......................10

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Svcs., Inc.*,
   601 F.3d 1159 (11th Cir. 2010) ...................................................25, 28

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
   863 F.3d 460 (6th Cir. 2017) .............................................................23

*Sanger Ins. Agency v. HUB Intern., Ltd.*,
   802 F.3d 732 (5th Cir. 2015) .............................................................15

*Slade v. Progressive Sec. Ins. Co.*,
   856 F.3d 408 (5th Cir. 2017) .............................................................30

*Soc'y of Roman Catholic Church of Diocese of Lafayette, Inc. v. Interstate Fire & Cas. Co.*, 126 F.3d 727 (5th Cir. 1997) ..............................15

*Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224 (5th Cir. 2015) ...............................................................17

*Trelltex, Inc. v. Intecx, LLC*, 494 S.W.3d 781 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ..................24

*True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018) ..............................................................23

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016)..............................................................14, 22

*United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952)......................................................................11

*United States v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018).......................................................................7

*URI, Inc. v. Kleberg County*, 543 S.W.3d 755 (Tex. 2018) ...........................................................18

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)......................................................23

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981) ...........................................................7

**STATUTES**

28 U.S.C. § 1292(e) ..................................................................................1

28 U.S.C. § 2702(b) ................................................................................22

Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat 4 ..........................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4 ....................................................................................5

Fed. R. Civ. P. 12 ..................................................................................6

Fed. R. Civ. P. 23 .................................................................................passim

3 Steven Plitt et al., Couch on Insurance § 46:21 (3d ed. 2018) .......................16, 20

3 W. Rubenstein, Newberg on Class Actions § 9:7 (5th ed. 2018)...........................8

7 Appleman on Insurance 2d: Law of Insurance Agents § 47.5 (1998)..................15

**RESPONSE TO PLAINTIFFS' STATEMENT OF JURISDICTION**

This appeal concerns an order granting class certification, which this Court indisputably has jurisdiction to review. *See* Fed. R. Civ. P. 23(f); 28 U.S.C. § 1292(e). The sole issue of personal jurisdiction is whether the district court erred in certifying a nationwide class even though it lacks personal jurisdiction over the defendant with respect to the claims of class members outside of Texas. Jackson Br. 2, 27-38.

Plaintiffs mistakenly state that Jackson "appeals, through pendant jurisdiction, the court's finding of waiver of personal jurisdiction." Pls.' Br. 2. The waiver ruling was part of the district court's class certification order. ROA.851. This Court's jurisdiction to review the class certification order—including Jackson's challenge to the nationwide class certification because of the absence of personal jurisdiction—does not rest on pendant appellate jurisdiction.

## INTRODUCTION

Plaintiffs largely fail to engage with Jackson's arguments. Jackson's challenge to the district court's waiver ruling relies on two propositions: (1) the claims of unnamed class members are not part of an action prior to certification; and (2) a defendant is not required to move to dismiss these hypothetical claims. Plaintiffs squarely address neither. Jackson developed arguments and cited authority in support of both propositions, but its analysis and its cases go unanswered. Jackson did not waive personal jurisdiction, and the district court erred in certifying a nationwide class.

The district court also erred in evaluating commonality and predominance. As an initial matter, Plaintiffs fail to acknowledge the involvement of brokers, Plaintiffs' sophisticated agents whose knowledge is imputed to their principals. Brokers distinguish this case from the typical form contract. Because at least some brokers shared the industry understanding of the contract language, interpreting the contract is an individual question.

With respect to waiver and ratification, Jackson demonstrated—through Texas law and treatises—that the district court applied the wrong legal standard. Plaintiffs do not address Jackson's authority and instead rely only on two cases that Jackson already distinguished in its opening brief. These affirmative defenses also present individual questions, which predominate over common questions.

Nor do Plaintiffs seriously defend the district court's failure to consider variations in state law on numerous issues, including contract interpretation and the affirmative defenses.

Regarding damages, Plaintiffs now propose a simplistic model for "overcharge" damages, but their model fails to consider how their contract interpretation affects subsequent surrender charges and fails to address the damages they seek for living benefits and death benefits. Jackson Br. 55.

Jackson's arguments go unrebutted. Class certification should be reversed.

Plaintiffs' statement of facts warrants brief response. First, Plaintiffs' discussion of Jackson's surrender charges is misleading. Pls.' Br. 11, 19. If a customer withdraws $1,000 subject to a 10% fee, Jackson charges $100 (10%) and sends the customer the remaining $900. Jackson Br. 9-10.

Plaintiffs' accusation—that Jackson would actually charge 11.11% in this example (Pls.' Br. 11)—assumes that only money sent to the customer is "withdrawn." *See* Jackson Br. 11-12 (discussing Plaintiffs' theory). In Plaintiffs' view, only $900 was "withdrawn," so they calculate $\frac{\$100}{\$900} = 11.11\%$ rather than $\frac{\$100}{\$1,000} = 10\%$. The dispute does not actually concern "the fee percentage that Jackson charges," Pls.' Br. 11, but concerns whether $1,000 or $900 was "withdrawn."

Second, Plaintiffs insist that they "have no 'gross withdrawals' or 'net withdrawals.'" Pls.' Br. 19. Plaintiffs provide no record citation, and the forms used to request withdrawals indicate either "gross" (the default) or "net":

> *Partial Withdrawals (options B-H) below will be processed as a Gross amount. A Net withdrawal amount is available only under Option B, if elected. Partial withdrawal amounts may not be less than $100.*
>
> **B**  ☑ **Dollar Amount** $ [____]  \*maximum available amount w/o closing account\*
>        **Gross** (Default) or ☐ **Net**\* (not available for death claim proceeds)

ROA.5000; *see also* ROA.5007 ("\*\*GROSS WD\*\*"). Plaintiffs cannot evade the fact that they requested "gross" and "net" withdrawals. Nor can Plaintiffs deny that their theory is that when a customer requested a $1,000 gross withdrawal, Jackson breached the contract by withdrawing $1,000.

## ARGUMENT IN REPLY

## I.    The District Court Erred in Certifying a Nationwide Class.

The district court erred in certifying a nationwide class, where the majority of the class asserts claims for which the district court lacks personal jurisdiction over Jackson. To their credit, Plaintiffs do not argue that the district court had personal jurisdiction with respect to these claims.[1]

Plaintiffs only argue waiver. According to Plaintiffs, Jackson could not object to certification of a nationwide class based on lack of personal jurisdiction because Jackson did not move to dismiss the claims of unnamed members of the putative class.

---

[1] There is a deepening divide among district courts regarding the applicability of *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773 (2017), to class actions. *Compare, e.g.*, *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, No. 1:16-CV-9281, 2018 WL 3474444, at *2 (N.D. Ill. July 19, 2018) ("*Bristol-Myers Squibb* applies in equal measure to class actions[.]"), *with Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 5:17-CV-00564-NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017) (declining to apply *Bristol-Myers* in a class action).

For the reasons discussed in Jackson's opening brief (at 27-30)—an analysis to which Plaintiffs do not respond, *Bristol-Myers* applies to class actions. Even in class actions, a district court can exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," Fed. R. Civ. P. 4(k)(1)(A), and the jurisdictional limits of the state courts arise from "territorial limitations on the power of the respective States." *Bristol-Myers*, 137 S. Ct. at 1780.

This Court need not decide the issue, however, because Plaintiffs have not argued that the district court could exercise personal jurisdiction with respect to the claims of unnamed putative class members. They argue only that Jackson waived its objection. *See* Pls.' Br. 35.

Plaintiffs' arguments conflict with basic principles of class certification: "[A] class action, when filed, includes only the claims of the named plaintiff or plaintiffs. The claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001). Simple logic dictates that claims that are not yet part of an action cannot be dismissed.

The decision below is unprecedented. No case has found waiver under similar circumstances. Plaintiffs cite a handful of district court cases to demonstrate that in the eight decades since the enactment of Rule 23, defendants have occasionally moved to dismiss the claims of unnamed putative class members. But no case has provided any analysis concluding that such a motion is procedurally proper.

Jackson does not argue for a "Rule 23 exception to Rule 12." Pls.' Br. 49. Jackson simply requests common-sense recognition of the interaction between Rule 23 and Rule 12. Before certification, the claims of unnamed class members are not part of the action and not subject to dismissal. A defense to these claims is not "available" until the class has been certified. Fed. R. Civ. P. 12(g)(2). Jackson did not waive its objections to personal jurisdiction, and the district court erred in certifying a nationwide class.

**A.** **Jackson was not required to move to dismiss the claims of unnamed members of a putative class.**

Numerous cases explain the status of class actions prior to certification.

Before certification:

- "the action is not properly a class action," *Baxter v. Palmigiano*, 425 U.S. 308, 310 n.1 (1976);

- the action "includes only the claims of the named plaintiff or plaintiffs," *Gibson*, 261 F.3d at 940;

- "there is no class action but merely the prospect of one," *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 n.22 (2d Cir. 2013); and

- "the claims of potential class members cannot be considered," *Biscone v. JetBlue Airways Corp.*, 681 F. Supp. 2d 383, 386 (E.D.N.Y. 2010).

Class certification "bring[s] the unnamed members of the class before the court[.]"

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1046 (5th Cir. 1981). Jackson

quoted each of these cases in its opening brief. Jackson Br. 30-31.

Without citing or otherwise addressing any of these five cases, Plaintiffs assert

that class certification does not affect the claims of unnamed class members, arguing

that "Jackson's claimed underlying distinction of a change in 'party' status [before

and after certification] does not exist." Pls.' Br. 45.

The Supreme Court has held the opposite: "The certification of a suit as a class

action has important consequences for the unnamed members of the class" who are

afterwards "considered parties to the litigation in many important respects." *United

States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018) (internal quotation marks

omitted); *accord Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002). Indeed, "a putative class acquires an independent legal status once it is certified under Rule 23." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

Cases considering mootness confirm that certification gives life to the claims of unnamed class members. Prior to certification, if the claims of all named plaintiffs become moot, then the hypothetical claims of the putative class will not prevent a case as a whole from becoming moot. *See Murray v. Fid. Nat. Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (explaining that the "purported class action becomes moot" and "there is no longer a 'case or controversy' within the meaning of Article III" when the named plaintiffs' claims are satisfied prior to certification). In contrast, "*after* the class has been duly certified," "a class action is not rendered moot when the named plaintiff's individual claim becomes moot." *Genesis Healthcare*, 569 U.S. at 74.

And if Jackson had moved to dismiss the claims of unnamed putative class members, it is unclear who (if anyone) could have opposed the motion. Cases generally recognize that prior to certification, "no formal attorney-client relationship exists" between putative class counsel and unnamed putative class members. 3 W. Rubenstein, Newberg on Class Actions § 9:7 n.4 (5th ed. 2018).

Rather than grapple with the key issues—(1) whether the claims of unnamed class members are part of a case before certification; and (2) if not, whether

hypothetical claims can be dismissed—Plaintiffs discuss irrelevancies such as the pleading standard for Rule 23 (Pls.' Br. 23-39); Jackson's knowledge that Plaintiffs intended to seek class certification (Pls.' Br. 41-42); "the Rules' philosophy" (Pls.' Br. 43); and "ripe[ness]" (Pls.' Br. 46-47). None of these points responds to Jackson's argument that the claims were not before the court and could not have been dismissed.[2]

Nor is the Class Action Fairness Act relevant to the issues in this appeal. Pls.' Br. 38-39. The statute concerns subject matter jurisdiction, not personal jurisdiction. *E.g.*, *Adams v. Grefer*, 636 F. App'x 906, 907 n.1 (5th Cir. 2016) ("CAFA . . . created a new basis for federal subject matter jurisdiction over qualifying civil actions."); *Braud v. Transp. Serv. Co.*, 445 F.3d 801, 803 (5th Cir. 2006) ("CAFA broadens diversity jurisdiction[.]").

*Devlin v. Scardelletti*, quoted at Pls.' Br. 47, also concerns subject matter jurisdiction. *See* 536 U.S. at 10 (explaining that that unnamed class members "cannot defeat complete diversity"). The case says nothing about personal jurisdiction.

---

[2] Plaintiffs also equate class certification with a "claim [being] decided." Pls.' Br. 43. Class certification does not "decide" the claims of unnamed class members; certification merely "add[s] [these claims] to the action." *Gibson*, 261 F.3d at 940.

Jackson's argument goes unanswered: The claims of unnamed members of a putative class are not part of an action. Defenses to them are not "available" before certification, and a defendant need not move to dismiss hypothetical claims.

## B. The decision below is unprecedented.

To Jackson's knowledge, no other case has ever found waiver for failing to move to dismiss the claims of unnamed members of a putative class for lack of personal jurisdiction. Plaintiffs cite no such case.

Instead, Plaintiffs merely provide a string citation purporting to show that some defendants have moved to dismiss the claims of unnamed members of putative classes. Pls.' Br. 44 n.10. Jackson addressed six of these cases in its opening brief. Jackson Br. 34-35.

Of Plaintiffs' six new cases, four concern personal jurisdiction over the claims of named plaintiffs.[3] The remaining two cases consider personal jurisdiction

---

[3] *See Fabec v. Debt Mgmt. Partners, LLC*, No. 1:18-CV-1537, 2018 WL 4830085, at *9 (N.D. Ohio Oct. 4, 2018) (denying a motion to dismiss because that "Defendant's contacts with Ohio . . . caused Plaintiff's injury in Ohio and form the basis of Plaintiff's causes of action."); *Prescott v. Slide Fire Sols., LP*, No. 2:18-CV-00296, 2018 WL 4409369, at *1, *6 (D. Nev. Sept. 17, 2018) (holding that "Slide Fire's connections to Nevada are causally related to [the named] Plaintiffs' causes of action"); *Garvey v. Am. Bankers Ins. Co.*, No. 1:17-CV-986, 2018 WL 3549784, at *1–2 (N.D. Ill. July 23, 2018) (dismissing a complaint because the named plaintiff could not demonstrate personal jurisdiction); *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 239–40 (D. Mass. 2018) (denying a motion to dismiss because the named plaintiffs' claims arose out of the defendants' forum contacts).

challenges to the claims of unnamed members of a putative class,[4] but neither case analyzes whether such a motion is proper or addresses the status of the claims of unnamed class members prior to certification.

Unreasoned, sub silentio procedural rulings provide Plaintiffs with no support. *Cf. United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("[T]his Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio.").

Cases that have considered the issue recognize that such a motion to dismiss is premature. One court recently noted the incoherence of moving to dismiss the claims of putative class members: "[T]he Court does not understand how it can lack personal jurisdiction of persons who are not yet (and may never be) parties to this action, that is, the putative class members." *Gasser v. Kiss My Face, LLC*, No. 3:17-CV-01675, 2018 WL 4538729, at *2 (N.D. Cal. Sept. 21, 2018). Personal jurisdiction over unnamed class members is "an issue to be raised at class certification." *Id.*; *see also Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337 (E.D.N.Y. 2018) (deferring personal jurisdiction "until the plaintiff brings a motion for class certification"); Jackson Br. 34-35.

---

[4] *Brotz v. Simms Assocs., Inc.*, No. 6:17-CV-1603, 2018 WL 4963692 (M.D. Fla. Oct. 15, 2018); *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126–27 (D.D.C. 2018), *motion to certify appeal granted*, 317 F. Supp. 3d 1.

## C. Arbitration cases confirm Jackson's analysis.

Cases involving arbitration confirm that the claims of unnamed class members are not before a court prior to certification and that a motion regarding these claims is premature. *See* Jackson Br. 32-33 & n.11. The cases cited by Jackson go undiscussed by Plaintiffs.

The sole exception is the Eleventh Circuit's decision in *In re Checking Account Overdraft Litigation*, which holds that a defendant does not waive the right to arbitrate the claims of unnamed class members by failing to move to compel before certification. 780 F.3d 1031, 1036–39 (11th Cir. 2015).

Plaintiffs address this case in a footnote, arguing that the decision is about the "ability to bind non-party class members" and not "a court's ability to bind a party-defendant." Pls.' Br. 12.

This distinction has no grounding in the Eleventh Circuit's reasoning, which rests on Article III. 780 F.3d at 1037. The opinion says nothing about the "ability to bind" anyone—it instead holds that "there is no justiciable controversy between [a defendant] and the unnamed putative class members," who have asserted no claims. *Id.* Jackson could not have moved to dismiss the "hypothetical" claims of the unnamed putative class members. *See id.* (holding that because the claims were hypothetical, any ruling would be an impermissible advisory opinion); *see also Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) ("It would

have been . . . jurisdictionally impossible for the District Court to rule on those motions before the class was certified.").

The Eleventh Circuit's analysis cannot be harmonized with the result below. Affirming this case—and holding that a defendant must seek dismissal of the hypothetical claims of unnamed putative class members—would create a circuit split between this Court and the Eleventh Circuit.

Arbitration cases correctly hold that defendants need not (and cannot) move to compel arbitration of the claims of unnamed putative class members. This analysis confirms that Jackson was not required to move to dismiss the claims of unnamed class members prior to certification.

### D. Jackson properly raised personal jurisdiction as an issue at the class certification stage.

Jackson did not waive any objections to personal jurisdiction with respect to the claims of unnamed putative class members. Jackson properly raised personal jurisdiction as an issue affecting the scope and definition of any class, to be considered in defining a class whose claims the district court could adjudicate. Jackson Br. 37-38; *cf. Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("The class must therefore be defined in such a way that anyone within it would have standing.").

This Court need not address what would occur if a defendant remained silent during class certification and objected to personal jurisdiction afterward. In this

case, Jackson noted in its answer that personal jurisdiction would be absent if a nationwide class were certified, ROA.609, and Jackson argued that the absence of personal jurisdiction precluded certification of a nationwide class. ROA.2318. Like arbitrability, personal jurisdiction over the claims of unnamed putative class members "is properly litigated via a motion to certify a class." *In re Checking Account Overdraft Litig.*, 780 F.3d at 1039 n.10.

The district court erred in holding that Jackson waived its objection to personal jurisdiction and in certifying a nationwide class. This Court should, at a minimum, render judgment that any class be limited to Texas plaintiffs.

## II. Plaintiffs' Brief Confirms that Individual Issues Predominate.

This Court need not address the procedural issues, however, because no class should have been certified at all. The district court erred in identifying common questions and in holding that common questions predominate over individual ones.

Plaintiffs do not dispute that any liability theory or defense that turns on the subjective knowledge (actual or imputed) of an individual plaintiff constitutes an individual question, on which "members of a proposed class will need to present evidence that varies from member to member[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016); *see also* Jackson Br. 39-40. Plaintiffs defend certification based solely on the argument that an individual plaintiff's knowledge is wholly irrelevant.

But the knowledge of each individual plaintiff is centrally relevant (1) to contract interpretation, including whether the plaintiff is charged with industry understanding of the contract; (2) to waiver and ratification; and (3) to reformation. These individual issues predominate, and the district court erred in certifying a class.

A. **Brokers are their customers' agents, and their knowledge is imputed to Plaintiffs.**

Plaintiffs repeatedly refer to the brokers as "Jackson broker[s],"[5] implying that they were Jackson's agents. The implication is wrong: "[A]n insurance broker is considered the agent of the insured." *Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, 600 F. App'x 230, 233 (5th Cir. 2015) (applying Texas law); *see also, e.g.*, *Sanger Ins. Agency v. HUB Intern., Ltd.*, 802 F.3d 732, 744 n.9 (5th Cir. 2015) ("Bluntly stated, an 'insurance agent' represents the insurance company, whereas an 'insurance broker' represents the insured." (quoting 7 Appleman on Insurance 2d: Law of Insurance Agents § 47.5, at 326 (1998))); *Soc'y of Roman Catholic Church of Diocese of Lafayette, Inc. v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 739 (5th Cir. 1997) (same under Louisiana law).[6]

---

[5] *See* Pls.' Br. 10, 14, 56; *see also* Pls.' Br. 57 (referring to "[Jackson's] support personnel, such as brokers").

[6] The record confirms this agency relationship. The Original Named Plaintiffs testified that they trusted and relied on Hightower's advice. ROA.3497-98. And letters written by Hightower acknowledge his "fiduciary duty to [his] customers." ROA.3720 (Cruson letter).

The effect of the agency relationship is that "the insured is bound by the acts of a broker acting as the insured's agent and is charged with [the broker's] knowledge." 3 Steven Plitt et al., Couch on Insurance § 46:21 (3d ed. 2018); *see also Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 924 (Tex. 2010) ("[A]n agent's knowledge is generally imputed to its principal[.]"). Plaintiffs will be charged with their brokers' knowledge.

Brokers are critical to this case. Plaintiffs cry "inequity," alleging that "a sophisticated nationwide-insurance company" takes advantage of "commonly elderly individuals," who are "unsophisticated part[ies]" required to "accept or reject a complex legal document." Pls.' Br. 58.

Among other inaccuracies, this description elides brokers. These "unsophisticated part[ies]" are represented and counseled by highly sophisticated brokers, deeply familiar with the industry and the contracts at issue. *See* Jackson Br. 13-14 (discussing brokers' responsibilities). When brokers are considered, the facts bear little relationship to Plaintiffs' description. Plaintiffs cannot disregard the involvement of brokers—their sophisticated agents—in these transactions, involvement which removes the case from the realm of standard, form contracts.

## B. Contract interpretation turns on individual issues.

As Jackson demonstrated in its opening brief, contract interpretation turns on individual questions. Jackson Br. 40-45.

### 1. Jackson's arguments are consistent with the stipulations.

Plaintiffs rely heavily on a series of stipulations, which they fault Jackson for not discussing. Pls.' Br. 13. But none of these stipulations is inconsistent with Jackson's position.

To be clear, Jackson contends that the contract unambiguously supports Jackson. A "withdrawal" remains a "withdrawal," even when some money withdrawn is used to pay a surrender charge. Jackson did not breach any contract with any class member.

But, in the alternative, if the face of the contract does not unambiguously support Jackson, then it is necessary to consider extrinsic evidence. The extrinsic evidence confirms Jackson's interpretation, at least for many plaintiffs. Arguing in the alternative is perfectly permissible. *E.g.*, *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 232–33 (5th Cir. 2015) ("[A]lternative arguments are permissible, and this court routinely considers them.").

The stipulations are perfectly consistent with Jackson's arguments. Plaintiffs' reliance on them is misplaced.

### 2. Individual extrinsic evidence must be considered in interpreting the contract.

Under Texas law, even when an agreement is facially unambiguous, courts must consider "surrounding facts and circumstances" to "provide context" and

"elucidat[e] the meaning of the words employed." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 765 (Tex. 2018).[7]

Appendix B—which the Original Named Plaintiffs and many class members received—constitutes part of the surrounding circumstances that will assist in "ascertaining [the] objective meaning" of the words used in the agreement. *Id.* at 768.

The Texas Supreme Court has applied these principles in interpreting insurance contracts:

> A written contract must be construed to give effect to the parties' intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution, subject to the parol evidence rule. . . . The rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text. Those circumstances include . . . the commercial or other setting in which the contract was negotiated and other objectively determinable factors that give a context to the transaction between the parties.

*Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011) (internal quotation marks omitted).

---

[7] Jackson does not seek to use the extrinsic evidence to vary or contradict the terms of the agreement. Pls.' Br. 56. Instead, Jackson merely seeks to use extrinsic evidence—including the surrounding circumstances—to provide context and elucidate the meaning of the words employed.

It is irrelevant that Appendix B is "not part of the contact" and that the agreements are fully integrated. Pls.' Br. 54-55. The parol evidence rule does not prevent considering unambiguous text in light of the surrounding circumstances.

In responding, Plaintiffs purport to quote the *Houston Exploration* opinion, but their brief actually quotes the dissent. *See* Pls.' Br. 56; *see also* Pls.' Br. 57-58 (including a block quote from the dissent). Plaintiffs offer no other authority on this critical issue.

Whether or not the agreement is ambiguous, the extrinsic evidence—including Appendix B and the circumstances surrounding each contract's formation—cannot be disregarded in interpreting the language. And if the contract were ambiguous, then (at least in some jurisdictions) considering extrinsic evidence of the parties' intent would be necessary before applying the rule of *contra proferentem. See, e.g.*, *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000) (explaining that under New York insurance law, *contra proferentem* applies only "[i]f the extrinsic evidence does not yield a conclusive answer as to the parties' intent").

### 3. Individual knowledge of trade usage is highly relevant.

Jackson also demonstrated that individual inquiries will be necessary to determine whether individual plaintiffs can be charged with the industry's understanding of the contract language. Jackson Br. 44-46.

Plaintiffs frame the argument as whether the contract could be "modified by [a] Jackson broker." Pls.' Br. 56-57. This is not Jackson's argument.

Jackson does not contend that the written contract was "modified." Instead, Jackson contends many Plaintiffs (through their brokers) were aware of the industry's understanding of the language used in the policy. Jackson Br. 44-45. Under agency principles, Hightower's clients, for example, are charged with his understanding of surrender charges and withdrawals.[8]

These rules are well-established: "When the meaning of a phrase in a policy is known to the broker who is an agent for the insured, it is sufficient to bind the latter." 3 Couch on Ins. § 46:21; *Gelb v. Auto. Ins. Co.*, 168 F.2d 774, 775 (2d Cir. 1948) (same).

Plaintiffs characterize Jackson's argument as based on "hearsay testimony about what a handful of brokers allegedly thought." Pls.' Br. 58. Plaintiffs err factually and legally.

First, the "hearsay testimony" that Plaintiffs dismiss is the opinion of their expert, Rory McDonald. He testified that his understanding of the contract is different ("better") than "all of the other producers out there across the country." ROA.2812. His discussions with other brokers confirmed that he has a "unique

---

[8] Hightower's clients would be charged with his knowledge even if Hightower had not fully communicated his understanding to his principals.

understanding." ROA.2813. He has "never met anybody" in the industry who shares his understanding of the contract. ROA.2816. Plaintiffs may now regret their expert's testimony, but they cannot dismiss his opinion as stray hearsay. Pls.' Br. 58-59.

Tim Hightower offered consistent testimony, acknowledging that Jackson's approach was "[i]ndustry standard." ROA.3840; *see also* ROA.3842 ("[T]hey do it the way Jackson does it."). The SEC also confirms this industry understanding of withdrawals and surrender charges. ROA.2000.

Second, Plaintiffs conflate the class certification inquiry with the merits inquiry. At the class certification stage, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Jackson was not required to prove its contract interpretation—or prove industry meaning—at the class certification stage, where the question is "how the case will be tried." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003).

At this stage, it was sufficient to show that the substantive issues involved in contract interpretation will include each individual plaintiff's subjective knowledge (actual or imputed) of industry understanding of the contract. Contract interpretation thus presents an individual issue, with evidence that "varies from member to

member" of the class.  *Tyson Foods*, 136 S. Ct. at 1045.  The district court erred in classifying it as a common issue.

### C.    Jackson's affirmative defenses present individual issues.

Jackson's affirmative defenses—which turn on individual knowledge—also present individual issues.  Plaintiffs do not contend that these defenses can be tried on a classwide basis.  If the case proceeds as a class action, Jackson's affirmative defenses will not be tried at all.

But procedural rules—like Rule 23—cannot "abridge, enlarge, or modify any substantive right."  28 U.S.C. § 2702(b).  Class certification cannot deprive Jackson of its defenses, and the district court erred by disregarding these affirmative defenses in analyzing predominance.

#### 1.    Jackson was not required to prove its affirmative defenses to defeat certification.

Plaintiffs suggest that Jackson was required to prove its affirmative defenses for these defenses to be considered at the class certification stage.  Pls.' Br. 60-64 (suggesting that Jackson had to prove a defense for one or more class members).

But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen*, 568 U.S. at 466.  Rule 23 did not require Jackson to prove its defenses.

At the class certification stage, the bar for considering a defense is low.  A defendant need only show that its defense is more than "speculation and surmise."

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 469 (6th Cir. 2017). Consideration for purposes of class certification requires only that defenses are "not without merit and would require individualized inquiry in at least some cases." *Gunnells v. Healthplan Svcs., Inc.*, 348 F.3d 417, 438 (4th Cir. 2003). The Ninth Circuit only disregards defenses "for which [the defendant] has presented no evidence." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018); *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (holding that defenses could be disregarded if they are "highly unlikely to survive typical pretrial screening").

Jackson has presented strong, concrete evidence—including deposition testimony of class members and their broker—supporting its defenses of waiver, ratification, and reformation. Jackson was not required to prove these defenses to defeat certification. It is enough that the defenses are far more than "speculation and surmise." The district court erred by disregarding them in certifying the class.

## 2. Jackson has strong waiver and ratification defenses.

The district court applied the incorrect standard for Jackson's affirmative defenses. Plaintiffs embrace the district court's analysis, arguing that waiver and ratification would require Jackson to show that "a class member [had] full knowledge of his or her legal rights." Pls.' Br. 61.

Plaintiffs cite no authority supporting their position.[9]  And Texas law rejects it.  Waiver requires only knowledge of the material facts; "[p]roof regarding a party's actual understanding of legal consequences of [the] facts is not required."  *Trelltex, Inc. v. Intecx, LLC*, 494 S.W.3d 781, 792 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also* Jackson Br. 48-49 (citing background for this rule and treatises in support).  Plaintiffs offer no reason for this Court to disregard the cases and treatises cited by Jackson.

Because the district court applied an incorrect legal standard in evaluating Jackson's defenses, it necessarily abused its discretion in certifying the class.  *E.g., Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) ("By definition, a district court abuses its discretion when it makes an error of law or applies an incorrect legal standard.").

Plaintiffs state that Jackson provides no record citation about what class members knew.  Pls.' Br. 61-62.  The relevant citations can be found on pages 13-14, 39, and 46 of Jackson's brief.  In particular, Hightower testified that he fully explained surrender charges to his clients "on each and every occasion" when they purchased an annuity.  ROA.2785.  Hightower correctly calculated what the

---

[9] Neither *Allen v. Holiday Universal*, 249 F.R.D. 166, 169 (E.D. Pa. 2008), nor *In re Checking Account Overdraft Litigation*, 307 F.R.D. 630, 624 (S.D. Fla. 2015), supports Plaintiffs.  *See* Jackson Br. 48-49.

surrender charges would be before they were incurred.  ROA.2786.  And individuals received statements from Jackson showing the amount of the surrender charges. ROA.3548.  This is ample evidence of what some class members (the only class members whose broker has been deposed) knew.

Without citation, Plaintiffs also assert that "ratification and waiver potentially would apply only to limit damages."  Pls.' Br. 63.  This is incorrect.  *See, e.g.*, *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Svcs., Inc.*, 601 F.3d 1159, 1178 (11th Cir. 2010) ("[U]nder the laws of each of the six relevant states, the defenses of ratification and waiver can operate to preclude liability itself.").

The district court erred by failing to identify Jackson's defenses as individual questions.  Because waiver and ratification depend on individual knowledge, they present individual questions that cannot be resolved on a classwide basis and that would overwhelm any common questions.

### 3.    Jackson has a strong reformation defense.

Moreover, as Jackson demonstrated in its opening brief, Plaintiffs' theory should lead only to reformation of the contract.  Jackson Br. 50-51.  At the time the contracts were formed, Jackson and many Plaintiffs (through their brokers) had a meeting of the minds regarding surrender charges.  ROA.2785.  Even if Plaintiffs' new interpretation were correct, the result would merely be that the written contract failed to express the parties' agreement and should be reformed.  *Champlin Oil &*

*Ref. Co. v. Chastain*, 403 S.W.2d 376, 382 (Tex. 1965) (discussing reformation). Again, this defense turns on the individual knowledge of each class member.

Plaintiffs offer no response, other than to assert (without authority) that the defense is "contradicted by [the] 'NO MODIFICATION' provision." Pls.' Br. 63 n.15. But this clause has nothing to do with reformation.

Plaintiffs also complain that the defense was not pleaded until after the class certification briefing. Pls.' Br. 63. But this unusual procedural posture results from Plaintiffs amending their complaint (and adding a new named plaintiff) simultaneously with the class certification order. Jackson Br. 50 n.19. Jackson pleaded this defense in its answer to Plaintiffs' amended complaint. ROA.891.

Plaintiffs cannot seriously contend that their amended complaint could be used to justify class certification but that Jackson's amended answer must be ignored. Given the procedural irregularities in the district court allowing an amended complaint and adding a new named plaintiff without the opportunity for Jackson to conduct discovery, this Court may wish to consider vacating and remanding on this basis alone.

### 4. Plaintiffs never sought certification under Rule 23(c)(4).

Finally, Plaintiffs apparently suggest that even if Jackson's defenses present individual issues, the district court could certify a class limited to contract interpretation and breach, with affirmative defenses tried individually. Pls.' Br. 65.

Plaintiffs offer no explanation of how such a proceeding would work in practice. For example, how would Jackson conduct individual discovery on 150,000 individual plaintiffs?

Moreover, Plaintiffs never urged the district court to certify a limited class under Rule 23(c)(4). And this Court's precedent precludes the attempt to "manufacture predominance through the nimble use of subdivision (c)(4)." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996). "[T]he interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial." *Id.*

Jackson's affirmative defenses require considering the subjective knowledge (actual and imputed) of each individual plaintiff. Because Plaintiffs' cause of action, as a whole, does not satisfy the predominance requirement of (b)(3), Plaintiffs cannot manufacture predominance through subsection (c)(4).

### D. Plaintiffs failed to carry their burden to prove that variations in state law do not defeat predominance and superiority.

A district court certifying a class action involving multiple jurisdictions must "consider variations in state law." Jackson Br. 51-52 (quoting *Castano*, 84 F.3d at 741). Plaintiffs bear the burden to prove that variations in state law do not preclude certification. *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 195 (5th Cir. 2010).

Plaintiffs failed to satisfy this burden, offering no analysis of variations in state law related to numerous issues, including extrinsic evidence and Jackson's affirmative defenses. Jackson Br. 51-53. As Jackson argued below, "Plaintiffs' breach of contract claims . . . will require state-by-state . . . analysis[.]" ROA.2305.

In response, Plaintiffs first attempt to shift the burden, arguing that Jackson failed to identify variations in state law. Pls.' Br. 66. This is unavailing—Plaintiffs bore the burden to prove that variations in state law did not preclude certification. *Casa Orlando*, 624 F.3d at 195. They cannot shift that burden to Jackson, and Plaintiffs' (and the district court's) failure to address variations in state law requires reversal.

Second, Plaintiffs beg the question by arguing that the district court's failure to consider variations in state law regarding extrinsic evidence was immaterial because "extrinsic evidence was unlikely to play a role." Pls.' Br. 66; *see also* Pls.' Br. 67 (arguing that state law is irrelevant because "[Jackson's] arguments about extrinsic evidence fail"). But whether extrinsic evidence plays a role in contract interpretation is a question of state law. Plaintiffs' response is no answer.

And Jackson's arguments regarding state law variations in its affirmative defenses go entirely unanswered. *See* Jackson Br. 53 (citing *Sacred Heart*, 601 F.3d at 1180-1183 (noting state variations in the law of waiver)).

The district court "failed to consider how variations in state law affect predominance and superiority." *Castano*, 84 F.3d at 740. This failure "mandates reversal." *Id.*

## III. Plaintiffs Failed to Provide a Damage Model Demonstrating that Damages Can Be Calculated on a Classwide Basis.

Finally, the district court erred because Plaintiffs failed to provide a damage model and thus failed to demonstrate that damages could be calculated on a classwide basis. Plaintiffs acknowledge that certification required them to "put forward a damages methodology that maps to their theory of liability." Pls.' Br. 68; *accord* Jackson Br. 54-56. The sole dispute is whether they did so. They did not.

Plaintiffs now assert that their damage model is merely the amount of the alleged overcharge, presenting a simple calculation. Pls.' Br. 68 ("the $11.11 overcharge").

Their new damage model fails for multiple reasons. First, Plaintiffs do not explain how "overcharge" damages could be calculated for class members that incurred surrender charges over multiple withdrawals. Even if calculations for the first surrender charge were straightforward, Plaintiffs' novel interpretation of "withdrawal" has significant and complex consequences for future surrender charges. *See* ROA.292-93 ("withdrawals" generally reduce Remaining Premium, which affects subsequent "earnings" and Withdrawal Charge calculations). Plaintiffs' simplistic model does not account for multiple withdrawals.

Second, Plaintiffs' "overcharge" model omits the additional damages they seek: living and death benefits. Jackson Br. 55 (citing ROA.817 and ROA.2139). Plaintiffs have never provided any model for calculating these damages. Their expert's report simply states that information about calculations will be provided later. ROA.2139. Plaintiffs' brief does not argue that living and death benefits are calculable on a classwide basis, much less identify any damage model they presented related to these benefits.

Class certification was thus error. *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 410-11 (5th Cir. 2017).

## CONCLUSION & PRAYER FOR RELIEF

Jackson renews its request that this Court reverse the order certifying the class and either render judgment that no class be certified or remand. At a minimum, this Court should render judgment that any class be limited to Texas plaintiffs.

Dated: December 7, 2018

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ *William R. Peterson*

William R. Peterson
David J. Levy
Thomas R Davis
Rachel H. Stinson
Jason F. Muriby
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

Scott T. Schutte
77 West Wacker Drive, Suite 500
Chicago, IL 60601
(312) 324-1000

*Counsel for Appellant, Jackson National Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2018, I electronically transmitted this Reply Brief of Appellant to the Clerk of the Court using the Court's ECF system. I further certify that counsel of record for Plaintiffs–Appellees are being served with a copy of this Brief by electronic means via the Court's ECF system, or by email, as follows:

### *Counsel for Plaintiffs-Appellees*

Lewis T. LeClair
Rudolph "Rudy" Fink IV
Samuel Franklin Baxter
MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
(214) 978-4000

Gary D. Corley
CORLEY LAW FIRM
108 North Travis Street
Sherman, TX 75090
(903) 892-1048

*/s/   William R. Peterson*
William R. Peterson

## CERTIFICATE OF COMPLIANCE WITH RULE 32

1. This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this document contains 6,499 words, excluding the parts exempted by Fifth Circuit Rule 32.2 and Federal Rule of Appellate Procedure 32(f).

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

*/s/ William R. Peterson*
William R. Peterson

Dated: December 7, 2018